IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

KYLE JEFFERY SCHWARK,

    Plaintiff,

v.

SHERIFF FRED WAGNER, in his official and individual capacities;
NURSE SUSAN CANTERBURY, in her individual capacity;
NURSE JERI SWANN, in her individual capacity;
NURSE KATHLEEN PIERCE, in her individual capacity;
DOCTOR KATHERINE FITTING, in her individual capacity,

    Defendants.

**COMPLAINT AND JURY DEMAND**

Plaintiff, by and through his attorneys, David A. Lane and Amy Kapoor of KILLMER, LANE & NEWMAN, LLP, hereby brings this Complaint and alleges as follows:

**INTRODUCTION**

1. This is an action by Kyle Jeffery Schwark, a former inmate at the Park County Jail in Park County Colorado. Mr. Schwark is seeking redress and damages for the deliberate indifference to his serious medical needs shown by Defendants' continued refusal to give Mr. Schwark specific mediations despite a doctor's order that these were necessary for his health and a Court order that directed them to do so.

2. As a direct result of defendants' deliberate indifference to Mr. Schwark's serious medical needs, Mr. Schwark had multiple seizures from sudden withdrawal of his medication

that caused him to fracture his cervical spine and suffer a deep laceration on his head resulting in his being transferred to Denver Health for treatment.

3. Mr. Schwark was subsequently denied psychotropic medications resulting in his undergoing a complete psychological breakdown resulting in a second prolonged hospitalization.

4. Due to of Defendants' deliberately indifferent acts and/or omissions that are incompatible with the dictates of the United States Constitution, Mr. Schwark continues to suffer serious emotional and physical harm. Mr. Schwark brings this action to vindicate serious deprivations to his constitutional rights.

## JURISDICTION AND VENUE

5. This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983.

6. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiffs' claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this litigation.

## PARTIES

**Plaintiff**:

7. At all times pertinent hereto, the Plaintiff, Kyle Jeffery Schwark, was a citizen of the United States of America and a resident of the State of Colorado.

2

**Defendants**:

8.      At all times relevant to the subject matter of this litigation, all Defendants were citizens of the United States and residents of Colorado. At all relevant times, all Defendants were acting under color of state law.

9.      Defendant Sheriff Fred Wagner is the sheriff of Park County, Colorado, with overall responsibility for establishing customs, practices and policies for the medical care of all inmates and staff in the county jail. He is also responsible for the training and supervision of the entire staff of the jail.  In this capacity, he is directly responsible for either directly ensuring that appropriate medical care is given to all of the prisoners in custody or for training and supervising those medical caregivers and other staff responsible for ensuring an inmate's medical needs were being met.

10.     Defendant Nurse Susan Cantebury, an employee of Park County Jail, is the supervising nurse responsible for managing the duty nurses at the Park County Jail and ensuring that appropriate medical care is provided to the inmates at Park County Jail.

11.     Defendant Nurse Jeri Swann, an employee of Park County Jail, is a duty nurse responsible for assessing the medical needs of inmates at the Park County Jail and ensuring that appropriate medical care was rendered to them.

12.     Defendant Kathleen Pierce an employee of Park County Jail, is a duty nurse responsible for assessing the medical needs of inmates at the Park County Jail and ensuring that appropriate medical care was rendered to them.

13. Defendant Katherine Fitting, an employee of Park County Jail, is a supervising physician responsible for overseeing the medical needs of the inmates at the Park County Jail and ensuring that appropriate medical care was rendered to them.

## FACTUAL ALLEGATIONS

14. On November 6, 2013, Judge Stephen A. Groome sentenced Mr. Schwark to 60 days of custody and 3 years of probation for a misdemeanor alcohol-related driving offense.

15. During his sentencing hearing, both Mr. Rotole, Mr. Schwark's lawyer on his criminal case, and Mr. Schwark himself, requested a stay of the execution of the judgment in order for Mr. Schwark to get his prescribed medication and letters from his doctors detailing why he needed the medicine and how it should be administered, which he planned to provide to the Park County Sheriffs at the jail so they could administer the medication during his incarceration.

16. Judge Groome granted the stay of execution to November 12, 2013.

17. During the imposition of sentence, Judge Groome stated "I want to make sure the mitt indicates that you are to take your prescription medication on a timely basis. I'm going to put that in there, because for your benefit so there is no misunderstanding in the jail."

18. On November 12, 2013, Mr. Schwark reported to the Park County Jail as directed by Judge Groome.

19. Around 7 pm on November 12, 2013, during the booking process, Mr. Schwark gave his medication and his doctor's letters explaining the purpose and protocol for his prescriptions to the Park County deputy assigned to booking.

20. Mr. Schwark had a letter from Dr. Jonathan W. Singer verifying that Mr. Schwark had been under Dr. Singer's care for opioid dependency, lead toxicity, and anxiety. Dr. Singer

4

listed the name and dosage of each medication he prescribed for Mr. Schwark's ongoing care. Dr. Singer concluded that the Park County deputies should "make certain that he stays on these medications."

21. Mr. Schwark also listed his required medications on the Medical Questionnaire and on the Emergency Notification form.

22. Mr. Schwark reminded both the deputy assigned to booking and the deputy assigned to F pod that Judge Groome ordered that Mr. Schwark must receive his medication in a timely manner.

23. Despite providing a court order and the Dr. Singer's letter, upon information and belief Mr. Schwark did not see anyone for medical care or receive any medication attention on November 12, 2013.

24. Upon information and belief, on November 13, 2013, Mr. Schwark repeatedly asked Nurse Cantebury, Nurse Pearce and Nurse Swain, as well all of the deputies assigned to F pod about his medication.

25. Mr. Schwark became increasingly anxious when staff member after staff member at the Park County Jail deliberately ignored his simple request for his prescription medication.

26. Notwithstanding Judge Groome's order, Dr. Singer's letter, and Mr. Schwark's continued requests for his medication and/or medical attention, Nurse Cantebury, Nurse Pearce, Nurse Swain and the other Park County deputies assigned to F pod recklessly and with deliberate indifference refused to give Mr. Schwark his medication.

27. Mr. Schwark was unable to sleep the night of November 13, 2013 due to the sudden withdrawal of his medications.

28. On the morning of November 14, 2013, Mr. Schwark could not drink fluid or eat food because of his rapidly deteriorating condition.

29. Nurse Cantebury, Nurse Pearce, Nurse Swain and the other Park County deputies consciously decided to ignore Mr. Schwark's serious medical needs and constant requests for medical attention.

30. Around 1:30 pm on November 14, 2013, in spite of Judge Groome's order, Dr. Singer's medical directive to the Park County jail nurse and deputies not to discontinue his medication and Mr. Schwark's persistent requests for medical attention, Mr. Schwark began seizing on the floor of his cell in F pod due to the sudden withdrawal from his medication.

31. Nurse Pearce went to Mr. Schwark's cell and placed a blanket around his head in order to "prevent any injuries."

32. Although Mr. Schwark was subsequently taken to medical pod of the Park County jail, the medical staff still denied him his medication.

33. Mr. Schwark condition worsened while he was in the medical pod. He vomited and was unable to eat or drink any fluid.

34. Nurse Pearce and Nurse Cantebury called Dr. Katherine Fitting, the supervising physician at Park County Jail, to advise her of Mr. Schwark's condition. Despite knowing that Mr. Schwark had not received any of his prescribed medication in days, Dr. Fitting decided to place him on an alcohol withdrawal protocol.

35. Around 5:10 pm on November 14, 2013, Nurse Pearce, in response to Mr. Schwark's obvious signs of exhaustion, told Mr. Schwark to try to sleep on a unrestrained

gurney with no side rails, notwithstanding the fact that he just had a seizure a couple of hours earlier.

36.     Due to sudden withdrawal from his medication, Mr. Schwark suffered another seizure and fell off of the gurney onto the floor which severely cut his head and broke vertebrae in his neck and back.

37.     Only after enduring two seizures did the staff at the Park County Jail decide to take Mr. Schwark to the emergency room at St. Anthony's Summit Medical Center.

38.     At St Anthony's Summit Medical Center, the on call doctor discovered that, in addition to the head laceration, Mr. Schwark had ripped his ear lobe and fractured his cervical spine as a result of falling on the floor from the gurney.

39.     On November 15, 2013, Mr. Schwark was transferred to the neurology department at Denver Health Medical Center due to the fracture in his cervical spine.  Despite the seriousness of his condition, Mr. Schwark was still doubled handcuffed to the hospital bed.

40.     On November 17, 2013, while still handcuffed to the hospital bed at Denver Health, Mr. Schwark received a furlough order from Sheriff Wagner of Park County releasing him from the custody of Park County Sheriff's Office due to his medical conditions which the order characterized as "serious and life threatening."

41.     The order placed Mr. Schwark on furlough "until such time as he is authorized by his Doctor to complete his sentence"

42.     Although Mr. Schwark's handcuffs were removed, the Park County deputies had essentially left Mr. Schwark stranded in Denver without any of his personal belongings including his clothes, wallet or cell phone.

7

43.     Mr. Schwark was fortunate enough to get in touch with his elderly mother, who immediately flew in from Rochester New York to Denver to help her son.

44.     Despite his serious medical condition, Mr. Schwark was summarily discharged from Denver Health on November 19th.

45.     For the next three months, Mr. Schwark was essentially home-bound and bed-ridden due to his cervical facture.  Mr. Schwark was required to wear C-collar at all times and undergo extensive physical therapy to regain strength and mobility.

46.     On February 26, 2014, Mr. Schwark was sentenced in Park County District Court to complete the remainder of his 60 day sentence originally imposed on November 6, 2013 for violating his probation by failing to notify his probation officer once he was released from the hospital.

47.     During the sentencing hearing, Mr. Schwark repeatedly expressed his concern to the Court about the jail continuing to deny access to his medication during his period of incarceration.  Mr. Schwark recounted for the Court his horrific experience in November.

48.     The Judge than allowed Captain Muldoon from Park County Jail to make a statement for the record regarding Pack County's policy regarding medication. "Well, sir, our Jail Policy says that the Jail Medical Director trumps any outside medical.  So, before we go and issue meds, we have to look into it, and we have to make sure that nothing is contraindicated, which happens quite often.  People go to variety of different doctors, Get a medication from this Doctor, another medication from that Doctor.  They cause problems.  So, we need to review everything.  Have it medically approved. "

49.     Mr., Schwark begged the Judge to direct the jail to give his medication.

50. In response to Mr. Schwark's request, the Judge said that he did not have the power to order the Jail to give him his medication.

51. Mr. Schwark was subsequently rebooked in Park County Jail.  As he had previously done back in November, and in accordance with Park County Jail's own policy, Mr. Schwark explained to the deputy that Dr. Singer could provide the jail a letter explaining the purpose and protocol for his medications.

52. Mr. Schwark also listed his required medications on the Medical Questionnaire and on the Emergency Notification form.

53. Although Park County Jail had actual knowledge of the serious repercussions of not giving Mr. Schwark his medications, on February 25, 2014 Dr. Fitting ordered the medical staff in the Jail to discontinue giving him suboxone and chlordiazepoxide.  In addition, Dr. Fitting wanted to wean Mr. Schwark off alprazolam (Xanax).

54. Despite Dr. Singer's medical directive and Mr. Schwark's continued requests for medication, the Park County Jail deputies and medical staff refused to give him his medications.

55. On February 28, 2014, Mr. Schwark's mother called the medical staff at the jail to inquire about whether she needed to bring his medications but upon information and belief they did not respond.

56. Mr. Schwark severely exacerbated his neck injury because he was not allowed to wear his protective cervical hard collar and was made to sleep on a bare concrete floor with no head or neck support.

57. Due to the sudden withdrawal from his medication, Mr. Schwark began to suffered major hallucinations. He became increasingly more incoherent and refused to eat or drink.

58. Although Nurse Cantebury updated Dr. Fitting on Mr. Schwark's worsening condition, she refused to give him his medications.

59. On March 5, 2014, Dr. Singer faxed Mr. Schwark's medical directives to Nurse Cantebury at the Park County Jail. Despite Mr. Schwark's worsening condition, the medical and jail staff ignored the medical orders.

60. On March 6, 2014, Nurse Cantebury in an email to Dr. Fitting, questioned whether not giving Mr. Schwark his prescribed medication was causing his hallucination and psychosis. Nurse Cantebury wrote "Returning to BID Xanax I mg ER has Kyle Schwark more coherent and he is trying to figure out what happened yesterday. Yes major hallucinations are his problem when off his addiction. *Is Seboxen a drug you can just take someone off without dastardly consequences?* I am working to get him coherent and cooperative enough to fill out the packet."

61. On March 10, 2014, due to the Park County deputies and medical staff continued ill-treatment and sudden medical withdrawal, Mr. Schwark suffered a psychotic break and was taken to Denver Health Medical Center where he was treated with anti-psychotic medications.

62. Mr. Schwark has continued to suffer with severe depression, panic and anxiety as well as PTSD since that time.

63. Defendant Wagner, as the Sheriff of Park County, had a duty to ensure that his staff was appropriately trained and supervised to follow medical directives of both the Court and doctors to provide prescribed medication to inmates.

64. Defendant Wagner failed to adequately train or supervise his staff resulting in deliberate indifference to Mr. Schwark's serious medical needs.

65. Mr. Schwark has been substantially injured as a direct and proximate result of the wrongful conduct of each of the Defendants. These injuries include, but are not limited to, the loss of constitutional rights, physical injuries, impairment, great pain and emotional distress, anxiety, shock, sadness, depression, anger and stress.

66. Mr. Schwark has significant physical, economic and emotional damages as a result of him not receiving his prescribed medications.

67. As a direct and proximate result, Mr. Schwark has impaired earning capacity, substantial and ongoing lost past and future earnings in an amount that will be proven at trial. He worked as a tree cutter for over 15 years. He has not worked consistently in this capacity since this incident and will likely not be able to do this type of work again.

68. Mr. Schwark suffers severe emotional distress as a result of these events.

69. Defendants' conduct was engaged in with malice or with reckless indifference to the federal protected rights of Mr. Schwark, entitling him to punitive damages.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(§1983 – Eighth Amendment Violation - Failure to Provide Medical Care and Treatment)**
**(Against All Defendants)**

70. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

71. At all times relevant to the allegations in this Complaint, Defendants acted or failed to act under color of state law.

72. At all times relevant to the allegations in this Complaint, Defendants knew or should have known that Mr. Schwark required specific medications on a daily basis.

73. Nevertheless, with deliberate indifference to Mr. Schwark's constitutional right not to be denied necessary medical care, protected under the Eighth Amendment to the United States Constitution, Defendants failed to give Mr. Schwark his medication or to provide him medical attention. They did so despite their knowledge of Mr. Schwark's serious medical needs, placing him at risk of substantial physical harm and excruciating pain.

74. The acts or omissions of all Defendants were conducted within the scope of their official duties and employment.

75. The acts or omissions of all Defendants were the legal and proximate cause of Mr. Schwark's injuries.

76. Individual Defendants continued to act in bad faith and with deliberate indifference to Mr. Schwark's serious medical needs and constitutional rights when they willfully ignored Judge Groome's order, Dr. Singer's medical directive, and Mr. Schwark's

repeated requests for medical attention and intentionally denied and/or delayed his access to medical care.

77. The acts or omissions of each Defendant caused Mr. Schwark's damages in that he suffered extreme physical and mental pain during the time period described in this Complaint. The actions or inactions of Defendants as described herein intentionally deprived Mr. Schwark of his right to be free of cruel and unusual punishment and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

78. As a direct result of Defendants' unlawful conduct, Mr. Schwark has suffered injuries, damages, and losses as described herein which entitle him to compensatory and special damages including attorneys' fees to be determined at trial.

79. As a direct result of Defendants' unlawful conduct, Mr. Schwark has incurred significant special damages, including medically related expenses and will continue to incur medically related expenses in amount to be established at trial.

80. Mr. Schwark is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983 in that the actions of each of these individual Defendants have been taken maliciously, willfully and or with a reckless or wanton disregard of the constitutional rights of the Plaintiff.

**SECOND CLAIM FOR RELIEF**
**(§1983 – Eighth Amendment Violation - Supervisory Liability for**
**Failure to Train and Supervise)**
**(Against Defendant Wagner)**

81.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

82.     Defendant Wagner had a duty to train and supervise correctional officers, medical staff, and mental health staff in order to ensure the safety and well being of prisoners confined at Park County Jail.

83.     Defendant Wagner failed to discharge these duties.

84.     Wagner acted with deliberate indifference to Mr. Schwark's serious medical needs in failing to adequately train and supervise correctional officers, medical staff, and mental health staff.

85.     Wagner's failure to properly train and supervise his subordinate employees was a moving force and proximate cause of the violation of Mr. Schwark's constitutional rights.

86.     The acts or omissions of Defendant Wagner caused Mr. Schwark damage in that he suffered from extreme physical and mental pain during the months after the cervical spine fracture.  Defendant Wagner's conduct deprived Schwark of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and against Defendants, and grants:

(a)     Appropriate relief at law and equity;

(b)  Declaratory relief and other appropriate equitable relief;

(c)  Economic losses on all claims allowed by law;

(d)  Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(e)  Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(f)  Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(g)  Pre- and post-judgment interest at the highest lawful rate;

(h)  Any further relief that this Court deems just and proper, and any other relief as allowed by law.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Dated this 14 of November 2015.

KILLMER, LANE & NEWMAN, LLP

_s/ David A. Lane_____
David A. Lane
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
dlane@kln-law.com


ATTORNEY FOR PLAINTIFF