IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02507-JLK

KYLE JEFFERY SCHWARK,

    Plaintiff,

v.

SHERIFF FRED WEGENER, in his official and individual capacities; NURSE SUSAN CANTERBURY, in her individual capacity; NURSE JERI SWANN, in her individual capacity; NURSE CATHLENE PEARCE, in her individual capacity; DOCTOR KATHERINE FITTING, in her individual capacity,

    Defendants.

---

### KATHERINE FITTING, M.D.'S MOTION TO DISMISS UNDER RULE 12(b)(6)
---

Defendant Katherine Fitting, M.D., by and through her attorneys, CHILDS MCCUNE LLC, moves this Court to dismiss all claims asserted against her in Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**Summary**

In resolving this motion, the Court need address only one substantive issue:

    1.    **No deliberate indifference.** For an Eighth Amendment claim, a prisoner must: (1) set forth facts demonstrating that his medical need was sufficiently serious to meet the objective element of the deliberate indifference test, and that the defendants' delay in meeting that need caused substantial harm; and (2) set forth facts supporting an inference that defendants knew about and disregarded a substantial risk of harm to his

health or safety to meet the subjective element. *Oxendine v. Kaplan*, 241 F. 3d 1272, 1276-77 (10th Cir. 2001). This Motion to Dismiss focuses on the subjective element of the deliberate indifference standard. Here, Mr. Schwark alleges that during his November 2013 incarceration, upon learning that Mr. Schwark had a seizure, vomited, and was unable to eat or drink, Dr. Fitting did not provide Mr. Schwark with specific medications, and instead placed him on an alcohol withdrawal protocol (Doc. 13 at ¶¶ 31-34). He further alleges that during his February 2014 incarceration, Dr. Fitting again denied Mr. Schwark two of his specific medications, and weaned him from a third medication (Doc. 13 at ¶ 54). Do these allegations of medical decision-making satisfy the subjective element of the deliberate indifference standard?

The answer is no. Plaintiff's two claims against Dr. Fitting fail because Plaintiff's Amended Complaint does not set forth facts sufficient to satisfy the second prong necessary to sustain a deliberate indifference to serious medical needs claim under the Eighth Amendment. As such, Plaintiff has failed to state a plausible claim against Dr. Fitting and this Court must dismiss all claims against Dr. Fitting.

## The Material Facts[1]

1.      On November 12, 2013, Mr. Schwark reported to the Park County Jail to serve a 60-day sentence for an alcohol related driving offense. (Doc. 13 at ¶¶15 and 19).

---

[1] These alleged facts are taken from the Amended Complaint and are accepted as true solely for purposes of this Motion to Dismiss. Dr. Fitting does not admit any of these allegations and reserves the right to dispute any of these alleged facts in any future responsive pleadings or proceedings.

2.      Around 7:00 p.m. on November 12, 2013, during the booking process, Mr. Schwark provided his medication and doctor's letters explaining the purpose and protocol for his prescriptions to the Park County deputy assigned to booking. (Doc. 13 at ¶ 20).

3.      The letter from Mr. Schwark's physician explained that Mr. Schwark was under a physician's care for opioid dependency, lead toxicity, and anxiety. (Doc. 13 at ¶ 21).

4.      Mr. Schwark also listed his medications on the Medical Questionnaire and Emergency Notification forms at the jail. (Doc. 13 at ¶ 22).

5.      Mr. Schwark reminded both the deputy assigned to booking and the deputy assigned to the pod where he was being housed that he was court ordered to receive his medications in a timely manner. (Doc. 13 at ¶ 23).

6.      Mr. Schwark alleges that he did not receive any of his medications on November 12, 2013, and that on November 13, 2013 he repeatedly asked three nurses and the deputies assigned to his pod about the medications, and that these requests were ignored. (Doc. 13 at ¶¶ 24-25).

7.      Mr. Schwark alleges that he waited in the medical line for attention, repeatedly pressed the emergency intercom button, and wrote "kites" expressing his need for medical attention and that the three nurses and Park County deputies disregarded his serious medical needs. (Doc. 13 at ¶ 29).

8. Around 1:30 p.m. on November 14, 2013, Mr. Schwark suffered a seizure in his cell, and was taken to the medical pod. (Doc. 13 at ¶¶ 30-31).

9. Mr. Schwark alleges that his condition worsened, and only then was Dr. Fitting notified. (Doc. 13 at ¶¶ 32-33).

10. Mr. Schwark alleges that despite knowing that Mr. Schwark had not received his prescribed medications and that he was exhibiting symptoms of withdrawal, Dr. Fitting made the decision to place him on an alcohol withdrawal protocol without any of his medications, or alternative medications, and that Dr. Fitting made this decision without speaking to or examining Mr. Schwark. (Doc. 13 at ¶ 34).

11. Mr. Schwark alleges that he suffered another seizure later that same day of November 14, 2013, and was transferred to St. Anthony's Summit Medical Center, and later to Denver Health Medical Center. (Doc. 13 at ¶¶ 35-36 and ¶ 39).

12. Mr. Schwark was discharged from Denver Health on November 19, 2013. (Doc. 13 at ¶ 44).

13. On February 26, 2014, Mr. Schwark was sentenced to complete the remainder of his 60-day jail sentence. (Doc. 13 at ¶ 46).

14. Mr. Schwark was rebooked in the Park County Jail later that same day, and explained to the deputy that his physician could provide a letter explaining his medications. (Doc. 13 at ¶ 51). Mr. Schwark also listed his medications on the Medical Questionnaire and on the Emergency Notification form. (Doc. 13 at ¶ 52).

15. Mr. Schwark alleges that although Park County Jail had actual knowledge of the serious repercussions of not giving him his medications that on February 25, 2014, Dr. Fitting ordered the medical staff to discontinue Mr. Schwark's suboxone and chlordiazepoxide, and to wean his xanax, and that Dr. Fitting did not provide any alternative treatment. (Doc. 13 at ¶¶ 54 and 56).

16. Mr. Schwark alleges that he began to suffer hallucinations, Dr. Fitting was updated on his status, and that Dr. Fitting refused to give Mr. Schwark his medications. (Doc. 13 at ¶¶ 62-63).

17. Mr. Schwark alleges that he suffered a psychotic breakdown and was taken to Denver Health on March 10, 2014. (Doc. 13 at ¶ 66).

## Argument and Authorities

### A.   Plaintiff does not state a plausible claim against Dr. Fitting.

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

Courts engage in a two-step process to determine whether a complaint states a plausible claim for relief. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680. The court need not accept conclusory allegations without supporting factual allegations. *See Ruiz v. McDonell*, 299 F.3d 1173, 1181 (10th Cir. 2002). Where a complaint pleads facts that "amount to nothing more than a 'formulaic recitation of the elements,'" it fails to cross the line from "conceivable to plausible." *Iqbal*, 556 U.S. at 680-81 (quoting *Twombly*, 550 U.S. at 555, 570). Next, the court analyzes the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. Accordingly, a plaintiff must frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly*, 550 U.S. at 556.

Significantly, a plaintiff must explain in the complaint "what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007) (emphasis added). As the Tenth Circuit has recognized, "'[t]he *Twombly* standard may have greater bite' in the context of a § 1983 claim against individual government actors, because 'they typically include complex claims against multiple defendants.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1217 (10th Cir. 2011) (quoting *Robbins v. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)). "[I]t is particularly important in

6

such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Robbins*, 519 F.3d at 1250 (emphasis original); *see also Jenkins v. Wood*, 81 F.3d 988, 994-95 (10th Cir. 1996) ("[P]laintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation.").

Here, Plaintiff's Amended Complaint does not meet the fair notice standard required by Fed. R. Civ. P. 8 because it contains numerous collective allegations against all Defendants; preventing Dr. Fitting from determining the specific allegations against her. Additionally, to the extent Plaintiff lists few specific claims against Dr. Fitting, Plaintiff's Amended Complaint fails to set forth sufficient facts to render his claim against Dr. Fitting plausible. *See Robbins*, 519 F.3d at 1250.

> **B.    Plaintiff's allegations against Dr. Fitting do not satisfy the subjective component prong sufficient to maintain an Eighth Amendment deliberate indifference claim.**

The Eighth Amendment provides prisoners the right to be free from cruel and unusual punishments. This right is violated if prison officials show "deliberate indifference to an inmate's serious medical needs." *Boyett v. County of Washington*, 282 Fed. Appx. 667, 2008 WL 2483286 (10th Cir. June 19, 2008) (unpublished) citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Under the second subjective inquiry, the prison official must have a "sufficiently culpable state of mind." *Self v. Crum*, 439 F.3d

1227, 1230-31 (10th Cir. 2006). A prison official cannot incur liability "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* In the context of the adequacy of medical care, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation, absent evidence the prison official 'knew about and disregarded a substantial risk of harm to the [prisoner's] health or safety.'" *Id* at 1231 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1277 (10th Cir. 2001)). "If an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability under this standard." *Smith v. LeJeune*, 203 F. Supp. 2d 1260, 1268 (D. Wyo 2002).

Accordingly, Plaintiff's Amended Complaint must set forth facts demonstrating his medical need was objectively sufficiently serious, and that Dr. Fitting's delay in meeting that need caused him substantial harm. Then to meet the subjective prong, at issue in this Motion to Dismiss, Plaintiff is required to set forth facts supporting an inference that Dr. Fitting knew about and disregarded a substantial risk of harm to his health and safety.

In *Maiz*, an inmate of the Pueblo Minimum Center sought medical attention on the evening of October 29, 2000 because she was suffering from severe chest pain. Defendant nurse Weldon, a Licensed Practical Nurse, was on duty at the PMC infirmary

8

that evening. Plaintiff reported her chest pain to nurse Weldon who reported that there was nothing she could do because the infirmary was closed, and Plaintiff would have to return the next morning. *Mata*, 427 F.3d at 750. Plaintiff returned to the infirmary the following morning, and defendant nurse Quintana provided a nursing assessment including, an electrocardiogram (EKG). Nurse Quintana gave plaintiff a permission slip to allow her to miss work and other prison related assignments. Plaintiff's pain persisted and she returned to the infirmary on October 31, 2000 and was seen by defendant nurse Hough who performed a second EKG. Defendant nurse Saiz arrived shortly thereafter and performed an independent assessment and ultimately consulted with a physician who instructed for plaintiff to immediately go to the hospital. In response, nurse Saiz instructed plaintiff to return to her housing unit to change for the trip to the hospital. This included walking approximately two blocks up hill, changing clothes, and then walking to the main facility. At the hospital, it was determined that plaintiff had suffered a heart attack. Plaintiff suffered permanent and irreversible damage to her heart and sustained a permanent disability.

  Plaintiff filed a § 1983 action against the four Colorado Department of Corrections nurse employees alleging Eighth and Fourteenth Amendment violations. The District Court granted summary judgment with respect to defendants Weldon, Quintana, and Hough, finding that the plaintiff had failed to raise a genuine issue of material fact with respect to an Eighth Amendment claim, and that defendants were therefore entitled to

qualified immunity, and granted partial summary judgment with respect to defendant Saiz. On appeal, the Tenth Circuit affirmed the grant of summary judgment with respect to defendants Quintana, Hough, and Saiz, and reversed with respect to defendant Weldon.

The question on appeal hinged on whether plaintiff had produced evidence sufficient to satisfy the subjective component of the deliberate indifference standard. With respect to nurse Weldon, for whom summary judgment was reversed, the Tenth Circuit found significant that this nurse told plaintiff there was nothing she could do for her since the infirmary was closed. *Mata*, 427 F.3d at 755. The Tenth Circuit found the fact that plaintiff was assessed by another nurse the morning after to be irrelevant to the issue of whether nurse Weldon was deliberately indifferent at the time she refused to treat plaintiff. Instead, the Tenth Circuit found significant the evidence presented that supported a conclusion that nurse Weldon was in fact aware plaintiff was suffering from severe chest pains and required medical attention, and that nurse Weldon refused to perform her gatekeeping role by not seeking medical attention for plaintiff. *Id*. at 756. The court also found significant that nurse Weldon did not simply misdiagnose plaintiff, but instead completely refused to assess or diagnose plaintiff's medical condition at all. *Id*. at 758. Opposite to nurse Weldon, the Tenth Circuit found that the District Court had correctly granted summary judgment with respect to the remaining three nurses, finding that they were not deliberately indifferent to Plaintiff's serious medical needs. The Court found this to be true even with respect to nurse Saiz who was instructed to send plaintiff

immediately to the emergency room, but then directed plaintiff to return to her unit to change for her trip to the hospital, requiring a lengthy walk. *Id*. at 759.

Here, Mr. Schwark makes two claims of deliberate indifference against Dr. Fitting—the first related to his November 2013 incarceration; and the second related to his February 2014 incarceration. With respect to his November 2013 incarceration, Mr. Schwark was booked as an inmate at the Park County Jail around 7:00 p.m. on November 12, 2013. (Doc. 13 at ¶ 20). Mr. Schwark arrived at the jail with the names and dosages of several medications prescribed by Mr. Schwark's physician. Mr. Schwark alleges that he was not given any of these medications on November 12, 2013 through the morning of November 14, 2013, resulting in inability to sleep, eat, and drink fluids, and a seizure. (Doc. 13 at ¶¶ 27-28 and ¶30). Mr. Schwark makes no claim that Dr. Fitting was aware of this alleged delay in providing medications, and makes no allegations of a prior seizure disorder that should have alerted Dr. Fitting to a condition of concern. Instead, Plaintiff claims that Dr. Fitting first became aware of Mr. Schwark's condition after this seizure and that Dr. Fitting made the decision to place Mr. Schwark on an alcohol withdrawal protocol without any of his medications, or alternative medications. (Doc. 13 at ¶ 34). This is Mr. Schwark's only specific allegation against Dr. Fitting with respect to his November 2013 incarceration. Mr. Schwark had a second seizure later that same day, and was transferred to Summit Medical Center and Denver Health for treatment. (Doc. 13 at ¶ 36 and ¶¶ 37-39).

With respect to his February 2014 incarceration, Mr. Schwark alleges "[a]lthough Park County Jail had actual knowledge of the serious repercussions of not giving Mr. Schwark his medication," on February 25, 2014, Dr. Fitting ordered the medical staff in the Jail to discontinue giving Plaintiff two of his medications and to wean him from a third medication. (Doc. 13 at ¶ 54). The clear language of Plaintiff's Amended Complaint alleges that "Park County Jail," not Dr. Fitting had "actual knowledge." Plaintiff then alleges that Dr. Fitting never provided Mr. Schwark with any alternative treatment, that Dr. Fitting never physically examined Mr. Schwark, and that Dr. Fitting denied Mr. Schwark with access to any treatment for "either his underlying medical condition or for his symptom of withdrawal." (Doc. 13 at ¶¶ 55 and 56).

Focusing on the subjective portion of the deliberate indifference standard, a prison official cannot incur liability "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F. 3d 1227, 1230-31 (10th Cir. 2006).

Here, specific to Dr. Fitting, Mr. Schwark's allegations that during his November 2013 incarceration, Dr. Fitting made the decision to place Mr. Schwark on an alcohol withdrawal protocol without any of his medications, or alternative medications, do not rise to the level of a constitutional violation. Additionally, Mr. Schwark's allegations that during his November 2014 incarceration "Park County Jail" had actual knowledge of the

12

serious repercussions of not giving Mr. Schwark his medication, that Dr. Fitting ordered the medical staff in the Jail to discontinue giving Plaintiff two of his medications and to wean him from a third medication, that Dr. Fitting did not provide Mr. Schwark with any alternative treatment, and that Dr. Fitting never physically examined Mr. Schwark also do not rise to the level of constitutional violations. Instead, Plaintiff's allegations are disagreements about medical treatment decisions.

This Court reached a like result in *Boyett*. There, Mr. Boyett died in Washington County, Utah's Purgatory Correctional Facility a week after being arrested for failure to appear for a traffic offense. Boyett's surviving family members instituted a § 1983 action alleging that prison officials caused or contributed to Boyett's death by, amongst other allegations, withholding medications. The District Court granted summary judgment to all individual defendants on the basis of qualified immunity and to defendant Washington County on the claim of municipal liability. The Tenth Circuit affirmed. *Boyett v. County of Washington*, 282 Fed. Appx. 667, 2008 WL 2483286 at \*\*1.

There, Boyett had two incarcerations at the correctional facility in the span of a week. Prior to Boyett's first booking and incarceration, a doctor at a local medical center examined Boyett and concluded that he was healthy enough for jail, but listed alcohol intoxication and recent hernia surgery under "diagnosis," and recommended that Boyett continue his regular dose of prescription Methadone. *Id*. After one day in jail, Boyett was released. Shortly thereafter, Boyett returned to the correctional facility, and Boyett's

13

medical history chart included the information supplied by the doctor prior to Boyett's first incarceration. At the time of this second incarceration, Boyett was taking the prescription drugs Celexa, Xanax, and Methadone. Boyett's health began deteriorating four days into his detention. Boyett was examined for his complaints, he was prescribed medications for his neck and back pain, and Clonidine to replace his prescription Methadone since Methadone was not allowed in Utah jails. *Id*. at \*\*1 and 2. Over the course of the next several days, Boyett made several complaints to jail staff, injured himself during a fall down a flight of stairs, and had a decline in his mental health condition. Following this decline in mental health, Boyett was given several doses of an antipsychotic. Early the morning following the third injection of an antipsychotic, Boyett was found dead on his jail cell floor. *Id*. at \*\*3.

In support of plaintiff's deliberate indifference claim, plaintiffs pointed to numerous acts or omissions including a failure to provide Boyett with the medicine and care prescribed by Boyett's treating physicians prior to incarceration. There, the Tenth Circuit concluded that a prescription of a substitute medication (Clonidine instead of Methadone) did not demonstrate deliberate indifference. In coming to this conclusion the Tenth Circuit cited to previous opinions recognizing the autonomy of jail house physicians. *See Callahan v. Poppell*, 471 F. 3d 1155, 1160 (10th Cir. 2006) ("[A] prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." (quoting *Dulany v.*

*Carnahan*, 132 F. 3d 1234, 1240 (8th Cir. 1997))); *Perkins v. Kansas Dep't of Corrs.*, 165 F. 3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.").

Here, Mr. Schwark's Amended Complaint alleges that during his November 2013 incarceration that Dr. Fitting made the decision to place Mr. Schwark on an alcohol withdrawal protocol without any of his medications, or alternative medications. (Doc. 13 at ¶ 34). Although Mr. Schwark alleges that he was not provided any alternative medications, he admits that Dr. Fitting made the decision to place him on an alcohol withdrawal protocol. As set forth in *Dulany* and *Perkins*, prisoners are not entitled to a particular course of treatment, and a disagreement about such does not state a constitutional violation. Furthermore, Mr. Schwark's Amended Complaint alleges that during his February 2014 incarceration that "Park County Jail" had actual knowledge of the serious repercussions of not giving Mr. Schwark his medication, that Dr. Fitting ordered the medical staff in the Jail to discontinue giving Plaintiff two of his medications and to wean him from a third medication. Once again, this is a medical decision regarding the appropriate course of treatment, not a situation where an inmate's medical needs were ignored. As such, Plaintiff has failed to state a constitutional violation against Dr. Fitting.

## Conclusion

Plaintiff's Amended Complaint fails to state an Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Fitting. Instead, Plaintiff's Amended Complaint establishes that Dr. Fitting exercised her medical judgment in treating Mr. Schwark. Because "deliberate indifference" and not medical negligence is the applicable standard for Mr. Schwark's Eighth Amendment claim, a difference in opinion over the adequacy of medical treatment cannot provide the basis for Plaintiff's claims.

WHEREFORE, For these reasons, Dr. Fitting requests that this Court grant this Motion to Dismiss, dismissing all claims against Dr. Fitting with prejudice, enter judgment in favor of Dr. Fitting and against Mr. Schwark for attorney fees pursuant to 42 U.S.C. § 1988, enter judgment in favor of Dr. Fitting and against Mr. Schwark for costs, and such other and further relief as the Court deems just and proper.

Respectfully submitted this 3rd day of May, 2016.

*/s/ Steven A. Michalek*
Steven A. Michalek
Elizabeth J.M. Howard
Childs McCune LLC
821 17th Street, Suite 500
Denver, CO 80202
Telephone: (303) 296-7300
FAX: (720) 625-3637
Email: smichalek@childsmccune.com
Email: ehoward@childsmccune.com
Attorney for Defendant Dr. Fitting

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 3, 2016, a true and correct copy of the foregoing **KATHERINE FITTING, M.D.'S MOTION TO DISMISS UNDER RULE 12(b)(6)** was filed with the Court and served electronically via ECF upon the following:

David A. Lane
Julian Wolfson
Killmer, Lane & Newman, LLP
1543 Champa St., Ste. 400
Denver, CO  80202
Email: dlane@kln-law.com

Ashley McCall Kelliher
Eric Michael Ziporin
Senter Goldfarb & Rice, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO 80210
Email: akelliher@sgrllc.com
Email: eziporin@sgrllc.com

*s/ Mary Baltz*

This document will be maintained in accordance with C.R.C.P. 121 § 1-26(7).

17