IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-2507-JLK

KYLE JEFFERY SCHWARK,

    Plaintiff,
v.

SHERIFF FRED WEGENER, in his official and individual capacities;
NURSE SUSAN CANTERBURY, in her individual capacity;
NURSE JERI SWANN, in her individual capacity;
NURSE CATHLENE PEARCE, in her individual capacity;
DOCTOR KATHERINE FITTING, in her individual capacity,

    Defendants.
_____

### PLAINTIFF'S RESPONSE TO DEFENDANT FITTING'S MOTION TO DISMISS UNDER RULE 12(b)(6)
_____

    Plaintiff Kyle Schwark, by and through his attorneys, David A. Lane and Julian G.G. Wolfson of KILLMER, LANE & NEWMAN, LLP, hereby submits the following Response to Defendant Fitting's Motion to Dismiss, and states as follows in support.

#### INTRODUCTION

    On November 6, 2013, Kyle Schwark was sentenced to 60 days of custody for an alcohol-related driving offense. In his sentencing order, Judge Stephen A. Groome explicitly included language instructing the Park County Jail to provide Mr. Schwark with his prescribed medications. Notwithstanding Judge Groome's order, and the fact that Mr. Schwark provided officials with a letter from his prescribing doctor, the Jail refused to provide Mr. Schwark with his medications.

    As a result, Mr. Schwark began to suffer from symptoms of withdrawal and his medical condition began to rapidly deteriorate. Only after Mr. Schwark suffered from a seizure was

Defendant Fitting (the supervising physician at Park County Jail) informed of his condition. Despite having actual knowledge that he was exhibiting obvious symptoms of withdrawal, Defendant Fitting refused to administer Mr. Schwark his prescribed medications or provide him with any alternative medications. Defendant Fitting made this decision without ever personally speaking to or examining Mr. Schwark.

Although the Jail was aware that Mr. Schwark was susceptible to seizures, he was instructed to sleep on an unrestrained gurney with no side rails. Predictably, Mr. Schwark suffered another seizure and fell off his gurney onto the floor. As a result, Mr. Schwark severely cut his head and broke the vertebrae in his neck and back. Due to these serious injuries, Mr. Schwark was taken to the hospital and placed on a medical furlough.

On February 26, 2014, Mr. Schwark was sentenced in Park County District Court to complete the remainder of his 60-day sentence. Upon reentering the Jail, officials placed Mr. Schwark in solitary confinement for approximately two weeks. During this time, Defendant Fitting ordered the Jail's medical staff to discontinue giving Mr. Schwark two of his medications (Suboxone and Chlordiazepoxide), and began to wean him off another medication he had been taking (Xanax). This decision was made, despite the fact that Defendant Fitting was aware of the serious consequences that had resulted from this very same course of action in November 2013. As a result, Mr. Schwark eventually suffered a psychotic breakdown and was transported to the hospital where he was treated with anti-psychotic medications.

Defendant Fitting has now requested that this Court dismiss all of Mr. Schwark's meritorious legal claims against her. Because, however, Plaintiff has alleged facts which demonstrate that he is entitle to relief, Defendant Fitting's Motion to Dismiss should be denied in its entirety.

**LEGAL STANDARD**

Defendant Fitting's Motion to Dismiss asserts, pursuant to Federal Rule of Civil Procedure 12(b)(6), that Plaintiff has failed to state a claim for which relief can be granted. At this stage of the litigation, a court's "function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991). When assessing a motion to dismiss under Rule 12(b)(6), it is important to take into account that "the Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim." *Maez v. Mountain States Tel. & Tel.*, 54 F.3d 1488, 1496 (10th Cir. 2005) (citing *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)).

In order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to establish that a claim is facially plausible, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A "complaint may not be dismissed pursuant to Rule 12(b)(6) unless it appears *beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Northington v. Jackson*, 973 F.2d 1518, 1522 (10th Cir. 1992) (emphasis added).

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need to contain detailed factual allegations," it "requires more than labels and conclusions" or the "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, a plaintiff's complaint must contain enough factual allegations to raise

their "right to relief above the speculative level." *Id.* (explaining that the plausibility requirement merely calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the alleged illegal conduct); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (asserting that "plausible" does not mean "likely to be true").

"Determining whether a complaint states a plausible claim for relief is a context-specific task." *Iqbal*, 556 U.S. at 679.  Therefore, in order to assess the sufficiency of a complaint under Rule 12(b)(6), a court must compare "the pleading with the elements of the cause of action" underlying the plaintiff's complaint. *Burnett v. Mortgage Elec. Registration Sys.*, 706 F.3d 1231, 1236 (10th Cir. 2013).  To state a "valid claim under [§] 1983 a plaintiff must allege that the defendants acted under color of state law to deprive him of a constitutional right." *Northington*, 973 F.2d at 1523.  Accordingly, a court "must determine which constitutional right is alleged to have been infringed and then judge the validity of the claim 'by reference to the specific standard which governs that right […]'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)).

### ARGUMENT

**Plaintiff has sufficiently alleged that Defendant Fitting violated his constitutional right to adequate medical care protected by the Eighth Amendment.**

Since its decision in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Supreme Court has made clear that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eight Amendment." *See also Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014) (explaining that the "Eighth Amendment's prohibition against cruel and unusual punishment extends to the unnecessary and wanton infliction of pain caused by prison official's deliberate indifference to serious medical needs of prisoners") (internal quotations omitted).  To prevail on such claim, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious

4

medical needs." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).  When determining whether a plaintiff's allegations are sufficient, courts undertake a two-pronged inquiry comprised of an objective and subjective component.  *Id.* at 1231.

Under the objective component of the deliberate indifference analysis, "the prisoner must produce objective evidence that the deprivation at issue was in fact sufficiently serious." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).  A medical need will be sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.*

The subjective component of the deliberate indifference test is satisfied if the defendant knows of and disregards a substantial risk to an inmate's health. *See Self*, 439 F.3d at 1231; *see also Welsh v. Bishop*, 2015 U.S. Dist. LEXIS 28374, at *8 (D. Colo. 2015) (explaining that an action unaccompanied by a subjective awareness of an unreasonable risk of harm does not constitute punishment within the meaning of the Eighth Amendment). An inmate, however, need not "show that a prison official acted or failed to act believing that harm actually would befall [him]; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

While "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment," *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980), the sheer provision of medical treatment, without respect to the adequacy and/or reasonableness of the treatment, cannot not shield a defendant from liability. *See Oxendine v. Kaplan*, 241 F.3d 1272, 1277 n.7 (10th Cir. 2001) (explaining that the conferral of "some treatment" does prevent a finding of deliberate indifference where the treatment was so lacking that it could not be considered a

"mere disagreement between the parties"); *see also Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) ("plaintiff's receipt of *some* medical care does not automatically defeat a claim of deliberate indifference") (emphasis in original); *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (explaining that "mere proof of medical care" is insufficient to disprove deliberate indifference).[1]

This principle is rooted in the Eighth Amendment's requirement that inmates receive *adequate* medical care. *Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) (explaining that the "Eighth Amendment prohibits the government from incarcerating prisoners without providing *adequate* medical care") (emphasis added). Although the inadvertent failure to provide adequate medical care is not sufficient to establish a constitutional violation, liability may be imposed where such failure was the result the defendant's deliberate indifference. *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985) ("Failure to provide adequate medical care is a violation of the Eighth Amendment if it is a result of a deliberate indifference to a prisoner's serious medical needs"). The failure to provide adequate medical care will be a result of the defendant's deliberate indifference where, for example, the defendant "responds to an obvious risk with treatment that is patently unreasonable." *Self*, 439 F.3d at 1232.

Defendant Fitting's Motion to Dismiss does not dispute whether Plaintiff's injuries were sufficiently serious. Instead, the Motion exclusively argues that Plaintiff's Amended Complaint should be dismissed because it does not sufficiently alleged that Defendant Fitting acted with

---

[1] It is important to note that nothing in *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005), a case cited by Defendant Fitting, calls this proposition into question. Although the court in *Mata* explained that deliberate indifference will be found where a defendant completely refuses to assess or diagnose a plaintiff's medical condition, it did not hold that this would be the *only* method of establishing deliberate indifference. *Id.* at 758. Allegations that a defendant refused to assess or diagnose a plaintiff's medical condition, while certainly sufficient to establish deliberate indifference, are not necessary or required.

deliberate indifference. *See* Def.'s Mot. to Dismiss at 2 [Doc. 22] (explaining that "[t]his Motion to Dismiss focuses on the subjective element of the deliberate indifference standard"). Thus, the *only issue* before this Court is whether Plaintiff's Amended Complaint has sufficiently alleged that Defendant Fitting knew of and consciously disregarded Plaintiff's serious medical needs.

### A. Plaintiff's First Claim for Relief sufficiently alleges that Defendant Fitting consciously disregarded his serious medical needs.

With respect to Plaintiff's First Claim for Relief, which strictly concerns the medical treatment he received while incarcerated in November 2013, Defendant Fitting maintains that Plaintiff has merely expressed a disagreement about the course of treatment he was receiving. In support of this position, Defendant Fitting highlights the fact that Plaintiff's Amended Complaint "admits" that she made the decision to place Plaintiff on an alcohol withdrawal protocol. Defendant Fitting contends that because Plaintiff has conceded that she provided him with *some* medical treatment, and did not entirely ignore him, he cannot claim that she acted with deliberate indifference. *See* Def.'s Mot. to Dismiss at 15 ("Once again, this is a medical decision regarding the appropriate course of treatment, not a situation where an inmate's medical needs were ignored"). Defendant Fitting, however, blatantly misstates the law. The Tenth Circuit has been clear: where the medical care provided to an inmate is "patently unreasonable," deliberate indifference may be inferred notwithstanding the fact that some form of care was provided. *See Self*, 439 F.3d at 1232; *see also Heidtke v. Corr. Corp. of Am.*, 489 Fed. Appx. 275, 280 (10th Cir. 2012).

Here, Plaintiff's Amended Complaint clearly alleges that Defendant Fitting responded to an obvious risk to Plaintiff's health with treatment that was patently unreasonable.

> 34. Despite knowing that Mr. Schwark had not received any of his prescribed medications in days and that he was exhibiting obvious symptoms of withdrawal, Dr. Fitting made the patently unreasonable decision to place him on an alcohol

7

> withdrawal protocol without any of his medication, or even alternative medications, to treat his underlying condition and/or symptoms of withdrawal. Dr. Fitting made this decision without ever personally speaking to or examining Mr. Schwark.  To this day, Mr. Schwark has never met Dr. Fitting in person.

Pl.'s Amended Compl. ¶ 34.

The unreasonableness of Defendant Fitting's actions are supported by Plaintiff's allegations that she refused to provide him with *any* medication to treat his underlying conditions and/or obvious symptoms of withdrawal, *see Self*, 439 F.3d at 1232-33 (explaining that treatment will be patently unreasonable where a doctor orders treatment inconsistent with the symptoms presented), and that she had never examined or even spoke to Plaintiff before making these decisions. *See Mata*, 427 F.3d at 745 (noting that where a defendant fails to assess or diagnose an inmate's medication condition, deliberate indifference will be inferred).

Moreover, Plaintiff's Amended Complaint clearly alleges that the individual defendants, including but not limited to Defendant Fitting, acted with deliberate indifference when they willfully ignored Judge Groome's court order that Plaintiff be administered his medications.

> 80. Individual Defendants continued to act in bad faith and with deliberate indifference to Mr. Schwark's serious medical needs when they willfully ignored Judge Groome's order, Dr. Singer's medical directive, and Mr. Schwark's repeated requests for medical attention.

Pl.'s Compl. ¶ 80.

Defendant Fitting's reliance on *Boyett v. County of Wash.*, 282 Fed. Appx. 667, 674 (10th Cir. 2008), does not alter this conclusion  In *Boyett*, the Tenth Circuit was confronted with the argument that the decision to prescribe an inmate with a substitute medication—and not the exact medication that he had been previously prescribed—is sufficient to establish deliberate indifference. *Boyett*, 282 Fed. Appx. at 674.  In rejecting this argument, the Tenth Circuit

narrowly held that the "prescription of substitute medication […] does not demonstrate deliberate indifference." *Id.* (explaining that an inmate is not entitled to any particular course of treatment).

Here, in contrast to *Boyett*, Plaintiff has alleged that Defendant Fitting refused to provide him with *any medication* to treat his symptoms of withdrawal and that this decision was patently unreasonable.[2] *See* Pl.'s Amended Compl. ¶ 34. In doing so, Plaintiff does not claim that he was entitled to any particular course of treatment. Rather, Plaintiff solely claims that he was entitled to adequate and/or reasonable medical treatment, and that such treatment was not provided because of Defendant Fitting's deliberate indifference. In light of the fact that the Tenth Circuit's decision in *Boyett* did not address these distinct circumstances, it has no bearing on the disposition of Defendant Fitting's Motion to Dismiss.

Because Plaintiff has indisputably alleged facts which indicate that Defendant Fitting consciously disregarded Plaintiff's serious medical needs while he was incarcerated in November 2013, her Motion to Dismiss Plaintiff's First Claim for Relief must be denied.

### B. Plaintiff's Second Claim for Relief sufficiently alleges that Defendant Fitting knew of and consciously disregarded his serious medical needs.[3]

At the outset, Defendant Fitting contends that Plaintiff has failed to allege that she had actual knowledge of the serious repercussions that would result from not giving Plaintiff his medications while he was incarcerated in February and March of 2014. *See* Def. Mot. to Dismiss at 12 [Doc. 22] (claiming that Plaintiff has only alleged that "Park County Jail" had actual knowledge of these serious repercussions). The plain language of Plaintiff's Amended

---

[2] It is also important to note that in *Boyett*, the medical professional that prescribed the plaintiff with a substitute medication had personally evaluated and spoken with him. *See Boyett v. County of Wash.*, 2006 U.S. Dist. LEXIS 86910, * 68 (D. Utah Nov. 28, 2006).

[3] While Plaintiff's First Claim for Relief concerns his initial period of incarceration in November 2013, Plaintiff's Second Claim for Relief pertains to his incarceration in February and March of 2014, after he returned to the Jail from his medical furlough.

Complaint, however, undoubtedly refutes this contention. As alleged in Plaintiff's Amended Complaint:

> 62. Due to the sudden withdrawal from his medication, Mr. Schwark began to suffer major hallucinations. He became increasingly more incoherent and refused to eat or drink.
>
> 63. Although Nurse Cantebury updated Dr. Fitting on Mr. Schwark's worsening condition, she refused to give him his medications.

Pl.'s Amended Compl. ¶ 62-63. Similarly, Plaintiff has alleged that:

> 65. On March 6, 2014, Nurse Cantebury, in an email to Dr. Fitting, questioned whether or not giving Mr. Schwark his prescribed medication was causing his hallucination and psychosis. Nurse Cantebury wrote "Returning to BID Xanax I mg ER has Kyle Schwark more coherent and he is trying to figure out what happened yesterday. Yes major hallucinations are his problem when off his addiction. *Is Seboxen a drug you can just take off someone without dastardly consequences?* I am working to get him coherent and cooperative enough to fill out the packet.

Pl.'s Amended Compl. ¶ 65 (emphasis in original). Because these allegations indicate that Defendant Fitting was aware that the failure to provide Plaintiff with his medications posed a substantial risk to his health, her claim that she did not possess "actual knowledge" of this risk is without merit.

Additionally, Defendant Fitting contends that Plaintiff has failed to allege that she consciously disregarded his serious medical needs. Defendant Fitting has taken the position that her decision to discontinue administering Plaintiff his medications, and not provide him with any alternative medications, was purely a medical decision, and is therefore insulated from judicial scrutiny. This argument, however, is similarly unpersuasive.

First, Plaintiff's Amended Complaint alleges that Defendant Fitting made the decision to discontinue Plaintiff's medications, despite having knowledge that Judge Groome had explicitly ordered the Jail to administer these medications to him on a "timely basis" and for "[his]

10

benefit." Pl.'s Compl. ¶¶ 18; 80. By alleging that Defendant Fitting blatantly and willfully disregarded Judge Groome's order, Plaintiff's Amended Complaint indicates that she understood the importance of providing Plaintiff with his medications, but nevertheless intentionally failed to do so. *Id.*

Second, Plaintiff's Amended Complaint alleges that despite having knowledge that his condition was worsening due to the sudden withdrawal of his medications, Pl.'s Amended Compl. ¶ 62-63, Defendant Fitting refused to provide him with any treatment to address his underlying medical conditions and/or his symptoms of withdrawal. Pl.'s Amended Compl. ¶ 56.

> 56. Dr. Fitting never provided Mr. Schwark with any alternative treatment. Rather, Dr. Fitting denied him with access to any treatment for either his underlying medical conditions or for his symptoms of withdrawal.

*Id.* Finally, Plaintiff has alleged that Defendant Fitting made the decision to deny him with access to his medications—or any alternative medications—despite having actual knowledge that in November 2013, this very same course of action resulted in significant harm to Plaintiff's health.

> 88. Nevertheless, and with deliberate indifference to Mr. Schwark's serious medical needs, Defendants intentionally failed to give Mr. Schwark his medication or provide him with medical care. They do so despite having actual knowledge that Mr. Schwark had suffered significant injuries when he was prohibited from taking his medications the last time he was incarcerated at Park County Jail only months before in 2013.

Pl.'s Amended Compl. ¶ 88.[4] Taken together, these factual allegations make it unmistakably clear that Defendant Fitting failed to prescribe Plaintiff his medication, or any other alternative medications, despite having knowledge that this course of action would pose a substantial risk of

---

[4] This collective reference to all "Defendants," undoubtedly meets the fair notice standard required by Fed. R. Civ. P. 8, as Plaintiff's Amended Complaint makes it abundantly clear what acts are attributable to Defendant Fitting. *See Robbins*, 519 F.3d at 1250.

11

serious harm to his health. *See Farmer*, 511 U.S. at 842 (explaining that deliberate indifference will be established where the defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm"); *see also Mata*, 427 F.3d at 752 (same). Because these allegations are indisputably sufficient to establish that Defendant Fitting acted with deliberate indifference, her Motion to Dismiss Plaintiff's Second Claim for Relief must be denied.

## CONCLUSION

Because it is impossible to conclude, at this stage of the litigation, that Plaintiff has alleged no conceivable set of facts that could support his claims against Defendant Fitting, her Motion to Dismiss must be denied in its entirety.

Dated this 13th day of June, 2016.

KILLMER, LANE & NEWMAN, LLP

*s/ Julian G.G. Wolfson*
Julian G.G. Wolfson
David A. Lane
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000 (phone)
(303) 571-1001 (fax)
jwolfson@kln-law.com
dlane@kln-law.com

*Attorneys for Plaintiff*