IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-2507-JLK

KYLE JEFFERY SCHWARK,

      Plaintiff,

v.

SHERIFF FRED WEGENER, in his official and individual capacities,
NURSE SUSAN CANTERBURY, in her individual capacity,
NURSE JERI SWANN, in her individual capacity,
NURSE CATHLENE PEARCE, in her individual capacity,
DOCTOR KATHERINE FITTING, in her individual capacity,
CAPTAIN DANIEL MULDOON, in his individual capacity,

      Defendants.

---

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

---

      Plaintiff, by and through his attorneys, David A. Lane, Andy McNulty, and Eudozie (Dunia) Dickey of KILLMER, LANE & NEWMAN, LLP, hereby brings this Complaint and alleges as follows:

**INTRODUCTION**

      1.     This is an action by Kyle Jeffery Schwark, a former inmate at the Park County Jail in Park County, Colorado. Mr. Schwark is seeking redress and damages for the deliberate indifference to his serious medical needs shown by Defendants' persistent refusal to give Mr. Schwark specific mediations despite a doctor's order that these were necessary for his health and a Court order that directed them to do so.

2.      As a result of failing to provide Mr. Schwark with his medications, he suffered multiple seizures, which ultimately caused him to fracture his cervical spine and suffer a deep laceration on his head.  As a result of these serious injuries, Mr. Schwark was transferred to Denver Health for treatment.

3.      After being released on medical furlough, Mr. Schwark returned to the Park County Jail where he was yet again denied access to the medications that he had been previously prescribed despite having actual knowledge that refusal to provide such medications would pose a substantial risk to his health.

4.       As a result, Mr. Schwark suffered a complete psychological breakdown requiring him to be hospitalized, once again, for a prolonged period of time.

5.      Due to of Defendants' deliberately indifferent acts and/or omissions, which are incompatible with Eighth Amendment's prohibition on cruel and unusual punishment, Mr. Schwark continues to suffer serious emotional and physical harm.

**JURISDICTION AND VENUE**

6.      This action arises under the Constitution and laws of the United States and is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331. Jurisdiction supporting Plaintiffs' claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

7.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Colorado, and all of the parties were residents of the State at the time of the events giving rise to this litigation.

**PARTIES**

**Plaintiff**:

8.      At all times pertinent hereto, the Plaintiff, Kyle Jeffery Schwark, was a citizen of the United States of America and a resident of the State of Colorado.

**Defendants**:

9.      At all times relevant to the subject matter of this litigation, all Defendants were citizens of the United States and residents of the State of Colorado. At all relevant times, all Defendants were acting under color of state law.

10.      Defendant Sheriff Fred Wegener is the sheriff of Park County, Colorado, with overall responsibility for establishing customs, practices and policies for the medical care of all inmates and staff in the county jail. He is also responsible for the training and supervision of the entire staff of the jail.  In this capacity, he is directly responsible for either directly ensuring that appropriate medical care is given to all of the prisoners in custody or for training and supervising those medical caregivers and other staff responsible for ensuring an inmate's medical needs are being met.

11.      Defendant Nurse Susan Canterbury, an employee of Park County Jail, is the supervising nurse responsible for managing the duty nurses at the Park County Jail and ensuring that appropriate medical care is provided to the inmates at Park County Jail.

12.      Defendant Nurse Jeri Swann, an employee of Park County Jail, is a duty nurse responsible for assessing the medical needs of inmates at the Park County Jail and ensuring that appropriate medical care was rendered to them.

13.     Defendant Cathlene Pearce, an employee of Park County Jail, is a duty nurse responsible for assessing the medical needs of inmates at the Park County Jail and ensuring that appropriate medical care was rendered to them.

14.     Defendant Katherine Fitting, an employee of Park County Jail, is a supervising physician responsible for overseeing the medical needs of the inmates at the Park County Jail and ensuring that appropriate medical care was rendered to them.

15.     Defendant Daniel Muldoon, an employee of Park County Jail, is a Captain responsible for running the Park County Jail, which includes ensuring that appropriate medical care was rendered to inmates and that inmates who are in need of emergency medical treatment are transported out of the Park County Jail.

## FACTUAL ALLEGATIONS

16.     On November 6, 2013, Judge Stephen A. Groome sentenced Mr. Schwark to 60 days of custody and 3 years of probation for a misdemeanor alcohol-related driving offense.

17.     During his sentencing hearing, both Mr. Rotole, Mr. Schwark's criminal lawyer, and Mr. Schwark himself, requested a stay of the execution of the judgment in order for Mr. Schwark to get his prescribed medication and letters from his doctors detailing why he needed the medicine and how it should be administered, which he planned to provide to the Park County Sheriffs upon his arrival at the jail so they could administer the medication during his incarceration.

18.     Judge Groome granted the stay of execution until November 12, 2013.

4

19.     During the imposition of sentence, Judge Groome stated "I want to make sure the mitt indicates that you are to take your prescription medication on a timely basis.  I'm going to put that in there, because for your benefit so there is no misunderstanding in the jail."

20.     On November 12, 2013, Mr. Schwark reported to the Park County Jail as directed by Judge Groome.

21.     Around 7:00 p.m. on November 12, 2013, during the booking process, Mr. Schwark gave his medication and his doctor's letters explaining the purpose and protocol for his prescriptions to the Park County deputy assigned to booking.

22.     Mr. Schwark had a letter from Dr. Jonathan W. Singer verifying that Mr. Schwark had been under Dr. Singer's care for opioid dependency, lead toxicity, and anxiety. Dr. Singer listed the name and dosage of each medication he prescribed for Mr. Schwark's ongoing care. Dr. Singer concluded that the Park County deputies should "make certain that he stays on these medications."

23.     Mr. Schwark also listed his required medications on the Medical Questionnaire and on the Emergency Notification form.

24.     Mr. Schwark reminded both the deputy assigned to booking and the deputy assigned to the F pod where he was being housed, that Judge Groome had ordered that he must receive his medication in a timely manner.

25.     Despite providing a court order and Dr. Singer's letter, upon information and belief, Mr. Schwark did not receive any medication or any medical attention on November 12, 2013.

26.     Upon information and belief, on November 13, 2013, Mr. Schwark repeatedly asked Nurse Cantebury, Nurse Pearce and Nurse Swain, as well all of the deputies assigned to F pod, about his medication.  Despite having knowledge that Mr. Schwark needed his medications and that withholding his medications imposed a substantial risk to his health, Defendants Cantebury, Pearce, and Swain nonetheless ignored Mr. Schwark's urgent requests for medical care.

27.     Because Defendants did not provide Mr. Schwark with any alternative medicines or alterative courses of treatment, Defendants effectively denied Mr. Schwark access to any medical care.

28.     Mr. Schwark's condition became so bad that he was unable to sleep the night of November 13, 2013 due to the sudden withdrawal of his medications.

29.     On the morning of November 14, 2013, Mr. Schwark could not drink fluid or eat food because of his rapidly deteriorating condition.

30.     Mr. Schwark continued to wait in the medical line for medical attention, pressed the emergency intercom button repeatedly, and wrote "kites" expressing his need for medical attention.  Nonetheless, Nurse Cantebury, Nurse Pearce, Nurse Swain and the other Park County deputies continued to consciously disregard Mr. Schwark's serious medical needs by not giving him his medications or any other medical treatment.

31.     Around 1:30 pm on November 14, 2013, having been denied and any all medical treatment, Mr. Schwark began seizing on the floor of his cell in F pod due to Defendants failure to provide him with his medications, which they knew or should have known posed a substantial

risk to his health. After becoming aware that he had begun seizing, Nurse Pearce went to Mr. Schwark's cell and placed a blanket around his head in order to "prevent any injuries."

32.     Although Mr. Schwark was subsequently taken to medical pod of the Park County jail to treat the symptoms from his withdrawal the medical staff still denied him his medication and failed to provide him with any alternative treatment.

33.     Mr. Schwark's condition worsened while he was in the medical pod as evidenced by the fact that he vomited and was unable to eat or drink any fluid.

34.     Only then, however, did Nurse Pearce and Nurse Cantebury call Dr. Katherine Fitting, the supervising physician at Park County Jail, to advise her of Mr. Schwark's condition.

35.     Despite knowing that Mr. Schwark had not received any of his prescribed medication in days and that he was exhibiting obvious symptoms of withdrawal, Dr. Fitting made the patently unreasonable decision to place him on an alcohol withdrawal protocol without any of his medications, or even alternative medications, to treat his underlying conditions and/or symptoms of withdrawal. Dr. Fitting made this decision without ever personally speaking to or examining Mr. Schwark.  To this day, Mr. Schwark has never met Dr. Fitting in person.

36.     Around 5:10 p.m. on November 14, 2013, Nurse Pearce, in response to Mr. Schwark's obvious signs of exhaustion, told Mr. Schwark to try to sleep on an unrestrained gurney with no side rails, notwithstanding the fact that he just had a seizure a couple of hours earlier. Having actual knowledge that Mr. Schwark had just suffered from a seizure, Defendant Pearce knew or should have known that leaving Mr. Schwark on an unrestrained gurney with no side rails posed a substantial risk to Mr. Schwark health, but nonetheless ignored this obvious risk.

37.     Due to sudden withdrawal from his medication, Mr. Schwark predictably suffered another seizure and fell off of the gurney onto the floor.  As a result, Mr. Schwark severely cut his head and broke the vertebrae in his neck and back.

38.     Only after enduring two seizures and displaying a variety of other symptoms which indicated that he needed immediate medical attention, did the staff at the Park County Jail decide to take Mr. Schwark to the emergency room at St. Anthony's Summit Medical Center.

39.     At St. Anthony's Summit Medical Center, the on call doctor discovered that, in addition to the head laceration, Mr. Schwark had ripped his ear lobe and fractured his cervical spine as a result of falling on the floor from the gurney.

40.     On November 15, 2013, Mr. Schwark was transferred to the neurology department at Denver Health Medical Center due to the fracture in his cervical spine.  Despite the seriousness of his condition, Mr. Schwark was still doubled handcuffed to the hospital bed.

41.     On November 17, 2013, while still handcuffed to the hospital bed at Denver Health, Mr. Schwark received a furlough order from Sheriff Wegener of Park County releasing him from the custody of the Park County Sheriff's Office due to his medical conditions which the order characterized as "serious and life threatening."

42.     The order placed Mr. Schwark on furlough "until such time as he is authorized by his Doctor to complete his sentence."

43.     Although Mr. Schwark's handcuffs were removed, the Park County deputies had essentially left Mr. Schwark stranded in Denver without any of his personal belongings including his clothes, wallet or cell phone.

44.     Mr. Schwark was fortunate enough to get in touch with his elderly mother, who immediately flew in from Rochester, New York to Denver to help her son.

45.     Despite his serious medical condition, Mr. Schwark was summarily discharged from Denver Health on November 19, 2013.

46.     For the next three months, Mr. Schwark was essentially home-bound and bed-ridden due to his cervical facture.  Mr. Schwark was required to wear C-collar at all times and undergo extensive physical therapy to regain strength and mobility.

47.     On February 26, 2014, Mr. Schwark was sentenced in Park County District Court to complete the remainder of his 60-day sentence originally imposed on November 6, 2013 for violating his probation by failing to notify his probation officer once he was released from the hospital.

48.     During the sentencing hearing, Mr. Schwark repeatedly expressed his concern to the Court about the jail continuing to deny him access to his medication during his period of incarceration.  Mr. Schwark recounted for the Court his horrific experience in November.

49.     The Judge then allowed Captain Muldoon from Park County Jail to make a statement for the record regarding Pack County's policy regarding medication. "Well, sir, our Jail Policy says that the Jail Medical Director trumps any outside medical.  So, before we go and issue meds, we have to look into it, and we have to make sure that nothing is contraindicated, which happens quite often.  People go to variety of different doctors, Get a medication from this Doctor, another medication from that Doctor.  They cause problems.  So, we need to review everything.  Have it medically approved."

50.     Mr. Schwark begged the Judge to direct the jail to give his medication.

51.     In response to Mr. Schwark's request, the Judge said that he did not have the power to order the Jail to give him his medication.

52.     Mr. Schwark was subsequently rebooked in Park County Jail.  As he had previously done back in November, and in accordance with Park County Jail's own policy, Mr. Schwark explained to the deputy that Dr. Singer could provide the jail a letter explaining the purpose and protocol for his medications.

53.     Mr. Schwark also listed his required medications on the Medical Questionnaire and on the Emergency Notification form.

54.     Upon entering the Park County Jail, and having direct knowledge of his mental health conditions, prison officials, including Defendant Muldoon, placed Mr. Schwark in solitary confinement for approximately two weeks.

55.     Although Park County Jail had actual knowledge of the serious repercussions of not giving Mr. Schwark his medications, on February 25, 2014, Dr. Fitting ordered the medical staff in the Jail to discontinue giving him two of his medications: suboxone and chlordiazepoxide.  In addition, Dr. Fitting began to wean Mr. Schwark off alprazolam (Xanax)., giving him 1 mg doses of the drug sporadically and only when he displayed extreme symptoms of withdrawal.

56.     Dr. Fitting made these decisions without ever physically meeting Mr. Schwark and/or examining him.

57.     Dr. Fitting never provided Mr. Schwark with any alternative treatment. Rather, Dr. Fitting denied him with access to any treatment for either his underlying medical conditions or for his symptoms of withdrawal.

58.     Despite knowledge of Dr. Singer's medical directive and Mr. Schwark's continued requests for medication, the Park County Jail deputies and medical staff refused to give him his medications.

59.     Upon information and belief, Defendants never sought to make sure that Mr. Schwark's medications were not contraindicated.

60.     Having been placed in solitary confinement for a prolonged period of time, and without his medicine, Mr. Schwark's health began to rapidly deteriorate.  Despite obvious signs that placing Mr. Schwark into solitary confinement without his medication caused him to suffer immense pain and posed a substantial risk to his health, Defendants virtually ignored Mr. Schwark's continued attempts to obtain medical attention.

61.     On February 28, 2014, Mr. Schwark's mother called the medical staff at the jail to inquire about whether she needed to bring his medications but, upon information and belief, they did not respond.

62.     Mr. Schwark severely exacerbated his neck injury because he was not allowed to wear his protective cervical hard collar and was made to sleep on a bare concrete floor with no head or neck support.

63.     Due to the sudden withdrawal from his medication, Mr. Schwark began to suffered major hallucinations.  He became increasingly more incoherent and refused to eat or drink.

64.     Although Nurse Cantebury updated Dr. Fitting on Mr. Schwark's worsening condition, she refused to give him his medications.

65.    On March 5, 2014, Dr. Singer faxed Mr. Schwark's medical directives to Nurse Cantebury at the Park County Jail.  Despite Mr. Schwark's worsening condition, the medical and jail staff ignored Dr. Singer's medical orders.

66.    Mr. Schwark entered a state of psychosis on March 5, 2014. At this time, Nurse Canterbury recognized that Mr. Schwark was exhibiting psychosis and relayed this information to Captain Muldoon. Nurse Canterbury informed Captain Muldoon that Mr. Schwark needed immediate medical attention to remedy the psychosis he was experiencing. Captain Muldoon refused to provide Mr. Schwark with the medical treatment he needed for the next five days. Until March 10, 2013, Mr. Schwark suffered psychosis, which has damaged his psyche to this day and caused him immense pain and suffering.

67.    On March 6, 2014, Nurse Cantebury, in an email to Dr. Fitting, questioned whether not giving Mr. Schwark his prescribed medication was causing his hallucination and psychosis. Nurse Cantebury wrote "Returning to BID Xanax I mg ER has Kyle Schwark more coherent and he is trying to figure out what happened yesterday.  Yes major hallucinations are his problem when off his addiction. *Is Seboxen a drug you can just take someone off without dastardly consequences?*  I am working to get him coherent and cooperative enough to fill out the packet."

68.    On March 10, 2014, due to the Park County officials' and medical staff's decision to keep Mr. Schwark off of his medications and place him in solitary confinement and Mr. Schwark's psychotic breakdown, Mr. Schwark was taken to Denver Health Medical Center.

69.    Mr. Schwark has continued to suffer with severe depression, panic and anxiety as well as PTSD since that time.

70.     Defendant Wegener, as the Sheriff of Park County, had a duty to ensure that his staff was appropriately trained and supervised to follow medical directives of both the Court and doctors to provide prescribed medication to inmates.

71.     Defendant Wegener failed to adequately train or supervise his staff resulting in deliberate indifference to Mr. Schwark's serious medical needs on *two separate occasions*.

72.     Mr. Schwark has been substantially injured as a direct and proximate result of the wrongful conduct of each of the Defendants.  These injuries include, but are not limited to, the loss of constitutional rights, physical injuries, impairment, great pain and emotional distress, anxiety, shock, sadness, depression, anger and stress.

73.     Mr. Schwark has significant physical, economic and emotional damages as a result of him not receiving his prescribed medications.

74.     As a direct and proximate result of Defendants' conduct, Mr. Schwark's earning capacity has been significantly impaired, resulting in substantial and ongoing losses in past and future earnings in an amount that will be proven at trial.  He worked as a tree cutter for over 15 years.  He has not worked consistently in this capacity since this incident and will likely not be able to do this type of work again.

75.     Defendants' conduct was engaged in with deliberate indifference to the constitutionally protected rights of Mr. Schwark, entitling him to punitive damages.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*§ 1983 – Eighth Amendment Violation - Failure to Provide Medical Care and Treatment*
*November 2013*
**(Against All Defendants)**

76.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

77.     At all times relevant to the allegations in this Complaint, Defendants acted or failed to act under color of state law.

78.     At all times relevant to the allegations in this Complaint, Defendants knew or should have known that Mr. Schwark required specific medications on a daily basis, and that failure to provide such medications would pose a substantial risk to Mr. Schwark's health.

79.     Nevertheless, and with deliberate indifference to Mr. Schwark's serious medical needs, Defendants intentionally failed to give Mr. Schwark his medication or provide him with medical care. They did so despite their knowledge of Mr. Schwark's serious medical needs, thereby placing him in excruciating pain and at risk for substantial injuries.

80.     The acts or omissions of all Defendants were conducted within the scope of their official duties and employment.

81.     The acts or omissions of all Defendants were the legal and proximate cause of Mr. Schwark's injuries.

82.     Individual Defendants continued to act in bad faith and with deliberate indifference to Mr. Schwark's serious medical needs when they willfully ignored Judge Groome's order, Dr. Singer's medical directive, and Mr. Schwark's repeated requests for medical attention.

83.     The acts and/or omissions of each Defendant caused Mr. Schwark damages in that he suffered extreme physical and mental pain during the time period described in this Complaint. The deliberately indifferent actions and/or inactions of Defendants as described herein, deprived

Mr. Schwark of his right to be free from cruel and unusual punishment and of his rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

84.     As a direct result of Defendants' unlawful conduct, Mr. Schwark has suffered injuries, damages, and losses as described herein, which entitle him to compensatory damages and attorneys' fees to be determined at trial.

85.     As a direct result of Defendants' unlawful conduct, Mr. Schwark has incurred significant special damages, including medically related expenses, and will continue to incur these expenses in an amount to be established at trial.

86.     Mr. Schwark is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983 as the actions of each of these individual Defendants have been taken maliciously, willfully and/or with a reckless or wanton disregard of Mr. Schwark's constitutional rights.

**SECOND CLAIM FOR RELIEF**
*§ 1983 – Eighth Amendment Violation - Failure to Provide Medical Care and Treatment*
*February/March 2014*
**(Against All Defendants)**

87.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

88.     At all times relevant to the allegations in this Complaint, Defendants acted or failed to act under color of state law.

89.     At all times relevant to the allegations in this Complaint, Defendants knew or should have known that Mr. Schwark required specific medications on a daily basis, and that failure to provide such medications would pose a substantial risk to Mr. Schwark's health.

90.     Nevertheless, and with deliberate indifference to Mr. Schwark's serious medical needs, Defendants intentionally failed to give Mr. Schwark his medication or provide him with medical care. They did so despite having actual knowledge that Mr. Schwark had suffered significant injuries when he was prohibited from taking his medications the last time he was incarcerated at Park County Jail only months before in November 2013.

91.      Defendants' decision to place Mr. Schwark into solitary confinement, where his access to medical care was even more limited, further demonstrates that Defendants were deliberately indifferent to Mr. Schwark's serious medical needs and to the significant risk that he would suffer harm.

92.     The acts or omissions of all Defendants were the legal and proximate cause of Mr. Schwark's injuries.

93.     The acts and/or omissions of each Defendant caused Mr. Schwark damages in that he suffered extreme physical and mental pain when he was re-incarcerated in February 2014.

94.     The deliberately indifferent actions and/or inactions of Defendants as described herein, deprived Mr. Schwark of his right to be free from cruel and unusual punishment and of his rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

95.     As a direct result of Defendants' unlawful conduct, Mr. Schwark has suffered injuries, damages, and losses as described herein, which entitle him to compensatory damages and attorneys' fees to be determined at trial.

96.     As a direct result of Defendants' unlawful conduct, Mr. Schwark has incurred

significant special damages, including medically related expenses, and will continue to incur

these expenses in an amount to be established at trial.

97.     Mr. Schwark is entitled to punitive damages against each of the individually

named Defendants under 42 U.S.C. § 1983 as the actions of each of these individual Defendants

have been taken maliciously, willfully and/or with a reckless or wanton disregard of Mr.

Schwark's constitutional rights.

### THIRD CLAIM FOR RELIEF
*§1983-Eighth Amendment Violation-Supervisory Liability for Failure to Train and Supervise*
**(Against Defendant Wegener)**

98.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set

forth herein.

99.     Defendant Wegener had a duty to train and supervise correctional officers,

medical staff, and mental health staff in order to ensure the safety and well-being of prisoners

held at Park County Jail.

100.     Defendant Wegener failed to discharge these duties.

101.     Defendant Wegener acted with deliberate indifference to Mr. Schwark's serious

medical needs in failing to adequately train and supervise correctional officers, medical staff, and

mental health staff.

102.     Defendant Wegener's failure to properly train and supervise his subordinate

employees was a moving force and proximate cause of the violations of Mr. Schwark's

constitutional rights.

103.     The acts or omissions of Defendant Wegener caused Mr. Schwark damage in that he suffered from extreme physical and mental pain during the months after the cervical spine fracture.  Defendant Wegener's conduct deprived Mr. Schwark of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enters judgment in his favor and against Defendants, and grants:

(a)     Appropriate relief at law and equity;

(b)     Declaratory relief and other appropriate equitable relief;

(c)     Economic losses on all claims allowed by law;

(d)     Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(e)     Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(f)     Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

(g)     Pre- and post-judgment interest at the highest lawful rate;

(h)     Any further relief that this Court deems just and proper, and any other relief as allowed by law.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.

Dated this 14th of February, 2017.

KILLMER, LANE & NEWMAN, LLP

s/ Andy McNulty_____
David A. Lane
Andy McNulty
Eudoxie (Dunia) Dickey
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
dlane@kln-law.com
amcnulty@kln-law.com
ddickey@kln-law.com


ATTORNEYS FOR PLAINTIFF