# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02507-JLK

KYLE JEFFERY SCHWARK,

　　　Plaintiff,

v.

SHERIFF FRED WEGENER, in his official and individual
capacities;  NURSE SUSAN CANTERBURY, in her
individual capacity; NURSE JERI SWANN, in her individual
capacity;
NURSE CATHLENE PEARCE, in her individual capacity;
DOCTOR KATHERINE FITTING, in her individual
capacity,
CAPTAIN DANIEL MULDOON, in his individual capacity,

　　　Defendants.

---

## DEFENDANT KATHERINE FITTING, M.D.'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Katherine Fitting, M.D. ("Dr. Fitting"), by and through her attorneys,

CHILDS MCCUNE LLC, hereby moves for summary judgment in her favor under Fed. R.

Civ. P. 56(b). In support, Defendant states as follows:

The Defendant certifies that, pursuant to D.C. Colo. L. Civ. R. 7.1(A), counsel has

conferred with the attorneys for Plaintiff who oppose the relief sought herein.

## I.  <u>STATEMENT OF THE CASE</u>

This is a civil rights case brought by former Park County Jail inmate Kyle Jeffery Schwark against Dr. Fitting, three nurses, a Sheriff and a Captain who were involved with his medical care and treatment during two separate incarcerations at the Park County Jail.

Plaintiff claims civil rights violations under the Eighth Amendment's Cruel and Unusual Punishment, 42 U.S.C. § 1983, related to the alleged inadequacy of his medical care. Plaintiff claims that Dr. Fitting, while acting under color of state law, was deliberately indifferent to his medical needs during his incarceration in November 2013 and February 2014 because she denied him previously prescribed medications. Undisputed evidence, including jail records, deposition testimony and expert opinions, establish that in November 2013 Dr. Fitting initially ordered Plaintiff continue to receive his medications and, after a seizure, appropriately placed him on an alcohol withdrawal protocol. At the time of his second incarceration in February 2014, Dr. Fitting ordered a safe benzodiazepine taper protocol that would slowly help Plaintiff come off medications that are not permitted in the jail on a long-term basis and protect against possible alcohol withdrawal symptoms. When the jail staff made Dr. Fitting aware Plaintiff was exhibiting symptoms that may have been attributed to withdrawal, she ordered his medication be continued and referred his care over to a psychiatric specialist.

Dr. Fitting's care and medical treatment of Plaintiff during both incarcerations was entirely appropriate, did not violate clearly established law, and was not deliberately

indifferent or negligent. Accordingly, Dr. Fitting is entitled to qualified immunity and summary judgment on all claims against her.

## II. <u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

Plaintiff makes two claims of deliberate indifference against Dr. Fitting—the first is related to his November 2013 incarceration and the second is related to his February 2014 incarceration. Plaintiff asserts that at all times relevant to the allegations in his Second Amended Complaint, Dr. Fitting acted under color of state law. (Doc. 61, ¶77 and ¶88.).

The following are salient facts for purposes of this Motion:

### A.    <u>November 2013 Incarceration</u>

With respect to Plaintiff's November 2013 incarceration, Plaintiff alleges in his Second Amended Complaint that Dr. Fitting was deliberately indifferent to his serious medical needs because he was not given two of his prescription medications, Suboxone and Alprazolam (hereinafter, "Xanax"). As a result of not receiving his medications, he alleges that he was unable to sleep, eat, and drink, and suffered two seizures and a subsequent injury to his cervical spine. (Doc. 61 at ¶¶ 27-28 and ¶30).

1.    On November 12, 2013, Plaintiff reported to the Park County Jail to serve a 60-day sentence for an alcohol related driving offense. (Doc. 61 at ¶16 and 20).

2.    Around 7:00 p.m. on November 12, 2013, during the booking process, Plaintiff provided his medication and a doctor's letter explaining the purpose and protocol

for his prescriptions to the Park County deputy assigned to booking. (Doc. 61 at ¶21; Schwark.Park000006 and A0121, **Exh. A**).

3.      The letter from Plaintiff's physician explained that Mr. Schwark was under a physician's care for opioid dependency, lead toxicity, and anxiety. (Doc. 61 at ¶22; Schwark.Park000006, **Exh. A**).

4.      Plaintiff also listed his medications on the Medical Questionnaire and Emergency Notification forms at the jail. (Doc. 61 at ¶23; G0004, **Exh. B**).

5.      Plaintiff's two pertinent medications and dosages were: Suboxone, 8 mg/2 mg. sublingual film ½ to 1 daily and Alprazolam (hereinafter, Xanax), 1mg, 1 tablet twice to four times daily. (Schwark.Park000006, **Exh. A**).

6.      Plaintiff did not indicate a history of seizures on his medical intake form. (Schwark.Park000002, **Exh. A**).

7.      Plaintiff's Breathalyzer at booking was a .02, indicating alcohol in his system. (Schwark.Park 000001, **Exh. A**; SCHWARK000135, **Exh. C**).

8.      Plaintiff did not require any additional medication on the evening of November 12, 2013. (Schwark Dep. 144:6-14, Dec. 13, 2016, **Exh. D**).

9.      On November 13, 2013, Plaintiff received a ½ film of Suboxone in the morning and 2 mg of Xanax. (Schwark.Park 000009-10, **Exh. A**; Fitting Dep. 19:15-25; 26:23-25; 27:9-14; 30:10-14, Jan. 5, 2017, **Exh. E**; Pearce Dep. 42:23-25 through 43:1-7,

Mar. 9, 2017, **Exh. F**; Canterbury Dep. 21:15-16, Feb. 7, 2017, **Exh. G**; Swann Dep. 16:20-21, 25:17-25, 26:1-20, Mar. 13, 2017, **Exh. H**).

10.     The evening of November 13, 2013, Plaintiff received 1mg of Xanax. (*Id*.).

11.     On the morning of November 14, 2013, Plaintiff again received ½ film of Suboxone, and 2 mg. of Xanax. (*Id*.).

12.     Plaintiff had a seizure in his Pod in the early afternoon of November 14, 2013. (Doc. 61, ¶31; A0281, **Exh. I**)

13.     Following Plaintiff's seizure, he was transported via wheelchair to the jail's Medical Unit. (Pearce Dep. 17:6-16, **Exh. F**).

14.     Nurse Swann phoned Dr. Fitting to report Plaintiff's seizure. (Pearce Dep. 19:1-14, **Exh F**; Schwark.Park 000010, **Exh. A**).

15.     Dr. Fitting adjusted his medication to put him on a different dose of benzodiazepines. (Schwark.Park 000010, **Exh. A**; Fitting Dep. 40: 1-9, **Exh. E**; Swann Dep. 16:21-24 and 46:6-25 through 47:1-3, **Exh. H**).

16.     At her deposition, Dr. Fitting testified that it was her medial opinion that Plaintiff's seizure was a result of alcohol withdrawal because he presented to the jail on a with alcohol in his system and seized within the timeframe that is typically seen for alcohol-related withdrawal seizures. (Fitting Dep. 33:12-16, 36:3-19, 25:3-5, **Exh. E**; Pearce Dep. 36:23-25 through 37:1-5, **Exh. F**).

17.     Dr. Fitting testified that because it was her medical opinion that Plaintiff's seizure was a result of alcohol withdrawal, she ordered Plaintiff to be placed on an alcohol withdrawal protocol by substituting his Suboxone with Librium, a stronger and longer acting benzodiazepine than what he had been taking. (*Id.* Fitting Dep., 40:10-15, 33:4-8, **Exh. E**).

18.     Dr. Fitting testified that her expectation was that the 25 milligrams of Librium she prescribed after Plaintiff's first seizure would reduce the potential for any further alcohol withdrawal seizures. (Fitting Dep. 60:5-9, **Exh. E**).

19.     Plaintiff's' prescribing physician testified that he commonly prescribes Librium to prevent alcohol withdrawal. (Singer Depo. 26:21-23 and 96:1-20, Dec. 21, 2016, **Exh. J**).

20.     Defendant's experts, Jonathan I. Ritvo, M.D. and Tim Moser, M.D., opine that more likely than not Defendant's initial seizure was a result of alcohol withdrawal and not withdrawal from his medications because he received his medications as they had been prescribed by his physician and because seizures are not typically a side effect of withdrawal from Suboxone or Xanax. (**Exh. K**, Affidavit of Jonathan I. Ritvo, M.D. and **Exh. L**, Affidavit of Tim Moser, M.D.)

21.     Plaintiff remained in the jail's Medical Unit for observation. According to testimony by the jail nursing staff, Plaintiff appeared stable as he was talking, able to eat a portion of his lunch, and able to drink fluids. (Pearce Dep. 38:5-17, **Exh. F**).

22.     Plaintiff suffered a second seizure while in the Medical Unit. He fell and was transferred via ambulance to St. Anthony's Summit Medical Center and later Denver Health where he was diagnosed with a cervical spinal fracture. (SCWARK 000134-00135, **Exh. C**; Doc. 61, ¶38-40).

23.     Dr. Fitting had no further communications with the nursing staff at the jail or involvement with Plaintiff until it was reported to her that Mr. Schwark had a second seizure and had been transported to Denver Health. (Fitting Dep. 41:5-8, **Exh. E**).

**B.     February 2014 Incarceration**

With respect to his February 2014 incarceration, Plaintiff alleges "[a]lthough Park County Jail had actual knowledge of the serious repercussions of not giving Mr. Schwark his medication," on February 25, 2014, Dr. Fitting ordered the medical staff in the Jail to discontinue giving Plaintiff two of his medications and to wean him from a third medication. (Doc. 61 at ¶ 55). Plaintiff further alleges that Dr. Fitting never provided him with any alternative treatment, that Dr. Fitting never physically examined Plaintiff, and that Dr. Fitting denied him access to any treatment for "either his underlying medical condition or for his symptoms of withdrawal." (Doc. 61 at ¶¶ 56 and 57).

1.     On February 25, 2014, Plaintiff was arrested and returned to Park County Jail to complete the remainder of his sentence. (Schwark.Park 000025, **Exh. A**).

2.      During sentencing when Plaintiff begged the Judge to direct the jail to give him his medications, the Judge said he did not have the power to order the jail to give him his medications. (Doc. 61, ¶50 and 51.)

3.      Upon review of Plaintiff's prescription medications, Dr. Fitting ordered that Plaintiff discontinue Suboxone and instead of Librium, Dr. Fitting ordered Plaintiff continue taking his Xanax, but be placed on a Xanax weaning protocol. The wean protocol order was to take Xanax 1 mg, three times per day for three days, twice per day for three days, and once per day for three days. (Schwark.Park000026, **Exh. A**).

4.      Dr. Fitting testified that Suboxone was prescribed for opioid dependence and since he would not have access to opioids in the jail setting, there was no indication for that medication during his incarceration. (Fitting Dep. 93:20-25, **Exh. E**). See also, Affidavit of Tim Moser, M.D., **Exh. L**, ¶8).

5.      Dr. Fitting also testified that inmates should not be on benzodiazepines long term during incarceration and that Librium and Xanax are benzodiazepines. (Fitting Dep. 21:16-17 and 22:6-12.  See also, Affidavit of Jonathan I. Ritvo, M.D., **Exh. K**, ¶¶ 4 and 12, and Affidavit of Tim Moser, M.D., **Exh. L**, ¶¶ 5 and 6). She also testified that taking more than one benzodiazepine is contraindicated. (Fitting Dep. 85:15-25 and 93:2-25, **Exh. E**).

6.      During the Xanax taper protocol, Plaintiff's behavior suggested he may be having a psychotic episode. (Canterbury Dep. 53:1-6, **Exh. G**).  When Dr. Fitting was made

aware the medical staff observed potential psychotic symptoms, Dr. Fitting placed an order for Plaintiff to continue receiving the Xanax at his current dosage until his symptoms subsided. (Fitting Dep. 87:20-25 through 88:1-11, **Exh. E**).

7.      Dr. Fitting also referred Plaintiff to the jail's psychiatric specialist to address his condition. (Fitting Dep. 95:2-25 through 96:1-6, **Exh. E**).

8.      Dr. Fitting had no further involvement with Plaintiff after she referred him to the psychiatric specialist who took over his care and treatment. (*Id.*).

9.      Dr. Fitting testified that neither seizures nor hallucinations are typically symptoms of withdrawal from Suboxone, Xanax or Librium, and that his symptoms were more likely a result of alcohol withdrawal. (*Id.*).

10.     Plaintiff's treating provider, Dr. Singer, was not endorsed as a retained expert and did not review any records other than his own. (Singer Dep. 67:4-23, **Exh. J**). However, he testified that in his experience treating Plaintiff, Plaintiff drank alcohol at an abusive level, and that Plaintiff's seizures and psychosis were more likely a side effect of alcohol withdrawal than of withdrawal from Suboxone or Xanax. (*Id.* Singer Dep. 72:3-8 and 69:2-8).

11.     Fitting testified that the jail has a formulary of medications and often times it is necessary to substitute an inmate's medications for an equivalent medication that is approved. (Fitting Dep.18:9-25 through 19:1-13, 20:15-24, **Exh. E**). In order to ensure inmate safety, the evidence demonstrates that benzodiazepines are not appropriate on a

long-term basis in an incarceration because they are frequently abused, traded and sold within the jail. (*Id*. Fitting Dep. at 22:3-12).  Accordingly, the expectation is that patients will be weaned off benzodiazepines. (*Id*. Fitting Dep. at 31:1-21).

12.     Plaintiff did not endorse any experts to opine as to the applicable standard of care for Dr. Fitting, whether Dr. Fitting's medication management was reasonable, or whether Plaintiff's seizure in November 2013 and hallucinations in February 2014 were caused by any act or failure to act on the part of Dr. Fitting.  (See Plaintiff's Expert Witness Disclosures Pursuant to Fed.R.Civ.P. 26(a)(2), attached as **Exh. M**).

13.     Defendant disclosed two medical experts: Jonathan I. Ritvo, M.D. and Tim Moser, M.D.   (*See* Defendant Katherine Fitting, M.D.'s Expert Witness Disclosures, attached as **Exh. N**). Defendant's experts both opine and that Dr. Fitting's treatment and management of Plaintiff was reasonable and appropriate and her care does not evidence deliberate indifference to a serious medical need. (See also, Affidavit of Jonathan I. Ritvo, M.D., **Exh. K**, ¶15, and Affidavit of Tim Moser, M.D., **Exh. L**, ¶16).

## III.    ARGUMENT AND LAW

**A.     Legal Standard for Summary Judgment**

The court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248-50 (1986); *Concrete Works v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518.

The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; see Fed. R. Civ. P. 56(e). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Cone v. Longmont United Hosp. Ass'n.*, 14 F.3d 526, 533 (10th Cir. 1994). A party opposing summary judgment cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

**B.**      **Dr. Fitting is Entitled to Qualified Immunity**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1244 (2012) (internal quotation marks and citations omitted). See also Duncan v. Gunter, 15 F.3d 989, 992 (10th Cir. 1994) (internal quotation marks and citations omitted). "This immunity is an immunity from suit and not merely a defense to liability." *Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 644–45 (10th Cir.1988). "The question of whether a defendant is entitled to qualified immunity is a legal question for the court." *Redding v. Marsh*, 750 F. Supp. 473, 479 (1990).

"To survive summary judgment after a defendant has claimed qualified immunity, the plaintiff must demonstrate both (1) that the defendant's actions violated a constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Toler v. Troutt*, 631 Fed.Appx. 545, 547 (2015). "With regard to this second [prong], the relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances presented." *Dahn v. Adoption All.*, No. 13-CV-02504-

RM-CBS, 2014 WL 12496539, at *9 (D. Colo. Aug. 28, 2014). See also, *Boyett v. County of Washington*, 282 Fed.Appx. 667, 672.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. Although there does not need to be a prior case with precisely the same facts, our inquiry ... must be undertaken in light of the specific context of the case, not as a broad general proposition. The pertinent question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." (internal quotation marks omitted). *Whitington v. Lawson*, 424 Fed.Appx. 777 (10th Cir. 2011).

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. While this Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." (internal citations omitted) *White v. Pauly*, 137 S. Ct. 548, 551–52, 196 L. Ed. 2d 463 (2017), citing *Mullenix v. Luna*, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015). "Clearly established law should not be defined at a high level of generality." *Id.* See also, *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 2084, 179 L. Ed. 2d 1149 (2011).

Dr. Fitting is entitled to qualified immunity as her conduct did not violate clearly established law or Plaintiff's constitutional right under the Eighth Amendment to be free from cruel and unusual punishment. There is no established law guaranteeing Plaintiff a right to receive opioids and benzodiazepines during incarceration. Likewise, clearly established law does not prohibit a reasonable jail physician from ordering appropriate treatment and medication adjustments for inmates. Dr. Fitting's decision to taper Plaintiff off medications that were contraindicated and not appropriate for incarcerated patients was objectively reasonable and, according to statements by disclosed medical experts, well within the standard of care. Dr. Fitting responded reasonably to Plaintiff's symptoms of alcohol withdrawal and potential psychosis once informed by medical personnel at the jail about Plaintiff's condition. An appropriate exercise of medical judgment that does not rise to the level of negligent care is not a constitutional violation. As set forth in greater detail below, since her conduct did not violate clearly established law or Plaintiff's constitutional rights, Dr. Fitting is entitled to qualified immunity as a matter of law.

**B.    Legal Standard for Eight Amendment Violations**

The Eighth Amendment provides prisoners the right to be free from cruel and unusual punishments. This right is violated if prison officials show "deliberate indifference to an inmate's serious medical needs." *Boyett v. County of Washington*, 282 Fed. Appx. 667, 2008 WL 2483286 (10th Cir. June 19, 2008) (unpublished) citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

To establish an Eighth Amendment deliberate indifference claim, a prisoner must satisfy two requirements consisting of an objective and a subjective component. To meet the objective component the prisoner must establish that the deprivation alleged was sufficiently serious to constitute cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component requires the prison official to have a "sufficiently culpable state of mind." *Self v. Crum*, 439 F.3d 1227, 1230-31 (10th Cir. 2006). In the context of prison cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)). "Deliberate indifference" requires a state of mind "more blameworthy than negligence," but this can be "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. It is a state of mind akin to recklessness, and occurs when the defendant "knows of and disregards an excessive risk to [the] inmate['s] health or safety." *Id.* at 837. It is not enough to show that a defendant provided ineffective or even negligent medical treatment. *DeShaney v. Winnebago County Dep't. of Social Servs.*, 489 U.S. 189, 198 n. 5 (1989); *Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008).

In the context of the adequacy of medical care, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation, absent evidence the prison official 'knew about and disregarded a substantial risk of harm to the [prisoner's] health or safety.'" *Self v. Crum*, 439 F.3d at 1231 (quoting *Oxendine v.*

*Kaplan*, 241 F.3d 1272, 1277 (10th Cir. 2001)). "If an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability under this standard." *Smith v. LeJeune*, 203 F. Supp. 2d 1260, 1268 (D. Wyo 2002).

In *Boyett v. County of Washington*, 282 Fed. Appx. 667, 2008 WL 2483286 at **1, Mr. Boyett died in Washington County, Utah's Purgatory Correctional Facility a week after being arrested for failure to appear for a traffic offense. Boyett's surviving family members instituted a § 1983 action alleging that prison officials caused or contributed to Boyett's death by, amongst other allegations, withholding medications. The District Court granted summary judgment to all individual defendants on the basis of qualified immunity and to defendant Washington County on the claim of municipal liability. The Tenth Circuit affirmed. *Boyett v. County of Washington*, 282 Fed. Appx. 667, 2008 WL 2483286 at **1.

There, Boyett had two incarcerations at the correctional facility in the span of a week. Prior to Boyett's first booking and incarceration, a doctor at a local medical center examined Boyett and concluded that he was healthy enough for jail, but listed alcohol intoxication and recent hernia surgery under "diagnosis," and recommended that Boyett continue his regular dose of prescription Methadone. *Id.* After one day in jail, Boyett was released. Shortly thereafter, Boyett returned to the correctional facility, and Boyett's medical history chart included the information supplied by the doctor prior to Boyett's first incarceration. At the time of this second incarceration, Boyett was taking the prescription drugs Celexa, Xanax, and Methadone. Boyett's health began deteriorating four days into

his detention. Boyett was examined for his complaints, he was prescribed medications for his neck and back pain, and Clonidine to replace his prescription Methadone since Methadone was not allowed in Utah jails. *Id.* at **1 and 2. Over the course of the next several days, Boyett made several complaints to jail staff, injured himself during a fall down a flight of stairs, and had a decline in his mental health condition. Following this decline in mental health, Boyett was given several doses of an antipsychotic. Early the morning following the third injection of an antipsychotic, Boyett was found dead on his jail cell floor. *Id.* at **3.

In support of plaintiff's deliberate indifference claim, plaintiffs pointed to numerous acts or omissions including a failure to provide Boyett with the medicine and care prescribed by Boyett's treating physicians prior to incarceration. There, the Tenth Circuit concluded that a prescription of a substitute medication (Clonidine instead of Methadone) did not demonstrate deliberate indifference. In coming to this conclusion the Tenth Circuit cited to previous opinions recognizing the autonomy of jail house physicians. *See Callahan v. Poppell*, 471 F. 3d 1155, 1160 (10th Cir. 2006) ("[A] prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." (quoting *Dulany v. Carnahan*, 132 F. 3d 1234, 1240 (8th Cir. 1997))); *Perkins v. Kansas Dep't of Corrs.*, 165 F. 3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."). "Compliance with corporate policy is not part of the

deliberate indifference analysis." *Grassi v. Corr. Corp. of Am.,* 354 F. App'x 329, 332 (10th Cir. 2009).

**D.    Legal Standard for Negligence of a Professional.**

Under Colorado law, to establish negligence by a professional, the plaintiff must show: (1) a duty was owed; (2) the defendant breached that duty; (3) a causal connection between the breach and the resulting injury; and (4) damage to the plaintiff. *See United Blood Servs. v. Quintana*, 827 P.2d 509, 519-20 (Colo. 1992); *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 485 (Colo. App. 2003).

Unless the subject matter of a claim against a healthcare professional lies within the realm of common knowledge of ordinary persons, the standard of care for a healthcare defendant must be established by expert testimony. *Van Leeuwan v. Nuzzi*, 810 F.Supp. 1120, 1122 (D. Colo. 1993); *Melville v. Southward,* 791 P.2d 383, 387 (Colo.1990); *Connelly v. Kortz,* 689 P.2d 728, 729 (Colo.App.1984); *United Blood Servs. v. Quintana*, 827 P.2d 509, 519-20 (Colo. 1992); *Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.,* 2010 WL 3777303 *5 (10th Cir. Sept. 19, 2010); *accord Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913, 930 (Colo.1997) (same).

"Whether the standard is a matter of common knowledge is a determination committed to the sound discretion of the trial court," *Oliver v. Amity Mutual Irrigation Co.,* 994 P.2d 495, 497 (Colo.App.1999). Medical diagnosis and treatment generally involve technical knowledge and skill beyond the realm of the lay juror and it is thus "incumbent

upon the plaintiff to prove by expert testimony that defendant departed from the standard of care required of defendant as a physician." *Miller v. Van Newkirk*, 628 P.2d 143, 145 (Colo. App. 1980), *citing Smith v. Curran*, 28 Colo.App. 358, 472 P.2d 769 (1970).

In a Section 1983 Eight Amendment case, Plaintiff has the burden of proving more than negligent medical care. See *Wright v. Strum*, No. 08-CV-00666-MSK-CBS, 2008 WL 4323508, at *1 (D. Colo. Sept. 19, 2008); *Lamar v. Boyd*, 508 F. App'x 711, 714 (10th Cir. 2013), citing *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir.2005) ("[T]he medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim.").

1. **Summary Judgment Should be Granted Because Dr. Fitting's Care During Plaintiff's November 2013 Incarceration was Neither Deliberately Indifferent nor Negligent.**

Dr. Fitting's care and treatment of Plaintiff does not rise to the level of negligence, let alone deliberate indifference. Given the particular facts of this case, the undisputed evidence shows that Dr. Fitting's care was reasonable and appropriate, her medical judgment was within the applicable standard of care for a physician practicing in a jail setting, and her orders were made in consideration of Plaintiff's medical needs and safety while balancing governmental jail policy.

The evidence clearly shows that during his November 2013 incarceration, Plaintiff continued to receive his prescribed medications. (Schwark.Park 000009-10, **Exh. A**; Fitting Dep. 19:15-25, 26:23-25, 27:9-14, 30:10-14, **Exh. E**; Pearce Dep. 42:23-25 through

43:1-7, **Exh. F**; Canterbury Dep. 21:15-16, **Exh. G**; Swann Dep. 16:20-21, 25-26, **Exh. H**). Any claims that withdrawal from these medications lead to a seizure are unfounded and unsupported by the jail documentation, and the deposition testimony of Dr. Fitting and the jail nursing staff. The only medication change occurred after Plaintiff suffered his first seizure when Dr. Fitting took reasonable and medically appropriate steps to switch Plaintiff to another medication within the same class that would provide longer-lasting protection against alcohol withdrawal and decrease the risk of any additional seizures. *Id*.

Dr. Fitting and her experts opine that it is more medically probable than not that the cause of Plaintiff's seizure was related to alcohol withdrawal. (Fitting Dep. 25:1-9, **Exh. E**; Affidavit of Dr. Moser, ¶9 **Exh. L**; Affidavit Dr. Ritvo, ¶10, **Exh. K**). The jail records establish that Plaintiff's B.A.C. level upon admission to the jail on November 12, 2013 was 0.20. (Schwark.Park 000001, **Exh. A**; SCHWARK000135, **Exh. C**). Dr. Moser and Dr. Ritvo aver in their affidavits that after Plaintiff's seizure, Dr. Fitting appropriately prescribed Librium to help prevent and manage any further withdrawal symptoms. *Id*. at **Exh. K**, ¶8; **Exh. L**, ¶10.  Defendant's experts further state that it was appropriate for Plaintiff to be placed on an alcohol withdrawal protocol and to monitor Plaintiff in the jail's Medical Unit given Dr. Fitting's concern that Plaintiff may be exhibiting alcohol withdrawal symptoms. *Id*. **Exh. K**, ¶7; **Exh. L**, ¶11. Dr. Moser and Dr. Fitting opine there was nothing about Plaintiff's condition at that time requiring immediate transfer for outside care. *Id*. at **Exh. K**, ¶9; **Exh. L**, ¶11.

Plaintiff's allegation that Dr. Fitting was deliberately indifferent to his serious medical needs fails as a matter of law. The evidence is undisputed that Plaintiff was on his medications during his November 2013 incarceration and that it was appropriate for Dr. Fitting to prescribe Librium following his initial seizure to help prevent and manage any alcohol withdrawal symptoms, including additional seizures. Plaintiff has failed to offer any evidence that suggests Dr. Fitting was negligent, reckless or deliberately disregarded his medical needs.  Indeed, Defendant's experts opine Dr. Fitting's care was within the standard of care and her medical decisions regarding medication management did not cause or contribute to Plaintiff's seizures or alleged injuries. Moreover, clearly established law does not prohibit a jail physician from making medication adjustments to address alcohol withdrawal symptoms and protect against additional seizures. There is no law against reasonable medical decision-making. Accordingly, summary judgment is appropriate.

**2.  Dr. Fitting's Care during Plaintiff's February 2014 Incarceration Amounts to No More than a Disagreement with Treatment and Not Deliberate Indifference.**

Plaintiff's allegations regarding the care and treatment he received during his February 2014 incarceration are nothing more than a disagreement with Dr. Fitting's treatment decisions and do not rise to the level of deliberate indifference under the Eighth Amendment. Clearly established law does not prohibit a jail physician from making medication adjustments. "A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because "[t]he right to be free from cruel and

unusual punishment does not include the right to the treatment of one's choice." *Ellison v. Raemisch*, No. 16-CV-00026-GPG, 2016 WL 374560, at *2 (D. Colo. Jan. 30, 2016), citing *Layne v. Vinzant*, 657 F.2d 468, 473 (1stCir. 1981). "A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim." *Chyatte v. Missoula Cty.*, No. CV 13-174-M-JCL, 2015 WL 5560253, at *7–8 (D. Mont. Sept. 21, 2015), motion to certify appeal denied, No. CV 13-174-M-JCL, 2015 WL 9581415 (D. Mont. Dec. 29, 2015), citing, *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir.1989); *Toguchi v. Chung,* 391 F.3d 1051, 1057–60 (9th Cir.2004) (a prison official acts with deliberate indifference only if he or she knows of and disregards an excessive risk to the prisoner's health; negligence and a mere

Plaintiff alleges "[a]lthough Park County Jail had actual knowledge of the serious repercussions of not giving Mr. Schwark his medication," on February 25, 2014, Dr. Fitting ordered the medical staff in the Jail to discontinue giving Plaintiff two of his medications and to wean him from a third medication. (Doc. 61 at ¶ 55). Plaintiff further alleges that Dr. Fitting never provided him with any alternative treatment, that Dr. Fitting never physically examined Plaintiff, and that Dr. Fitting denied him access to any treatment for "either his underlying medical condition or for his symptoms of withdrawal." (Doc. 61 at ¶¶ 56 and 57).

In order to prevail on an Eighth Amendment deliberate indifference claim, Plaintiff needs to present evidence demonstrating "that the course of treatment the doctors chose was medically unacceptable under the circumstances ... and ... that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Chyatte v. Missoula Cty.,* No. CV 13-174-M-JCL, 2015 WL 5560253, at *7–8 (D. Mont. Sept. 21, 2015) (internal citations omitted).

Plaintiff has failed to meet his burden to proof to establish that Dr. Fitting was deliberately indifferent to his serious medical needs during his February 2014 incarceration.  At her deposition, Dr. Fitting testified that the jail nursing staff called her on or about February 25, 2014 to discuss what medications Plaintiff as taking and how to manage weaning him from the benzodiazepines. (Fitting Dep. 83-84, **Exh. E**). Dr. Fitting ordered Plaintiff's Suboxone to be discontinued, and in lieu of Librium, to remain on Xanax but to taper his dosage. (Schwark.Park000026, **Exh. A**).  Dr. Fitting testified that there was no reason for Plaintiff to be on more than one benzodiazepine because there is a "contraindication for an increased possibility of adverse side effects from those medications; higher chance of overdosing on the benzodiazepines." (Fitting Dep. 85:15-25, **Exh. E**). Dr. Fitting ordered a wean similar to any inmate that is on chronic benzodiazepines therapy. *Id.* Defendant's experts opine that Dr. Fitting's medical judgment was reasonable and appropriate and followed the standard course for benzodiazepine withdrawal. Affidavit of Dr. Moser, **Exh. L**, ¶5; Affidavit of Dr. Ritvo, **Exh. K**, ¶12.

Plaintiff has produced no evidence to challenge these opinions. See *King v. Patt*, 525 F.

App'x 713, 722 (10th Cir. 2013), holding "expert testimony is not required in cases where

the jury can determine from the non-expert evidence presented whether the delay caused

additional harm. We are unwilling to hold that expert testimony is *never* required in a

deliberate-indifference case involving delay of medical care. In some instances, the effects

of delay may be so subtle or complex that a lay jury cannot adequately determine the issue

of causation without expert assistance. *Cf. McCarthy v. Weinberg,* 753 F.2d 836, 839 (10th

Cir.1985) (noting, in deliberate indifference case, that "[t]he factual, medical issues

involved are complex, requiring the presentation of expert opinion" and thus district court

should have appointed counsel for plaintiff)."

Plaintiff has also failed to meet his burden to proof to establish that Dr. Fitting was

deliberately indifferent to his serious medical needs when Dr. Fitting "denied him access

to any treatment for either his underlying medical condition or for his symptoms of

withdrawal" and "failed to provide him with any alternative treatment." As Dr. Fitting

testified and the jail records indicate, when it was reported to her that Plaintiff may be

experiencing psychotic behavior, she ordered Plaintiff be continued on his current dose of

Xanax, to help reduce his anxiety and stabilize his condition. (Fitting Dep. 87:20-25

through 88:1-11, 95-96, **Exh. E**). She also appropriately referred him to the jail psychiatric

specialist who took over management of his medications and care. *Id*. There is no evidence

that Dr. Fitting was made aware of any other concerns regarding his condition. A prison

official cannot incur liability "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F. 3d 1227, 1230-31 (10th Cir. 2006).

Defendant's experts opine to a reasonable degree of medical probability that Plaintiff's hallucinations were not caused by his withdrawal from benzodiazepines because his medications were being appropriately managed and psychosis is not typically a symptom of withdrawal from Suboxone or Xanax. (See **Exh. L**, ¶15 Affidavit of Dr. Moser and **Exh. K**, ¶14, Affidavit of Dr. Ritvo).  Defendant's expert, Dr. Moser, states in his expert report and avers in his affidavit that it is common protocol and within the standard of care for physicians caring for inmates in a jail setting to wean inmates from long term benzodiazepine use in the jail setting. (**Exh. L**, ¶5). The fact that Dr. Fitting and the jail did not allow inmates to take benzodiazepines on a long-term basis absent limited conditions does not amount to deliberate indifference.  "A court must account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473, 192 L. Ed. 2d 416 (2015), citing, *Bell v. Wolfish,* 441 U.S. 520, 540, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Dr. Fitting testified that as per policy, inmates are weaned off benzodiazepines to avoid withdrawal symptoms. (Fitting Dep. 21:11-17, **Exh. E**). Dr. Fitting did not act recklessly or ignore Plaintiff's medical needs. On the contrary, she followed a standard taper protocol for benzodiazepines and placed him on alcohol withdrawal protocol when she believed his seizure was consistent with alcohol withdrawal. Dr. Fitting responded to Plaintiff's medical needs when she learned he was having hallucinations by continuing his Xanax and referring him to the jail's psychiatric specialist. In short, Dr. Fitting exercised her independent medical judgment and balanced Plaintiff's safety and medical needs with what was appropriate and which medications were available in the jail setting. At most, Plaintiff's case amounts to nothing more than a difference in opinion on Dr. Fitting's medical decision making. *See Callahan v. Poppell*, 471 F. 3d 1155, 1160 (10th Cir. 2006) ("[A] prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." (quoting *Dulany v. Carnahan*, 132 F. 3d 1234, 1240 (8th Cir. 1997))); *Perkins v. Kansas Dep't of Corrs.*, 165 F. 3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.").

Finally, there is no requirement under the Eighth Amendment that Dr. Fitting must physically examine Plaintiff before making treatment recommendations. See Affidavit of Dr. Moser, **Exh. L**, ¶4.  See also *Boyett v. County of Washington*, 282 Fed.Appx. at 673. A jail may provide access to medical care in a variety of ways. *Id*. See also, *Hoptowit v.*

*Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982) (en banc), reversing lower court holding that jail must have medical doctor to meet minimum standards). No constitutional violation occurs unless medical care is intentionally or recklessly denied. *Estelle v. Gamble*, 429 U.S. 91, 104-105 (1976). "A difference of opinion with medical staff about treatment is not actionable under the Eighth Amendment, nor is a disagreement among medical experts." *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993). Where a doctor orders treatment consistent with the symptoms presented, an inference of deliberate indifference is unwarranted. *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006).

Here, it was reasonable for Dr. Fitting to order Plaintiff be weaned from his medications upon his second incarceration. Dr. Fitting tailored the medication wean protocol in a series of steps to slowly decrease Plaintiff's medications to avoid or lessen potential withdrawal symptoms. (Fitting Dep. 32:1-6 and 85:15-25 through 86:1, **Exh. E**). There is no evidence Dr. Fitting was aware of Plaintiff's condition until she was notified by the jail staff, at which time she ordered Plaintiff's Xanax to be continued until his symptoms subsided and referred him to the jail's psychiatric specialist for further evaluation. (Fitting Dep. 87:20-25 through 88:1-11, 95-96, **Exh. E**). When she was notified by medical personnel at the jail about Plaintiff's potential hallucinations, she promptly addressed it. *Id*. Accordingly, Plaintiff's claim that Dr. Fitting's conduct during his February 2014 incarceration shows deliberate indifference to his serious medical needs fails as a matter of law and summary judgment should be granted.

## IV.    CONCLUSION

The undisputed facts establish that Dr. Fitting is entitled to qualified immunity and that Plaintiff has failed to meet his burden on the subjective component of deliberate indifference. Accordingly, this Court must enter summary judgment in Defendant's favor.

WHEREFORE, Katherine Fitting, M.D. respectfully requests that this Honorable Court ENTER JUDGMENT in her favor and dismiss all claims against her with prejudice, and enter any further relief that the Court may deem just and proper.

DATED: May 8, 2017.

*/s/ Steven A. Michalek*
Steven A. Michalek
Gina L. Glockner
Childs McCune LLC
821 17th Street, Suite 500
Denver, CO 80202
Telephone: (303) 296-7300
FAX: (720) 625-3637
Email: smichalek@childsmccune.com
Email: gglockner@childsmccune.com
Attorney for Defendant Katherine Fitting, M.D.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 8, 2017, a true and correct copy of the foregoing **DEFENDANT KATHERINE FITTING, M.D.'S MOTION FOR SUMMARY JUDGMENT** was filed with the Court and served electronically via ECF upon the following:

David A. Lane
Andy McNulty
Eudoxie (Dunia) Dickey
Killmer, Lane & Newman, LLP
1543 Champa St., Ste. 400
Denver, CO  80202
Email: dlane@kln-law.com
Email: amcnulty@kln-law.com
Email: ddickey@kln-law.com

Eric Michael Ziporin
Susan E. McNulty
Senter Goldfarb & Rice, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO 80210
Email: eziporin@sgrllc.com
smcnulty@sgrllc.com

*s/ Mary Baltz*

This document will be maintained in accordance with C.R.C.P. 121 § 1-26(7).