**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-02507-JLK

KYLE JEFFERY SCHWARK,

Plaintiff,

v.

SHERIFF FRED WEGENER, in his official and individual capacities;
NURSE SUSAN CANTERBURY, in her individual capacity;
NURSE JERI SWANN, in her individual capacity;
DOCTOR KATHERINE FITTING, in her individual capacity;
CAPTAIN DANIEL MULDOON, in his individual capacity,

Defendants.

---

**AFFIDAVIT OF SHERIFF FRED WEGENER**

---

Affiant, **SHERIFF FRED WEGENER**, after first being duly sworn, states as follows:

1. I have worked for Park County Sheriff's Office for 27 years and served as its Sheriff for 19 years. I have personal knowledge of the matter set forth below.

2. Park County Jail is overseen by the Sheriff's Office. As Sheriff, I am primarily responsible for creating and maintaining policies and procedures for the Jail, which are compiled into a manual and disseminated to Jail personnel. These guidelines address various issues that arise in the jail setting, including inmate access to prescription medication and the Medical Director's authority within the facility.

3. Park County Jail Policy J-121-N addresses "Decisions Regarding Pharmaceuticals and Medical Marijuana." The Policy explains the rationale behind restricting access to some



medications in the jail setting: "[i]nmates and detainees arrive at this facility from a variety of facilities and locations with medications and pills that present a challenge to the safe, secure and orderly operation of a detention facility." Consequently, when an inmate arrives at the facility with prescription medications that are prohibited, the nurses contact the Medical Director for the Jail, Dr. Katherine Fitting, to obtain an authorization. Dr. Fitting assesses various factors when determining whether a certain medication should be provided to an inmate, including the inmate's medical need for the particular medication prescribed, whether the requested medications could be potentially harmful to an inmate when taken together, the particular medication's risk of abuse within the jail setting, and availability of effective substitute medications already included on the Jail's formulary.

4. Recognizing that the Medical Director's autonomy and authority is critical to safely and effectively providing treatment to inmates, the Jail has mandated that "[t]he decisions and recommendations of the Medical Director will be final and supersede medical decisions that were made at other facilities or by the inmate's personal physician." Additionally, the Jail provides a process for inmates to appeal medical decisions: "[s]hould situations arise which are unexpected or unique, the inmate may appeal the Medical Director's decision. The Director will then review each case on an individual basis and make a determination that in the Director's opinion best meets the medical needs of the inmate and the security needs of the facility. The Director's decision will be final."

5. I have delegated management of the facility's day-to-day operations to the Jail Administrator, Captain Daniel Muldoon. In this capacity, the Captain's overarching responsibility is to ensure Jail safety and order. His specific duties include training and directly supervising

Detention Deputies working at the Jail. Pursuant to Policy J-121-F, Detention Deputies are trained on how to "administer medications under the supervision of the health authority." As with other Jail-related trainings, Captain Muldoon creates the content and carries out the training on medication administration.

6. With respect to medical treatment, it is the Jail's policy and general practice to give great deference to the decisions of Medical personnel. In this respect, Captain Muldoon, Detention Deputies and other Jail staff serve in a support capacity—particularly in the event of a medical emergency.

7. Similarly, in my experience, courts do not order the Jail to provide a particular medical treatment or medication to an inmate during incarceration. Rather, the orders usually require the Jail to provide an inmate with treatment in general. It is then the responsibility of the Jail's Medical Director to determine the type of treatment appropriate for the inmate based on his individual medical needs. They make no medical decisions.

8. I do not recall having any personal interaction with Kyle Schwark while he was incarcerated either in November of 2013 or February – April of 2014. Additionally, I was not made aware of any complaints Kyle made about his medical care. While I remember Captain Muldoon requesting a medical furlough in November of 2013, I do not recall the specific reason why Kyle needed to go to the hospital. On November 15, 2013, I signed an Order authorizing the furlough. We have a standard form that we use for medical furlough orders, which includes boilerplate language regarding the inmate's "serious and life threatening" medical condition. I used our standard form to create the Order for Kyle.

**FURTHER AFFIANT SAYETH NAUGHT.**

Sheriff Fred Wegener

STATE OF COLORADO )
) ss.
COUNTY OF PARK )

SUBSCRIBED AND SWORN to me before this 1st day of May, 2017, by Sheriff Fred Wegener.

Rose Avey
Notary Public
State of Colorado
Notary ID 19974008711
My Commission Expires September 3, 2017

My commission expires: 9/3/2017

Notary Public