IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02507-JLK

KYLE JEFFERY SCHWARK,

       Plaintiff,

v.

SHERIFF FRED WEGENER, in his official and individual capacities;
NURSE SUSAN CANTERBURY, in her individual capacity;
NURSE JERI SWANN, in her individual capacity;
DOCTOR KATHERINE FITTING, in her individual capacity;
CAPTAIN DANIEL MULDOON, in his individual capacity,

       Defendants.

_____

### AFFIDAVIT OF SUSAN CANTERBURY, R.N.
_____

       Affiant, **SUSAN CANTERBURY, R.N.**, after first being duly sworn, states as follows:

       1.     I am employed as a nurse at the Park County Jail. I have worked at the Jail since October of 2010. I have personal knowledge of the matter set forth below.

       2.     When I arrived at work on the morning of Wednesday, November 13, 2013, I found Kyle Schwark's medications in the Medical Unit inbox, which included Xanax and Suboxone. I took pictures of the two medications because inmates do not usually get admitted into Park County Jail with these prescriptions.

       3.     According to Jail policy, inmates are not allowed to take certain benzodiazepines, like Xanax, while in jail. When an inmate is admitted into jail who regularly takes benzodiazepines or has an alcohol dependency problem, he is put on Librium by the Jail's doctor—a long-acting



benzodiazepine. Park County Jail's healthcare consultant must also create a tapering schedule for the Librium, so the inmate will eventually be weaned off of the medication. It does not matter that the inmate had a prescription for the prohibited medication when he was admitted into jail—another doctors' orders are superseded by orders given by the Jail's healthcare consultant, Dr. Katherine Fitting. Additionally, a nurse's authority is limited to carrying out the orders they are given—nurses do not make independent treatment decisions.

4. I was not familiar with Suboxone when I received Kyle's medications, so I researched the drug online. From my research, I learned that Suboxone is supposed to help reduce cravings for narcotics like morphine. I noticed the information about the drug contradicted the orders given by Kyle's doctor, Dr. Singer, on how to administer the Suboxone strips. The drug manufacturer's instructions stated that the strips should not be cut because you cannot store half of a Suboxone film, but Dr. Singer ordered Kyle be given half of a Suboxone strip. I further learned that Suboxone is contraindicated with alcohol and anxiety medications.

5. When I spoke with Dr. Fitting about Kyle's medications on November 13, 2013, she said that she is not certified to manage Suboxone and he would need to be taken off it eventually. We also discussed the need for a tapering schedule for Kyle's Xanax prescription, but it was not implemented during November 2013. At that point, I was given orders to give Kyle all of his medications as prescribed until we received further instructions from Dr. Fitting on how to modify them.

6. Thereafter, I took the prescribed doses to Kyle's cell, 1 milligram Xanax tablet and one-half of a Suboxone film. (*See* Attachment 1, which is a true and accurate copy of Kyle Schwark's November 2013 Park County Jail Medication Sheet). I spoke with Kyle for

2

approximately five minutes while I was giving him the medications. He was adamant that he needed to continue receiving the Xanax and Suboxone. I later packed his 2 milligram Xanax tablet for the deputies to dispense the next morning. (*See id.*).

7. I was not at the Jail when Kyle had seizures and was subsequently taken to the hospital on Thursday, November 14, 2013, because I was not scheduled to work that day. However, Kyle's November 2013 Medical Sheet demonstrates that on November 14, 2013, he received another one-half film of Suboxone from Nurse Cathlene Pearce in addition to the Xanax I had packed for him the night before. (*See id.*). The Medical Sheet also indicates that Nurse Jeri Swann gave Kyle 25 milligrams of Librium that day. (*See id.*). When I returned to work, I read various reports from staff who were working when the incident occurred, and I spoke with Nurse Swann. Nurse Swann demonstrated how Kyle was positioned when he had his second seizure, which was with one hip propped up on the edge of the exam table and one foot on the ground.

8. On the night of Tuesday, February 25, 2014, Kyle returned to Park County Jail from his medical furlough to serve out the remainder of his sentence. He came in with prescriptions for two different benzodiazepines, Xanax and Librium, as well as Suboxone. On Wednesday, February 26, 2014, I reached out to Dr. Fitting to discuss Kyle's current medications and obtain orders on how to manage his medications. At that time, Dr. Fitting wrote an order to discontinue the Suboxone and Librium. She also created a tapering schedule for the Xanax: (1) February 26 – 28, 2014: 1 milligram tablet three times a day; (2) March 1-3, 2014: 1 milligram tablet two times a day; (3) March 4-6, 2014: 1 milligram tablet 1 time a day; (4) March 7, 2014: discontinue Xanax. (*See* Attachment 2, which is a true and accurate copy of the Dr. Fitting's Order written on February 26, 2014).

3

9. Per Dr. Fitting's orders, Kyle did not receive his evening 1 milligram dose of Xanax for the first time on Tuesday, March 4, 2014. The morning of Wednesday, March 5, 2014, Kyle began to hallucinate and exhibit paranoia. When I went to give Kyle his Xanax tablet later that day, at 1:00 p.m., I noticed that his hallucinations and paranoia had worsened. I was concerned about Kyle, so I contacted Park County Jail's mental health consultant, Cynthia Parker, Psy.D.

10. I emailed Dr. Parker around 2:30 p.m. on Wednesday, March 5, 2014, to ask how we should proceed with treating Kyle given his current mental state. (*See* Attachment 3, which is a true and accurate copy of my email to Dr. Parker on March 5, 2014). According to Jail policy, Dr. Parker is the only in-house provider with authority to prescribe medications for mental health issues. I informed Dr. Parker that we were in the process of tapering Kyle's Xanax medication and described my observations regarding his declining mental state. My training and experience related to mental health issues is very limited, so I did not understand why his condition had suddenly declined. I asked whether we could temporarily suspend the Xanax taper until Kyle's health improved.

11. A few hours later, Dr. Parker replied that it sounded as though Kyle was experiencing some form of psychosis. (*See* Attachment 4, which is a true and accurate copy of Dr. Parker's email on March 5, 2014). She told me that it was okay to slow the Xanax taper but also suggested that Kyle may need to be put on medication to address the hallucinations as well. Dr. Parker then offered to set up an emergency appointment to see him on Thursday afternoon.

12. By Thursday, March 6, 2014, Kyle was receiving his Xanax medication as originally prescribed by Dr. Singer. I emailed Dr. Parker that morning and updated her on Kyle's status. (*See* Attachment 5, which is a true and accurate copy of my email to Dr. Parker at 10:44

4

a.m. on March 6, 2014). I told her that Kyle's condition had somewhat improved Wednesday evening, but he was not yet lucid enough to have a meaningful conversation with her. I asked her whether there was anything that we could give him to help with the hallucinations, but nurses do not have authority to give medications absent an order. Later that day, I emailed Dr. Parker another status update, and I informed her that Kyle was becoming increasingly coherent and was trying to figure out what happened to him the day before. (*See* Attachment 6, which is a true and accurate copy of my email to Dr. Parker at 2:04 p.m. on March 6, 2014). Dr. Parker did not give the order for Risperdal, an antipsychotic medication, until March 12, 2014.

13. During February 25, 2014 to March 10, 2014, I tried contacting Dr. Singer twice to get more information about Kyle's medical history and treatment prior to incarceration. I was never able to speak with Dr. Singer directly, but I spoke with members of his staff. Dr. Singer's office confirmed that Kyle was a patient there, but no rationale was provided as to why the combination of medications had been prescribed to him. On March 5, 2014, I received a fax from Dr. Singer's office that included a couple of pages of treatment notes from two visits in 2013. I provided these notes to Dr. Parker.

14. While Kyle was in a state of psychosis, I continually monitored him and gave him his prescribed dose of Xanax hoping to improve his condition. Nurses do not have the authority to start process of finding a place for inmates in need of mental health treatment at either a hospital

or mental health facility. On March 10, 2014, Kyle was transported to the hospital in response to the nursing staff's request for a medical/psychiatric evaluation.

16.     Kyle was only at Denver Health for two days and returned to Park County Jail on March 12, 2014. Upon discharge, Denver Health doctors did not prescribe any medications, including Xanax, Suboxone, or Librium, for Kyle to take while in jail. Likewise, Park County Jail's Psychiatric/Mental Health Consultant, Cynthia Parker, PsyD, did not reorder Kyle's scheduled medications after evaluating him when he returned to the Jail. However, she did give the nurses an order to use as needed for 1 milligram of Risperidone in the event that Kyle had another episode.  Throughout this Jail admission Kyle never required anti-psychotic medication and worked responsibly in the jail kitchen where we interacted with him daily.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Susan Canterbury, R.N.

STATE OF COLORADO            )
                             ) ss.
COUNTY OF PARK               )

SUBSCRIBED AND SWORN to me before this ___4th___ day of May, 2017, by Susan Canterbury, R.N.

My commission expires: __9-3-2017__

> Rose Avey
> Notary Public
> State of Colorado
> Notary ID 19974008711
> My Commission Expires September 3, 2017