IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02507-JLK

KYLE JEFFERY SCHWARK,

      Plaintiff,
v.

SHERIFF FRED WEGENER, in his official and individual capacities;
NURSE SUSAN CANTERBURY, in her individual capacity;
NURSE JERI SWANN, in her individual capacity;
DOCTOR KATHERINE FITTING, in her individual capacity;
CAPTAIN DANIEL MULDOON, in his individual capacity,

      Defendants.
_____

**AFFIDAVIT OF JERI SWANN, R.N.**
_____

Affiant, **JERI SWANN, R.N.**, after first being duly sworn, states as follows:

1. I am employed as a part-time nurse at the Park County Jail. I have worked at the Jail for over five years. I have personal knowledge of the matter set forth below.

2. My first interaction with Kyle Schwark occurred on November 14, 2013, the second day after he was admitted to Park County Jail. When I arrived at the Jail that day, Cathlene Pearce, R.N., was preparing Kyle Schwark's medication. Kyle was admitted to the Jail with prescriptions for Xanax and Suboxone from Dr. Singer, his primary doctor. Although Xanax is not typically allowed in the jail setting, Dr. Katherine Fitting—the doctor that oversees treatment at Park County Jail—had ordered us to continue giving Xanax to Kyle.



3. We also noticed a discrepancy between Dr. Singer's orders and the drug manufacturer's instructions regarding how Suboxone should be administered. Dr. Singer had ordered Kyle be given one-half of a Suboxone strip per dose while the manufacturer gave specific instructions to not cut the Suboxone strips. Although we were concerned about the apparent conflict, we cut the Suboxone strips in half because nurses are not allowed to deviate from a doctor's orders. Nurse Pearce then left Medical to give Kyle his medications.

4. While Nurse Pearce was still out of the office, I heard over the radio that an inmate was having a seizure. Shortly thereafter, a deputy came to retrieve a wheelchair in order to transport Kyle to Medical. Kyle arrived in what appeared to be a postictal state.

5. At some point that afternoon, I called Dr. Fitting to inform her that Kyle had a seizure. Upon hearing this information, she ordered Kyle be given 25 milligrams of Librium three times a day. Librium is a longer-acting medication within the same category as Xanax and is part of our alcohol withdrawal protocol at the Jail.

6. Kyle remained in Medical for several hours. He became more responsive and alert as time passed. We gave Kyle a snack and some fluids before his lunch was brought to him. He spat in the trash can a few times because he was feeling nauseous.

7. We kept Kyle in the wheelchair until he started to become more alert and felt well enough to move around. He continued to casually converse with us as he was sitting on the edge of the exam table with one leg propped on the table. It was not necessary to restrain Kyle on the table given that he was alert, oriented, and a significant amount of time had passed since the seizure. Moreover, a doctor's order is required before nurses can put physical restraints on an

inmate, and no such order had been given. Kyle talked about various things including his medical history and family.

8. At this time, Nurse Pearce and I resumed our work in the office. After hearing a grunting noise, I looked to see Kyle had fallen to the floor and was experiencing seizure-like activity. When Kyle fell, he hit his head and started to bleed.

9. Several deputies immediately responded to Medical in order to assist us in keeping Kyle safe until the apparent seizure ended, and an ambulance was called to take Kyle to the hospital. As Kyle became more alert, he became angry and tried to resist being held down by hitting and spitting on staff. He continued to resist when the paramedics arrived, so they gave him a sedative. Kyle calmed down fairly quickly afterwards, and we were able to get him onto the board in order to be transported to the hospital. Kyle later received a furlough.

10. The day after Kyle was readmitted into jail, on February 26, 2014, Dr. Fitting gave new orders regarding his medication. The Suboxone was to be immediately discontinued, and the Xanax was to be tapered off until eventually discontinued as well. In the jail setting, nurses are required to follow the orders of the Jail's healthcare provider. Dr. Fitting's orders were controlling even though they conflicted with Dr. Singer's previous orders.

11. I did not see Kyle again until March of 2014, after he returned to Park County Jail from his medical furlough. Although I do not specifically recall having any interactions with Kyle, his March Medication Sheet indicates that I gave him Xanax on the morning of March 8, 2014.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Jeri Swann, R.N.

STATE OF COLORADO          )
                           ) ss.
COUNTY OF PARK             )

SUBSCRIBED AND SWORN to me before this _____ day of May, 2017, by Jeri Swann, R.N.

My commission expires: _____

_____
Notary Public

_____
Jeri Swann, R.N.

STATE OF COLORADO    )
                     ) ss.
COUNTY OF ADAMS      )

SUBSCRIBED AND SWORN to me before this __27__ day of April, 2017, by Jeri Swann, R.N.

My commission expires: _1-2-2019_

_____
Notary Public

Patrick Cooper
Notary Public
State of Colorado
Notary ID 20144048924
My Commission Expires January 02, 2019

4