## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02507-JLK

KYLE JEFFERY SCHWARK,

      Plaintiff,

v.

SHERIFF FRED WEGENER, in his official and individual
capacities;  NURSE SUSAN CANTERBURY, in her
individual capacity; NURSE JERI SWANN, in her individual
capacity; NURSE CATHLENE PEARCE, in her individual
capacity;  DOCTOR KATHERINE FITTING, in her
individual capacity, CAPTAIN DANIEL MULDOON, in his
individual capacity,

      Defendants.

---

## DEFENDANT KATHERINE FITTING, M.D.'S MOTION FOR SUMMARY JUDGMENT
_____

Defendant Katherine Fitting, M.D. ("Dr. Fitting"), by and through her attorneys, CHILDS MCCUNE LLC, hereby moves for summary judgment on all claims against her in the Second Amended Complaint [Doc. # 61] under Fed. R. Civ. P. 56(b).

Pursuant to D.C. Colo. L. Civ. R. 7.1(A), defense counsel for Dr. Fitting discussed the grounds for the motion and the relief requested with Plaintiff's counsel on May 8, 2017 and August 29, 2017.  Plaintiff's counsel opposes the requested relief.

## I.  <u>INTRODUCTION</u>

This is a 42 U.S.C. § 1983 case brought under the Eighth Amendment's Cruel and Unusual Punishment by former Park County Jail inmate Kyle Jeffery Schwark against Dr. Fitting, three nurses, a Sheriff and a Captain.  Schwark alleges that Dr. Fitting deprived him of his prescribed medications during two separate incarcerations in November 2013 and February 2014.  He claims that Defendants refused to give him his medications, Xanax and Suboxone, in November 2013 and it caused him to suffer seizures which resulted in a fracture of his cervical spine when he fell. He further alleges that in February 2014, Dr. Fitting denied him his medications notwithstanding her actual knowledge that refusal to provide such medications would pose a substantial risk to his health. As a result, he claims to have suffered a complete psychological breakdown requiring hospitalization.

Plaintiff's allegations fail as a matter of law. Jail records and other evidence in this case indicate Schwark was given his prescribed doses of Xanax and Suboxone before his seizure on November 14, 2013. Following his seizure, he was provided with prompt and appropriate medical care and was safely transported to the medical unit for observation. Dr. Fitting had no further involvement with Schwark until February, 2014 when he returned to the jail. At that point, Dr. Fitting modified his medications and ordered a benzodiazepine taper protocol that would allow Schwark to safely come off medications that are not permitted in the jail on a long-term basis and were contraindicated. When the jail staff

made Dr. Fitting aware Plaintiff was exhibiting signs of possible hallucinations, she ordered his medication be continued and referred his care over to a psychiatric specialist.

As set forth in greater detail below, Dr. Fitting's care and medical treatment of Plaintiff during both incarcerations was entirely appropriate, did not violate clearly established law, and was not deliberately indifferent let alone negligent. Accordingly, Dr. Fitting is entitled to summary judgment on all claims against her.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

### A. November 2013 Incarceration

1. At 9:35 p.m. on November 12, 2013, Schwark reported to the Park County Jail to serve a 60-day sentence for an alcohol related driving offense. (Doc. 61 at ¶16 and 20; Park County Jail In/Out Log for Kyle Schwark, Schwark.Park 000112, **Exh. A**).

2. Schwark arrived at the Jail with several medications, including Xanax and Suboxone, and a letter from the prescribing physician explaining that he was treating Schwark for opioid dependency, lead toxicity and anxiety (Doc. 61 at ¶21 and 22; **Exh. B**, Schwark.Park000006).

3. Schwark's prescription called for Suboxone, 8 mg/2 mg. sublingual film, one half to 1 daily and Alprazolam (hereinafter, Xanax), 1 milligram tablet twice to four times daily. (**Exh. B**, Schwark.Park000006).

4.      Schwark listed his medications on the Medical Questionnaire and Emergency Notification forms at the jail, and did not indicate a history of seizures on his medical intake form. (**Exh. C,** Schwark.Park 000001, 000002; Doc. 61 at ¶23).

5.      Schwark's BAC at booking was a .020. (**Exh. D**, Schwark.Park SCHWARK000135).

6.      Schwark did not require any additional medication on the evening of November 12, 2013. (**Exh. E,** Schwark Dep. 144:6-14, Dec. 13, 2016).

7.      During the morning of November 13, 2013, Schwark was given one half a film of Suboxone and 2 milligrams of Xanax. (**Exh. F**, Schwark Medication Sheets, Schwark.Park 000009-10; **Exh. G,** Fitting Dep. 19:15-25; 26:23-25; 27:9-14; 30:10-14, Jan. 5, 2017; **Exh. H,** Pearce Dep. 42:23-25 through 43:1-7, Mar. 9, 2017; **Exh. I**, Canterbury Dep. 21:15-16, Feb. 7, 2017; **Exh. J**, Swann Dep. 16:20-21, 25:17-25, 26:1-20, Mar. 13, 2017).

8.      Schwark received 1milligram of Xanax on the evening of November 13, 2013. (*Id*.).   Schwark did not file any kites complaining about not receiving his medications. (**Exh. K**, Muldoon Aff., ¶9)

9.      On the morning of November 14, 2013, Schwark received a half film of Suboxone, and 2 milligrams of Xanax. (*Id*. at **Exh. F**).

10.     Schwark has no recollection of interacting with any of the jail nurses prior to his first seizure on Nov. 14, 2013. (**Exh. E**, Schwark Dep. 147:19-23).

11.     Schwark's seizure occurred in his Pod in the early afternoon of November 14, 2013. (Doc. 61, ¶31; **Exh. L,** A0281)

12.     Following the seizure, nurses quickly responded and transported him via wheelchair to the jail's Medical Unit for care and observation. (**Exh. H,** Pearce Dep. 17:6-16).

13.     Nurse Swann phoned Dr. Fitting to report the seizure. (**Exh. H**, Pearce Dep. 19:1-14; **Exh. F**, Schwark.Park 000010).

14.     Dr. Fitting adjusted Schwark's medications in response to the seizure. (**Exh. F**, Schwark.Park 000010; **Exh. G**, Fitting Dep. 40: 1-9; **Exh. J**, Swann Dep. 16:21-24 and 46:6-25 through 47:1-3).

15.     Dr. Fitting ordered Schwark be placed on an alcohol withdrawal protocol by substituting his Suboxone with Librium, a stronger and longer acting benzodiazepine than what he had been taking because, in her medical opinion, Schwark's seizure was a result of alcohol withdrawal. (**Exh. G**, Fitting Dep., 33:12-16, 36:3-19, 25:3-5, 40:10-15, 33:4-8; **Exh. H**, Pearce Dep. 36:23-25 through 37:1-5).

16.     Dr. Fitting testified that the 25 milligrams of Librium she prescribed following the seizure was meant to reduce the potential for any further alcohol withdrawal seizures. (**Exh. G**, Fitting Dep. 60:5-9).

17.     Schwark remained in the jail's Medical Unit for observation for several hours after his seizure. According to testimony by the jail nursing staff, he appeared stable, was

talking, able to eat a portion of his lunch, and able to drink fluids. (**Exh. H**, Pearce Dep. 38:5-17).

18.     Schwark suffered a second seizure while in the Medical Unit. During the seizure, he fell. The nursing staff called 911 and Schwark was transferred via ambulance to St. Anthony's Summit Medical Center and later Denver Health where he was diagnosed with a cervical spinal fracture. (**Exh. D**, SCWARK 000134-00135; Doc. 61, ¶38-40).

19.     Dr. Fitting was made aware of Schwark's second seizure after emergency medical personnel had responded and transferred him to the hospital. (**Exh. G,** Fitting Dep. 41:5-8).

**B.**     <u>**February 2014 Incarceration**</u>

1.     On February 25, 2014, Schwark returned to Park County Jail to complete the remainder of his sentence. (Schwark.Park 000025, **Exh. M**).

2.     According to the Second Amended Complaint, during sentencing the Judge told Schwark he did not have the power to order the Jail physician to give him his medications. (Doc. 61, ¶50 and 51).

3.     Schwark resisted arrest and was placed in an isolation cell because he was aggressive and belligerent. (**Exh. K**, Muldoon Aff. ¶10).

4.     Schwark presented to the Jail with two different Benzodiazepines - Xanax and Librium, as well as Suboxone. (**Exh. N**, Canterbury Aff. ¶8).

5.      On Wednesday, February 26, 2014, Nurse Canterbury discussed Schwark's medications with Dr. Fitting.  (*Id.* at **Exh. N**, Canterbury Aff., ¶8). Dr. Fitting wrote an order to discontinue the Suboxone and Librium. (**Exh. O**, Dr. Fitting's orders).

6.      Dr. Fitting testified that Suboxone had been prescribed for opioid dependence, and since Schwark would not have access to opioids in the jail setting, it was her medical judgment that there was no indication for that medication during his incarceration. (**Exh. G**, Fitting Dep. 93:20-25; **Exh. P**, Moser Aff., ¶8).

7.      Dr. Fitting also testified that taking "more than one benzodiazepines is contraindicated" and the expectation is that patients will be weaned off benzodiazepines as they can be potentially harmful and are frequently abused, traded and sold within the jail. (**Exh. G**, Fitting Dep. 18:9-25 through 19:1-13, 20:15-24, 85:15-25, 93:2-25, 31:1-21, 22:3-12; **Exh. Q**, Park County Jail Policy J-121-N, Schwark.Park000167).

8.      In addition, Dr. Fitting ordered a tapering schedule for the Xanax: (1) February 26 – 28, 2014: 1 milligram tablet three times a day; (2) March 1-3, 2014: 1 milligram tablet two times a day; (3) March 4-6, 2014: 1 milligram tablet one time a day; (4) March 7, 2014: discontinue Xanax. (**Exh. O,** Fitting's orders).

9.      Between February 26, 2014 and March 3, 2014, Xanax was administered to Schwark pursuant to Dr. Fitting's tapering schedule. (**Exh. R**, Schwark.Park000027-28).

10.     Tuesday, March 4, 2014 Schwark received his morning 1 milligram dose of Xanax. (*Id.* at **Exh. R**; **Exh. N**, Canterbury Aff., ¶9-10). That day he did not receive his evening 1 milligram dose of Xanax. (*Id.*).

11.     On the morning of March 5, 2014, Nurse Canterbury observed that Schwark may be hallucinating and exhibiting paranoia. (**Exh. N**, Canterbury Aff., ¶9-10; **Exh. I**, Canterbury Dep. 53:1-6). Nurse Canterbury informed Dr. Fitting who ordered Schwark continue receiving Xanax at the current dosage until his symptoms subsided. She also referred Schwark to the jail's psychiatric specialist to address his mental health condition. (**Exh. G**, Fitting Dep. 87:20-25 through 88:1-11 and 95:2-25 through 96:1-6).

9.     According to Jail policy, Dr. Cynthia Parker is the in-house specialist for mental health issues (**Exh. N**, Canterbury Aff., ¶10). Dr. Parker managed Schwark's treatment from March 5, 2012 through his release from jail on April 1, 2014. (*See*, **Exh. N**, Canterbury Aff., **Exh. K**, **Exh. G**, Fitting Dep. 96:1-6).

10.     Dr. Fitting had no further involvement with Schwark's care and treatment once Dr. Parker took over on March 5, 2014. (*Id.*).

11.     On March 10, 2014, Schwark was taken to Denver Health for evaluation of his mental health issues. (**Exh. K**, Muldoon Aff., ¶11). Denver Health discontinued the remaining medications Schwark was on and transferred him back to the jail two days later on March 12, 2014. (*Id.* at ¶12; **Exh. N**, Canterbury Aff., ¶15). Denver Health doctors did not prescribe any medication for him upon discharge and Dr. Parker never re-ordered

Schwark's medications after his return to jail on March 12, 2014 until his release from jail on April 1, 2014. (*Id.*). Schwark had no more psychotic episodes. (**Exh K**, Muldoon Aff., ¶12).

### III.   ARGUMENT AND LAW

**A.   Legal Standard for Summary Judgment**

The court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Concrete Works v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518.

The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; see Fed. R. Civ. P. 56(e). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving

party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Cone v. Longmont United Hosp. Ass'n.*, 14 F.3d 526, 533 (10th Cir. 1994). A party opposing summary judgment cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

**B.     Dr. Fitting is entitled to summary judgment on the First and Second Claims: Failure to Provide Medical Care and Treatment.**

**1.     Burden of proof and elements**

Schwark's First and Second Claims for Relief are nearly identical, except that the First Claim relates to his November 2013 incarceration and the Second Claim relates to his February 2014 incarceration.

Schwark's Eighth Amendment claims of deliberate indifference under 42 U.S.C. § 1983 require him to establish, by a preponderance of the evidence, that: (1) objectively, the alleged deprivation was sufficiently serious to constitute a deprivation of constitutional dimension; and (2) subjectively, Dr. Fitting had a sufficiently culpable state of mind. *Self v. Crum*, 439 F.3d 1227, 1230-31 (10th Cir. 2006).

### 2.      Elements that Schwark cannot prove

<u>Element 1:</u> Dr. Fitting denied Schwark medications and medical care and this alleged deprivation was sufficiently serious to constitute a deprivation of a constitutional dimension.

a)      Schwark cannot prove that he was deprived of either medications or medical care. On November 13, 2013, the jail's nursing staff contacted Dr. Fitting about Schwark's medical history and management of his medications. Although Dr. Fitting, as the jail's Medical Director, had the authority to assess the medications of inmates and make modifications, Dr. Fitting ordered Schwark was to receive all his medications as prescribed until she gave further notice. (**Exh. N**, Canterbury Aff., ¶5).  Schwark's Medication Sheet from November 2013 shows he received 1 milligram of a Xanax tablet and one-half a Suboxone strip on November 13, 2013 (**Exh. F**, Schwark's Mediation Sheet). Similarly, on November 14, 2013, Schwark received his morning Xanax dose of 2 milligrams and one-half strip of Suboxone. (*Id*, **Exh. F**; **Exh. G**, Fitting Dep. 19:15-25, 26:23-25, 27:9-14, 30:10-14; **Exh. H**, Pearce Dep. 42:23-25 through 43:1-7; **Exh. I**, Canterbury Dep. 21:15-16; **Exh. J**, Swann Dep. 16:20-21, 25-26).   Schwark's allegation that his seizures were caused by Dr. Fitting intentionally withholding these medications fails as he received both his Xanax and Suboxone prior to his seizures. (**Exh. P**, Moser Aff., ¶5 and 9; **Exh. S**, Ritvo Aff., ¶5, 6, 10).

b)      Schwark contends that he was not provided with proper medical treatment. However, "a complaint that a physician has been negligent in diagnosing or treating a

medical condition does not state a valid claim of medical mistreatment . . . .   Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Deliberate indifference is a higher degree of fault even gross negligence, requiring "disregard of an obvious or known risk." *Berry v. City of Muskogee*, 900 F.3d 1489, 1495-96 (10th Cir. 1990).  Accordingly, "where a doctor merely exercises his medical judgment," the subjective component cannot be satisfied. *Self,* 439 F.3d at 1232; *see also DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 198, n.5 (1989). Immediately following his first seizure, a nurse responded, evaluated Schwark and took him by wheelchair to the Medical Unit where he was further evaluated by the jail nursing staff who reported the incident to Dr. Fitting. Upon learning of his seizure, Dr. Fitting ordered Schwark be placed on the alcohol withdrawal protocol, remain under observation in the Medical Unit and be given 25 milligrams of Librium, another medication within the same class as his previously prescribed medication because it would provide longer-lasting protection against alcohol withdrawal and decrease the risk of any additional seizures. (**Exh. G**, Fitting Dep, 40:1-15, 33:4-8, 33:12-16, 36:3-19, 25:3-5; **Exh. S**, Ritvo Aff., ¶8).

   c)  Schwark cannot prove that Dr. Fitting's treatment recommendations for his initial seizure constituted deliberate indifference. "[W]here a doctor orders treatment

consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law. . . . So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self*, 439 F.3d 1232–33; *Grassi v. Corrections Corporation of America*, 354 F. App'x 329, 332 (10th Cir. 2009) (plaintiff must point to evidence that doctor knew of—or expert testimony that doctor should have known of—and chose to disregard a serious medical need).  Given Schwark's BAC at booking and the timing of the seizure, it was reasonable and appropriate for Dr. Fitting to place Schwark on an alcohol withdrawal protocol and for jail staff to continue monitoring him in the Medical Unit. (**Exh. S**, Ritvo Aff., ¶10 and 7; **Exh. P,** Moser Aff., ¶9 and 11; **Exh. G**, Fitting Dep. 25:1-9). There was nothing about Schwark's condition following his first seizure that required immediate transfer to an outside facility. (*Id.* at **Exh. P**, ¶9; **Exh. S**, ¶11). Moreover, Dr. Fitting did not learn of Schwark's second seizure until after he had been transported to Denver Health. (**Exh. G**, Fitting Dep., 41:5-8).

d).   Schwark alleges that in February 2014, Dr. Fitting was deliberately indifferent to his serious medical needs because she discontinued two of his previously prescribed medications, ordered a tapering schedule for a third medication, failed to provide him with any alternative treatment, did not physically examine him and denied him access to treatment. Plaintiff's claims as essentially nothing more than a disagreement over

treatment. In the context of the adequacy of medical care, "a disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." *Ellison v. Raemisch*, No. 16-CV-00026-GPG, 2016 WL 374560, at *2 (D. Colo. Jan. 30, 2016). Schwark, in essence, is arguing that he should have received different treatment, but this does not constitute deliberate indifference.

e)      Dr. Fitting and the jail staff provided reasonable and appropriate care, and did not disregard a substantial risk of harm to Schwark. On February 26, 2014, the nursing staff contacted Dr. Fitting to discuss what medications Schwark was taking and how to manage weaning him from the benzodiazepines. (**Exh. G**, Fitting Dep. 83-84; **Exh. N**, Canterbury Aff., ¶8). Dr. Fitting ordered Schwark's Suboxone to be discontinued, and in lieu of Librium, to remain on Xanax but to taper his dosage. (**Exh. O**, Dr. Fitting's orders). There was no reason for Schwark to be on more than one benzodiazepine because there is a "contraindication for an increased possibility of adverse side effects from those medications; higher chance of overdosing on the benzodiazepines." (**Exh. G**, Fitting Dep. 85:15-25; **Exh. P**, Moser Aff, ¶5). Dr. Fitting ordered a Xanax tapering schedule similar to any inmate that is on chronic benzodiazepines therapy. (**Exh. O**, Fitting's orders). Specifically, (1) February 26 – 28, 2014: 1 milligram tablet three times per day; (2) March 1 – 3, 2014: 1 milligram tablet two times a day; (3) March 4 – 5, 2014: 1 milligram tablet one time per day; (4) March 7, 2014: discontinue Xanax. (*Id*.).

f)      Dr. Fitting's medical judgment and treatment protocol was reasonable and appropriate and followed the standard course for benzodiazepine withdrawal (**Exh. P**, Moser Aff., ¶5, 8 and 15; **Exh. S**, Ritvo Aff., ¶12 and 14). Schwark has produced no evidence to challenge Defendants' experts' opinions. See *King v. Patt*, 525 F. App'x 713, 722 (10th Cir. 2013), holding that while "expert testimony is not required in cases where the jury can determine from the non-expert evidence presented whether the delay caused additional harm," courts are "unwilling to hold that expert testimony is *never* required in a deliberate-indifference case involving delay of medical care. In some instances, the effects of delay may be so subtle or complex that a lay jury cannot adequately determine the issue of causation without expert assistance. *Cf. McCarthy v. Weinberg,* 753 F.2d 836, 839 (10th Cir.1985) (noting, in deliberate indifference case, that "[t]he factual, medical issues involved are complex, requiring the presentation of expert opinion" and thus district court should have appointed counsel for plaintiff).[1]

---

[1]  Under Colorado law, to establish negligence by a professional, the plaintiff must show: (1) a duty was owed; (2) the defendant breached that duty; (3) a causal connection between the breach and the resulting injury; and (4) damage to the plaintiff.  *See United Blood Servs. v. Quintana*, 827 P.2d 509, 519-20 (Colo. 1992); *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 485 (Colo. App. 2003).

Unless the subject matter of a claim against a healthcare professional lies within the realm of common knowledge of ordinary persons, the standard of care for a healthcare defendant must be established by expert testimony. *Van Leeuwan v. Nuzzi*, 810 F.Supp. 1120, 1122 (D. Colo. 1993); *Melville v. Southward,* 791 P.2d 383, 387 (Colo.1990); *Connelly v. Kortz,* 689 P.2d 728, 729 (Colo.App.1984); *United Blood Servs. v. Quintana*, 827 P.2d 509, 519-20 (Colo. 1992); *Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.,* 2010 WL 3777303 *5 (10th Cir. Sept. 19, 2010); *accord Gerrity Oil & Gas Corp. v. Magness,* 946 P.2d 913, 930 (Colo.1997) (same).

"Whether the standard is a matter of common knowledge is a determination committed to the sound discretion of the trial court," *Oliver v. Amity Mutual Irrigation Co.,* 994 P.2d 495, 497 (Colo.App.1999). Medical diagnosis and treatment generally involve technical knowledge and skill beyond the realm of the lay juror and it is thus "incumbent upon the plaintiff to prove by expert testimony that defendant departed from the standard of care required of defendant as a physician." *Miller v. Van Newkirk,* 628 P.2d 143, 145 (Colo. App. 1980), *citing Smith v. Curran,* 28 Colo.App. 358, 472 P.2d 769 (1970).

In a Section 1983 Eight Amendment case, Plaintiff has the burden of proving more than negligent medical care. See *Wright v. Strum*, No. 08-CV-00666-MSK-CBS, 2008 WL 4323508, at *1 (D. Colo. Sept. 19, 2008);

g)      The first time Schwark did not receive his evening 1 milligram dose of Xanax was on March 4, 2014. (*Id.* at **Exh. R**; **Exh. N**, Canterbury Aff., ¶9-10). However, he still received his morning dose of the medication that day.  On or about March 5, 2014, Dr. Fitting was made aware that the nursing staff had concerns Schwark may be exhibiting signs of hallucinations.  In response, Dr. Fitting ordered Schwark again receive his evening dose of Xanax to help reduce his anxiety and stabilize his condition. She also referred him to the jail psychiatric specialist who took over management of his medications and care. (**Exh. G**, Fitting Dep. 87:20-25 through 88:1-11, 95-96).

h)      In factually similar cases, courts generally grant summary judgment and recognize that a prison doctor remains free to exercise his or her independent medical judgment. As noted above, an inmate who merely disagrees with the course of treatment does not state a constitutional violation. *Callahan v. Poppell*, 471 F.3d 1155 (10th Cir. 2006). In *Boyett v. County of Washington*, 282 Fed. Appx. 667, 2008 WL 2483286 at **1, Mr. Boyett died in Washington County, Utah's Purgatory Correctional Facility and his surviving family members instituted a §1983 action. In support of their deliberate indifference claim, plaintiffs pointed to numerous acts or omissions including a failure to provide Boyett with the medicine and care prescribed by Boyett's treating physicians prior

---

*Lamar v. Boyd*, 508 F. App'x 711, 714 (10th Cir. 2013), citing *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir.2005) ("[T]he medical judgment of the physician, even if grossly negligent, is not subject to second-guessing in the guise of an Eighth Amendment claim.").

to incarceration. There, the Tenth Circuit concluded that a prescription of a substitute medication (Clonidine instead of Methadone) did not demonstrate deliberate indifference.

i)      In addition, Schwark cannot prove Dr. Fitting deprived him of care by not physically examining him. There was nothing about Schwark's condition that required a physical examination by Dr. Fitting. (**Exh. P**, Moser Aff., ¶4).  A jail may provide access to medical care in a variety of ways. *Id*. See, *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982) (en banc), reversing lower court holding that jail must have medical doctor to meet minimum standards). No constitutional violation occurs unless medical care is intentionally or recklessly denied. *Estelle v. Gamble*, 429 U.S. 91, 104-105 (1976).  "A difference of opinion with medical staff about treatment is not actionable under the Eighth Amendment, nor is a disagreement among medical experts." *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993). Where a doctor orders treatment consistent with the symptoms presented, an inference of deliberate indifference is unwarranted. *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006). Dr. Fitting provided reasonable and appropriate care and did not disregard a substantial risk of harm to Schwark. As set forth below, Plaintiff cannot show that Dr. Fitting intentionally or recklessly deprived him access to mediations.

Element 2: Schwark cannot prove Dr. Fitting had a sufficiently culpable state of mind.

a)      Schwark contends Dr. Fitting deprived him of medication and care that were sufficiently serious to constitute deliberate indifference. To meet the objective component a prisoner must establish that the deprivation alleged was sufficiently serious to constitute

cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The subjective component requires the prison official to have a "sufficiently culpable state of mind." *Self v. Crum*, 439 F.3d 1227, 1230-31 (10th Cir. 2006). In the context of prison cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)). "Deliberate indifference" requires a state of mind "more blameworthy than negligence," but this can be "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. It is a state of mind akin to recklessness, and occurs when the defendant "knows of and disregards an excessive risk to [the] inmate['s] health or safety." *Id*. at 837. It is not enough to show that a defendant provided ineffective or even negligent medical treatment. *DeShaney v. Winnebago County Dep't. of Social Servs*., 489 U.S. 189, 198 n. 5 (1989); *Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008).

   b)   In November 2013, Dr. Fitting did not modify or deprive Schwark of his medications until after his seizure, and then only to treat the medically probably underlying cause of the seizure. Schwark cannot prove Dr. Fitting had a culpable state of mind necessary to prove his claim.

   c)   Schwark also cannot prove his claim that Dr. Fitting had actual knowledge that modifying his medications in February 2014 may pose a substantial risk to his health. A prison official cannot incur liability "unless the official knows of and disregards an

excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F. 3d 1227, 1230-31 (10th Cir. 2006). "[W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law. . . . So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self*, 439 F.3d 1232–33; *Grassi v. Corrections Corporation of America*, 354 F. App'x 329, 332 (10th Cir. 2009) (plaintiff must point to evidence that doctor knew of—or expert testimony that doctor should have known of—and chose to disregard a serious medical need).

Schwark's seizures were not caused, as he contends, by not receiving his medications. Even if they were, Dr. Fitting attributed the seizures to alcohol withdrawal and not related to any medication modifications. Thus, Dr. Fitting had no actual knowledge that modifying his medications upon his second admission to jail might put him a risk of harm greater than any other inmate under similar circumstances who was being weaned from benzodiazepines. (**Exh. P**, Moser Aff., ¶5, 9-10, 12, 14; **Exh. S**, Ritvo Aff., ¶12-14, opining it was reasonable for Dr. Fitting to order wean from benzodiazepines and his medications were being appropriately managed).

d)      It was reasonable for Dr. Fitting to order Plaintiff be weaned from his medications upon his second incarceration. Dr. Fitting tailored the medication wean protocol in a series of steps to slowly decrease Plaintiff's medications to avoid or lessen potential withdrawal symptoms. (**Exh. G**, Fitting Dep. 32:1-6, 85:15-25 through 86:1). There is no evidence Dr. Fitting was aware of Plaintiff's condition until she was notified by the jail staff, at which time she ordered Plaintiff's Xanax to be continued until his symptoms subsided and referred him to the jail's psychiatric specialist for further evaluation. (**Exh. G**, Fitting Dep. 87:20-25 through 88:1-11, 95-96). When she was notified by medical personnel at the jail about Plaintiff's potential hallucinations, she promptly addressed it. *Id*.

e)      Finally, Schwark asserts his medical needs were not addressed and that Dr. Fitting was aware of his serious medical needs and deliberately ignored him. There is no evidence to support these allegations. In November 2013, Schwark was provided with an immediate response following his first seizure and then rapid transport to an emergency department following his second seizure. In February 2014, Schwark was placed in solitary confinement so that his health and safety could be observed and monitored more closely. (**Exh. K**, Muldoon Aff., ¶10). Schwark only ever submitted a Kite requesting "brand new whites, and never anything regarding medications. (**Exh. T**, Schwark.Park000207). Importantly, there is no evidence that Dr. Fitting was even aware of the request.  Therefore, Plaintiff cannot meet the subjective element of deliberate indifference. Accordingly,

Plaintiff's claim that Dr. Fitting's conduct during his February 2014 incarceration shows deliberate indifference to his serious medical needs fails as a matter of law and summary judgment should be granted.

### 3. Affirmative Defense: Dr. Fitting is protected by Qualified Immunity on the Individual Claims Against Her.

#### a. Elements and Burden

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights that a reasonable officer should know.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant asserts qualified immunity as an affirmative defense, the plaintiff must establish (1) that a constitutional violation occurred, and (2) that the violated law was "clearly established" at the time of the alleged misconduct. *King v. Patt*, 525 F. App'x 713, 718 (10th Cir. 2013) citing *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009). When a court is considering qualified immunity, it does not have to first determine if there is a constitutional violation before deciding whether there is clearly established law that the reasonable officer should know. *See Pearson*, 555 U.S. at 236.

A clearly established law "must be 'particularized' to the facts of the case. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely

abstract rights.'" *Id.* (citing *Anderson*, 483 U.S. at 639)). "[T]here must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Whitington v. Lawson*, 424 F. App'x 777, 780 (10th Cir. 2011) (quoting *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir.2010)). The pertinent question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation."  (internal quotation marks omitted). *Whitington v. Lawson*, 424 F. App'x 777 (10th Cir. 2011).

a) As set forth in detail above, Plaintiff has failed to establish a constitutional violation occurred. The treatment provided Schwark was reasonable and appropriate and well within the standard of care.

b) Schwark has failed to identify any clearly established law entitling him to different medical treatment. To the contrary, the Tenth Circuit has recognized that jail physicians may and should exercise clinical judgment. *See Callahan v. Poppell*, 471 F. 3d 1155, 1160 (10th Cir. 2006) ("[A] prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment." (quoting *Dulany v. Carnahan*, 132 F. 3d 1234, 1240 (8th Cir. 1997))); *Perkins v. Kansas Dep't of Corrs.*, 165 F. 3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."). Because no clearly established law required Dr. Fitting to do anything other

than exercise her medical judgment, she is entitled to qualified immunity and the claims against him must be dismissed.

## IV.    CONCLUSION

The undisputed facts establish that Dr. Fitting is entitled to qualified immunity and that Plaintiff has failed to meet his burden on the subjective component of deliberate indifference. Accordingly, this Court must enter summary judgment in Defendant's favor.

WHEREFORE, Katherine Fitting, M.D. respectfully requests that this Honorable Court ENTER JUDGMENT in her favor and dismiss all claims against her with prejudice, and enter any further relief that the Court may deem just and proper.

DATED: August 29, 2017.

*/s/ Steven A. Michalek*
Steven A. Michalek
Gina L. Glockner
Childs McCune LLC
821 17th Street, Suite 500
Denver, CO 80202
Telephone: (303) 296-7300
FAX: (720) 625-3637
Email: smichalek@childsmccune.com
Email: gglockner@childsmccune.com
*Attorneys for Defendant Katherine Fitting, M.D.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 29, 2017, a true and correct copy of the foregoing **DEFENDANT KATHERINE FITTING, M.D.'S MOTION FOR SUMMARY JUDGMENT** was filed with the Court and served electronically via ECF upon the following:

David A. Lane
Andy McNulty
Eudoxie (Dunia) Dickey
Killmer, Lane & Newman, LLP
1543 Champa St., Ste. 400
Denver, CO  80202
Email: dlane@kln-law.com
Email: amcnulty@kln-law.com
Email: ddickey@kln-law.com

Eric Michael Ziporin
Susan E. McNulty
Senter Goldfarb & Rice, LLC
3900 East Mexico Avenue, Suite 700
Denver, CO 80210
Email: eziporin@sgrllc.com
smcnulty@sgrllc.com

*s/ Mary Baltz*
_____