*Kyle Jeffery Schwark vs.*

*Sheriff Fred Wegener, et al.*

*Deposition of Cathlene Pearce, R.N.*

*March 09, 2017*



700 17th Street, Suite 1750
Denver, CO  80202
303-988-8470 (Office)   303-988-8478 (Fax)
SKReporting.com

Exhibit H

Page 19

```
 1        Q.    Somebody called the doctor.  Who called
 2   the doctor?
 3        A.    Jeri called the doctor.
 4        Q.    Jeri who?
 5        A.    Jeri Swann called the doctor.
 6        Q.    And that was Dr. Fitting, right?
 7        A.    Yes, sir.
 8        Q.    And Dr. Fitting, on that phone call, took
 9   him off the Xanax; is that right?
10              MR. MICHALEK:  Object to form and
11   foundation.
12        A.    Actually, she told us that we needed to
13   taper the medication and get him on the
14   alcohol-withdrawal protocol.
15        Q.    (By Mr. Lane)  Do you know if the Court
16   had ordered him to be on the Xanax?
17        A.    I don't know.  There was never a document.
18        Q.    Well, there was never a document about the
19   Suboxone either, was there?
20        A.    Well, he had Suboxone with his name on it
21   and how he was supposed to be prescribed it.
22        Q.    Did he have the Xanax with his name on it
23   and how he was supposed to be prescribed it?
24        A.    Uh-huh.  He came in with all of his
25   medications.
```

Case 1:15-cv-02507-JLK   Document 75-8   Filed 08/29/17   USDC Colorado   Page 3 of 8

| Kyle Jeffery Schwark vs. | Deposition of Cathlene Pearce, R.N. |
|---|---|
| Sheriff Fred Wegener, et al. | March 09, 2017 |

Page 36

```
 1                 MR. MICHALEK:  Object to form.
 2         A.      Yeah.
 3         Q.      (By Mr. Lane)  What?
 4         A.      Nausea, vomiting, maybe some sweating.
 5         Q.      Did you ask Mr. Schwark whether he had
 6  ever had a seizure before?
 7         A.      They did when he came in.
 8         Q.      And what did he say?
 9         A.      No.
10         Q.      So he's now at the jail.  All of a sudden,
11  he has his very first seizure in his entire life.  That's
12  your understanding?
13         A.      That's my understanding.
14         Q.      Approximately how old was he?
15         A.      And he wasn't on any medications for
16  seizures.
17         Q.      Which should lead you to believe, like, I
18  wonder what caused that seizure, right?
19         A.      But I knew he was on alcohol when he came
20  in.
21         Q.      How do you know that?
22         A.      It was on the chart.
23         Q.      Okay.  And are you saying that you
24  believed that the seizure he had was alcohol related?
25         A.      Yes.
```

Page 37

```
 1      Q.      And what do you base that on?
 2      A.      My experience as a nurse.  I have not seen
 3   anybody -- there's no evidence-based practice that
 4   anybody has had a seizure from withdrawing from opioids
 5   or barbiturates.
 6      Q.      So you don't know of anybody who's ever
 7   had a seizure from opioid withdrawal?
 8      A.      No.
 9      Q.      Okay.  I'm looking at Bates stamp page 11.
10   Whose signature is in the lower right-hand corner?
11      A.      I have no idea.
12      Q.      Okay.  Was the deputy that was brought in
13   from Intake, was that Fenner?
14      A.      Uh-huh.
15      Q.      And was it Deputy Flores that was standing
16   there?
17      A.      I thought it was Deputy Harding.
18      Q.      Do you have any knowledge as to why Kyle
19   Schwark was released from jail on furlough?
20      A.      No.
21      Q.      What is your training about -- you've
22   indicated it would be substandard to put somebody who's
23   had a seizure up on a table that they could fall off of
24   without guardrails, right?
25              MR. ZIPORIN:  Object to form.
```

```
 1                MR. MICHALEK:  Object to form.
 2        A.      Yes.
 3        Q.      (By Mr. Lane)  What is your training about
 4   what would be the proper thing to do?
 5        A.      Well, that's why we left him in a
 6   wheelchair for several hours until we felt like he was
 7   oriented times three, alert, could talk to us, he was
 8   eating, and he asked if he could get out of the
 9   wheelchair.  At that point, I wasn't worried that he was
10   going to have another seizure.
11        Q.      Is that based on your training?
12        A.      Yes.
13        Q.      Okay.  Why did you think he was not going
14   to have another seizure?
15        A.      Vital signs are stable.  He's totally
16   coherent.  He knew who he was, where he was, and why he
17   was in jail.
18        Q.      Okay.  How many times had you interacted
19   with Kyle Schwark, total, at the jail?
20        A.      Just on the 14th.
21        Q.      Okay.
22        A.      Once when I went to F Pod, and then in
23   Medical all day.
24        Q.      In writing your report, were you taught in
25   nursing school about the importance of reports?
```

Case 1:15-cv-02507-JLK   Document 75-8   Filed 08/29/17   USDC Colorado   Page 6 of 8

Kyle Jeffery Schwark vs.                                    Deposition of Cathlene Pearce, R.N.
Sheriff Fred Wegener, et al.                                                  March 09, 2017

Page 42

```
 1        Q.     Is that a "yes"?
 2        A.     Actually, I think it was the other way
 3   around for us.  I think this was the first page.
 4        Q.     Okay.  And you said that the Court -- as
 5   far as you knew, he was Court ordered to take all of his
 6   meds, right?
 7        A.     Yes.
 8        Q.     And so that would include Elidel, right?
 9        A.     Uh-huh.
10        Q.     Is that a "yes"?
11        A.     Yes, sir.
12        Q.     Inositol?
13        A.     Yes, sir.
14        Q.     Desonide?
15        A.     Yes, sir.
16        Q.     Alprazolam, right?
17        A.     Yes.  Alprazolam.
18        Q.     Alprazolam, is that the Xanax?
19        A.     That's Xanax.
20        Q.     Okay.  And on the Xanax, there are two
21   little notes -- or two little checks, one for the 13th
22   and one for the 14th.
23        A.     Yes.  So that would be the afternoon of
24   the -- let's see.  Yeah.  On the afternoon of the 13th,
25   the Xanax was given by Susan Canterbury.
```

```
 1      Q.   And you can tell because those are her
 2   initials?
 3      A.   Yes.
 4      Q.   Okay.
 5      A.   And then she -- we packed his medication
 6   for the next day.  She initialed it because she packed
 7   it.  But the deputies give him his Xanax that morning.
 8      Q.   How do we know that the deputies did that?
 9      A.   She wasn't working that day.  It was me
10   and Jeri.
11      Q.   Okay.  But how do you know anybody gave
12   him his meds that day?
13      A.   Well, she packed it and --
14      Q.   Meaning put it into a little pill
15   container --
16      A.   Yes.
17      Q.   -- that then goes out in med pass or
18   something?
19      A.   Yes, sir.
20      Q.   And the inmates, supposedly, take them,
21   right?
22      A.   Yes, sir.
23      Q.   Okay.  So it got packed.  We don't know if
24   it was delivered, though, right?  You weren't there?
25      A.   I don't know.
```

**Kyle Jeffery Schwark vs.** **Deposition of Cathlene Pearce, R.N.**
**Sheriff Fred Wegener, et al.** **March 09, 2017**

Page 54

```
 1                    REPORTER'S CERTIFICATE

 2                 I, Wendy Evangelista, a Registered

 3      Professional Reporter and Notary Public within and for

 4      the State of Colorado, commissioned to administer oaths,

 5      do hereby certify that previous to the commencement of

 6      the examination, the witness was duly sworn by me to

 7      testify to the truth in relation to matters in

 8      controversy between the said parties; that the said

 9      deposition was taken in stenotype by me at the time and

10      place aforesaid and was thereafter reduced to typewritten

11      form by me; and that the foregoing is a true and correct

12      transcript of my stenotype notes thereof; that I am not

13      an attorney nor counsel nor in any way connected with any

14      attorney or counsel for any of the parties to said action

15      nor otherwise interested in the outcome of this action.

16                 My commission expires:  August 30, 2020.

17

18

19                              _____
                                Wendy Evangelista
20                              Registered Professional Reporter
                                Notary Public, State of Colorado
21

22

23

24

25
```