*Kyle Jeffery Schwark vs.*

*Sheriff Fred Wegener, et al.*

*Deposition of Jeri Swann, R.N.*

*March 13, 2017*



700 17th Street, Suite 1750
Denver, CO  80202
303-988-8470 (Office)   303-988-8478 (Fax)
SKReporting.com

Exhibit J

1  Q. And what did you see in March?

2  A. I don't recall, really, any interaction.
3  I know at one point, I gave -- I had charted that I gave
4  a medication to him -- which, according to the med sheet,
5  would have been the Xanax -- one morning, on the 8th of
6  March.

7  Q. Okay. Were you tuned into the notion of
8  what Dr. Singer had prescribed for him by way of Xanax
9  and Suboxone, as opposed to what Dr. Fitting was having
10 him take?

11            MR. MICHALEK:  Object to form and
12 foundation.

13            MR. MICHALEK:  Object to form.

14            You can answer.

15  A. I knew that there's -- I know there's
16 always some question. You know, you really want to be
17 careful and follow our doctor's orders as clearly as
18 possible. I don't recall that there was a great
19 discrepancy in which doctor prescribed what amounts of
20 the meds. Eventually, Dr. Fitting gave us very clear
21 orders that we should continue with the Xanax. And then
22 when he had the seizures, she said she would feel more
23 comfortable with the Librium, so we switched to the
24 Librium after the first seizure.

25  Q. (By Mr. Lane) Okay. If Dr. Singer gives

Case 1:15-cv-02507-JLK   Document 75-10   Filed 08/29/17   USDC Colorado   Page 3 of 7

| Kyle Jeffery Schwark vs. | Deposition of Jeri Swann, R.N. |
|---|---|
| Sheriff Fred Wegener, et al. | March 13, 2017 |

Page 25

```
 1   foundation.
 2        A.    Uh-huh.
 3        Q.    (By Mr. Lane)  Is that a "yes"?
 4        A.    Yes.
 5              MR. ZIPORIN:  That was a different time
 6   frame, though.
 7              MR. LANE:  Was it?
 8              MR. MICHALEK:  The note you showed her was
 9   from the February 2014 time frame.
10              MR. LANE: Okay.  I'm not trying to be
11   misleading here.
12              MR. MICHALEK:  He didn't have a seizure in
13   that time frame.
14        Q.    (By Mr. Lane)  Okay.  Take a look at
15   Exhibit 2, which is Bates stamped page 50.
16        A.    Okay.
17        Q.    Is this the medication sheet from November
18   2013?
19        A.    One of them.  I believe there was two.
20        Q.    Okay. And on the second page of that
21   exhibit, page 51, it looks like he's getting alprazolam,
22   2 milligrams -- excuse me -- 1 milligram the evening of
23   November 13th and 2 milligrams the morning of the 14th;
24   is that right?
25        A.    That's what that indicates.
```

Case 1:15-cv-02507-JLK   Document 75-10   Filed 08/29/17   USDC Colorado   Page 4 of 7

| Kyle Jeffery Schwark vs.<br>Sheriff Fred Wegener, et al. | Deposition of Jeri Swann, R.N.<br>March 13, 2017 |
|---|---|

Page 26

1   Q.   So he had his seizure on the 14th, right?
2   A.   He did.
3   Q.   He had been -- his Xanax dosage had been
4   cut.  Assuming he had previously been given 4 milligrams
5   self-medicating, this was cutting it in half; is that
6   right?
7            MR. MICHALEK:  Object to form.
8   Q.   (By Mr. Lane)  Because he was getting two
9   on the 14th, right?
10           MR. MICHALEK:  Object to form and
11  foundation.
12           MR. MICHALEK:  Object to form.
13           You can answer.
14  A.   He had received two in the morning of the
15  14th.
16  Q.   (By Mr. Lane)  Okay.  What it's showing
17  me -- look at the 13th.  How much Xanax did he receive on
18  the date November 13th, based on this chart?
19  A.   Based on this chart, he got 1 milligram
20  that night.
21  Q.   And you would agree that that is -- if he
22  was taking, on his own, four doses a day of 1 milligram
23  each, only receiving 1 milligram on the 13th would have
24  been a significant reduction?
25           MR. MICHALEK:  Object to form --

Case 1:15-cv-02507-JLK   Document 75-10   Filed 08/29/17   USDC Colorado   Page 5 of 7

| Kyle Jeffery Schwark vs. Sheriff Fred Wegener, et al. | Deposition of Jeri Swann, R.N. March 13, 2017 |
|---|---|

Page 46

```
 1   earlier.  It's page A 282, the November 2013 medication
 2   administration.
 3           A.    Uh-huh.
 4           Q.    Is that a "yes"?
 5           A.    Yes.
 6           Q.    So on the 13th at 1630, there's a note
 7   that says, Call Dr. Fitting with report, and orders
 8   continue of the Xanax, correct?
 9           A.    That says to continue the alprazolam.
10   Yeah.
11           Q.    So on the 13th, Dr. Fitting is continuing
12   the Xanax that was prescribed by Dr. Singer, correct?
13           A.    Correct.
14           Q.    There wasn't any discussion about
15   discontinuing or tapering the Xanax until after the
16   patient had a seizure and fell on the 14th, correct?
17           A.    Correct.  But I don't even recall that we,
18   at that point, discussed the taper.  She said, Switch to
19   Librium for now.
20           Q.    Right.  These questions about, Oh, well,
21   they were tapering him from 4 milligrams to 3 milligrams,
22   isn't consistent with the record, is it?
23           A.    It isn't consistent with that statement
24   there.
25           Q.    Okay.  In fact, the Xanax wasn't
```

Case 1:15-cv-02507-JLK   Document 75-10   Filed 08/29/17   USDC Colorado   Page 6 of 7

| Kyle Jeffery Schwark vs. | Deposition of Jeri Swann, R.N. |
|---|---|
| Sheriff Fred Wegener, et al. | March 13, 2017 |

Page 47

```
 1   discontinued or switched to Librium until the 14th, until
 2   after the patient had the seizure, right?
 3            A.    Correct.
 4                  MR. MICHALEK:  Okay.  Thanks.
 5                  MR. LANE:  Nothing further.
 6                  THE REPORTER:  Mr. Ziporin, same order as
 7   before, and you'll handle signature?
 8                  MR. ZIPORIN:  Yes.
 9                  THE REPORTER:  Mr. Michalek, same order as
10   before?
11                  MR. MICHALEK:  Yes.
12                  THE REPORTER:  Mr. Lane, same order?
13                  MR. LANE:  Yes.
14                  THE REPORTER:  Do you need it expedited?
15                  MR. LANE:  No.
16                  THE REPORTER:  Okay.  Thank you.
17                     * * * * * * * * * * *
18                  (WHEREUPON, the foregoing deposition was
19   concluded at the hour of 2:03 p.m.  Total time on the
20   record was 59 minutes.)
21
22
23
24
25
```

```
 1                    REPORTER'S CERTIFICATE

 2              I, Wendy Evangelista, a Registered

 3   Professional Reporter and Notary Public within and for

 4   the State of Colorado, commissioned to administer oaths,

 5   do hereby certify that previous to the commencement of

 6   the examination, the witness was duly sworn by me to

 7   testify to the truth in relation to matters in

 8   controversy between the said parties; that the said

 9   deposition was taken in stenotype by me at the time and

10   place aforesaid and was thereafter reduced to typewritten

11   form by me; and that the foregoing is a true and correct

12   transcript of my stenotype notes thereof; that I am not

13   an attorney nor counsel nor in any way connected with any

14   attorney or counsel for any of the parties to said action

15   nor otherwise interested in the outcome of this action.

16              My commission expires:  August 30, 2020.

17

18

19                       _____
                         Wendy Evangelista
20                       Registered Professional Reporter
                         Notary Public, State of Colorado
21

22

23

24

25
```