# EXHIBIT 1

Case 1:15-cv-02507-JLK   Document 82-1   Filed 10/19/17   USDC Colorado   Page 2 of 18

Kyle Jeffery Schwark vs.                                          Deposition of Fred Wegener
Sheriff Fred Wegener, et al.                                                April 12, 2017

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF COLORADO

 3    Civil Action No. 15-CV-2507-JLK
      _____
 4
      KYLE JEFFERY SCHWARK,
 5
            Plaintiff,
 6
      vs.
 7
      SHERIFF FRED WEGENER, in his official and
 8    individual capacities; NURSE SUSAN CANTERBURY,
      in her individual capacity; NURSE JERI SWANN,
 9    in her individual capacity; NURSE CATHLENE
      PEARCE, in her individual capacity; DOCTOR
10    KATHERINE FITTING, in her individual capacity,

11          Defendants.
      _____
12
                      DEPOSITION OF FRED WEGENER
13
                            April 12, 2017
14    _____

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    APPEARANCES:

 2    ON BEHALF OF THE PLAINTIFF:
              DAVID A. LANE, ESQ.
 3            DUNIA DICKEY, ESQ.
              Killmer, Lane & Newman, LLP
 4            1543 Champa Street, Suite 400
              Denver, Colorado 80202
 5            Phone:  303-571-1000
              Email:  dlane@kln-law.com
 6            Email:  ddickey@kln-law.com


 7    ON BEHALF OF DEFENDANTS SHERIFF FRED WEGENER, NURSE
      SUSAN CANTERBURY, AND NURSE JERI SWANN:
 8            ERIC ZIPORIN, ESQ.
              Senter Goldfarb & Rice
 9            3900 East Mexico Avenue, Suite 700
              Denver, Colorado 80210
10            Phone:  303-320-0509
              Email:  eziporin@sgrllc.com
11
      ON BEHALF OF DEFENDANT DR. KATHERINE FITTING:
12            STEVEN A. MICHALEK, ESQ.
              Childs McCune
13            821 17th Street, Suite 500
              Denver, Colorado 80202
14            Phone:  303-296-7300
              Email:  smichalek@childsmccune.com
15
      Also Present:
16            Kyle Schwark

17

18

19

20

21

22

23

24

25
```

Case 1:15-cv-02507-JLK   Document 82-1   Filed 10/19/17   USDC Colorado   Page 4 of 18

| Kyle Jeffery Schwark vs. | Deposition of Fred Wegener |
| --- | --- |
| Sheriff Fred Wegener, et al. | April 12, 2017 |

Page 12

```
 1      A.    They would have that in the computer.
 2      Q.    The records people at your jail know when he
 3   is supposed to be released?
 4      A.    Correct.
 5      Q.    But you do have the authority to furlough
 6   somebody for some serious emergency, right?
 7      A.    Correct.
 8      Q.    And in 27 years of being associated with the
 9   sheriff's department, you've only seen that happen a
10   couple times; is that --
11      A.    Few times, that's correct.
12      Q.    And Kyle Schwark was one of those times,
13   right?
14      A.    That's correct.
15      Q.    Because he obviously had some very serious
16   medical needs that needed attention, right?
17      A.    That's right.
18      Q.    Do you recall what those medical needs were?
19      A.    No, I don't recall.
20      Q.    Okay.  The mittimus talks about other
21   conditions.  He has to report immediately to probation,
22   presumably after he is incarcerated, after his
23   incarceration is over, right?  It says, Report
24   immediately to probation --
25      A.    Follow standard terms and conditions of --
```

Page 14

```
 1       Q.    But all of this stuff is generally -- you
 2  would look at this if you were in your intake position
 3  and say, Okay.  All that's for when you get released,
 4  Mr. Schwark.  But then it says, "Take medication as
 5  required on a timely basis even while in custody,"
 6  right?
 7       A.    Yes.  That's what it says.
 8       Q.    Now, that means that the jail has some
 9  responsibility to do something here, right?
10             MR. MICHALEK:  Object to form.
11       A.    To make sure -- yes, to make sure that any
12  medications he has, that he is supposed to take.
13       Q.    (By Mr. Lane)  But he has taken them, right?
14       A.    Yeah.
15       Q.    Okay.  Now, that would also require that
16  somebody tell the jail, what are these required
17  medications that we're talking about here, right?
18       A.    Yes.  Somebody would have to tell the jail
19  what they are.
20       Q.    So walk me through the process here.  You're
21  the intake person at jail.  You get this mittimus.  You
22  say, Okay.  Kyle, you're supposed to take medication as
23  required on a timely basis even while in custody.
24  First thing you want to know is what medications are
25  you required to take, right?
```

Case 1:15-cv-02507-JLK   Document 82-1   Filed 10/19/17   USDC Colorado   Page 6 of 18

Kyle Jeffery Schwark vs.                                          Deposition of Fred Wegener
Sheriff Fred Wegener, et al.                                                 April 12, 2017

Page 22

```
 1            MR. MICHALEK:  Object to form.
 2            MR. ZIPORIN:  Same objection.
 3       A.   Now, I don't know whether or not they called
 4  or -- I don't know.  I have no --
 5       Q.   (By Mr. Lane)  Well, what's the policy and
 6  procedure at the jail?  If a judge orders opioids at
 7  the jail, what is the protocol at the jail for they are
 8  supposed to do?
 9       A.   Again, all the judge is ordering is
10  treatment.  We don't -- I mean, as far as the
11  prescriptions or the medications themselves, that all
12  has to be worked out by the medical staff.
13       Q.   Well, let me just ask you this:  If a judge
14  has information that somebody needs a specific hard
15  medication, for example -- this is a hypothetical --
16  and the doctor has told the judge, Look -- not the jail
17  doctor, but the person's doctor -- he has to have this
18  specific med.  There is no substitute allowed.  He's
19  got to have this med because he is allergic to whatever
20  else and he is indigent and it is coming out of the
21  jail's budget and the judge orders it.  And the jail
22  doctor says, Wait a minute.  We can substitute this
23  generic substitute.  It's much cheaper, does the same
24  thing.  And the inmate says, No, I'm allergic to all
25  that stuff.  This is the only one I can take.  What
```

Case 1:15-cv-02507-JLK   Document 82-1   Filed 10/19/17   USDC Colorado   Page 7 of 18

Kyle Jeffery Schwark vs.                                        Deposition of Fred Wegener
Sheriff Fred Wegener, et al.                                               April 12, 2017

Page 23

```
 1   would be the protocol under a situation like that?  I
 2   mean, you would agree that the judge has the authority
 3   to say, No, you are getting him that med that I've
 4   ordered, wouldn't you?
 5           MR. ZIPORIN:  Object to form and foundation.
 6           MR. MICHALEK:  Object to form.
 7       A.  No.  The judge can't do that.
 8       Q.  (By Mr. Lane)  Why do you think the judge
 9   can't do that?
10       A.  Because if he was going to say that that was
11   the only pill that he could take, then we would have a
12   conversation.
13       Q.  You might have a conversation.  But at the
14   end of the day, the judge is wearing a black robe and
15   you are not.  Who wins that discussion?
16       A.  And the individual by statute running the
17   facility?
18       Q.  I'm just asking your opinion.
19       A.  I win.
20       Q.  You win?
21       A.  That's right.
22       Q.  You can countermand a judge's order?
23       A.  Well, no, I can't countermand his order, but
24   the judge and I are going to talk --
25       Q.  Right.
```

```
 1      A.      -- and I'm in charge of running the jail.
 2      Q.      And the judge is in charge of what you do at
 3   the jail, isn't he?
 4              MR. ZIPORIN:  Object to form, foundation.
 5   You can answer.
 6      A.      You would have to specify, what I can do at
 7   the jail.
 8      Q.      (By Mr. Lane)  Judges shut down jails
 9   sometimes, don't they, for violating various cruel and
10   unusual punishment provisions, don't they?
11      A.      Yeah.  I believe a federal judge probably
12   could do that.
13      Q.      But not a state judge?
14      A.      I don't know as far as what -- a state
15   judge.  Like a district court judge?
16      Q.      Yeah.
17      A.      I've not heard of that, no.
18      Q.      Okay.  But it's your training that if a
19   judge orders something that violates jail policy, jail
20   policy wins, right?
21      A.      Yeah.  If there is going to be a problem
22   where the judge is really hell-bent on the fact it's
23   got to be this particular medication, then we are
24   probably going to have to have a talk because we just
25   can't do that.
```

Case 1:15-cv-02507-JLK   Document 82-1   Filed 10/19/17   USDC Colorado   Page 9 of 18

| Kyle Jeffery Schwark vs. | Deposition of Fred Wegener |
| --- | --- |
| Sheriff Fred Wegener, et al. | April 12, 2017 |

Page 29

```
 1   where one of your deputies suddenly becomes very sick?
 2        A.    Where my deputy becomes sick?
 3        Q.    Yeah.  Or a staff person at the jail has a
 4   seizure or something like that, along those lines.
 5        A.    Fallen down, yes.
 6        Q.    What was your response when that happened?
 7   What did you do?
 8        A.    Called the nurse, first aid, you know, or
 9   whatever the -- or if we need an ambulance.
10        Q.    Have you ever had a situation where a member
11   of the sheriff's department, either patrol or jail or
12   court or however you divide it up, has a seizure on the
13   job?
14        A.    I don't recall anybody having a seizure.
15        Q.    If you did, would you call an ambulance?
16        A.    The nurse, if the nurse was right there.
17   And if she dictated that we needed an ambulance, we
18   would call an ambulance.
19        Q.    Okay.  Are you aware that Kyle Schwark had a
20   couple of seizures in the jail?
21        A.    No, I'm not.
22        Q.    Even as you sit here today?
23        A.    No.
24        Q.    Okay.  What is the policy or the practice in
25   the jail when you have an inmate who is hallucinating?
```

Case 1:15-cv-02507-JLK   Document 82-1   Filed 10/19/17   USDC Colorado   Page 10 of 18

Kyle Jeffery Schwark vs.　　　　　　　　　　　　　　　　Deposition of Fred Wegener
Sheriff Fred Wegener, et al.　　　　　　　　　　　　　　　　April 12, 2017

Page 30

1   A.   Well, get ahold of medical, find out what --
2   then they would probably talk to the individual, see
3   what's going on, figure out what needs to happen, do we
4   need a psychiatrist, do we need -- whatever the case
5   may be, and then isolate him if it's appropriate.
6   Q.   What's the purpose of isolating someone who
7   is hallucinating?
8   A.   To keep a closer eye on them.
9   Q.   Do you put them in an observation area?
10  A.   Well, there is a camera in the cell, so you
11  monitor them a little easier.
12  Q.   Okay. And what is your understanding of if
13  somebody is actively psychotic and hallucinating, do
14  you view that as a serious medical need?
15  A.   It can be --
16       MR. ZIPORIN:  Object to form.  Go ahead.
17       THE DEPONENT:  I'm sorry.
18  A.   It can be.  It can require, yeah.
19  Q.   (By Mr. Lane)  So what do you do?  I mean,
20  you put them in an observation cell.
21  A.   Yeah.
22  Q.   And then what?
23  A.   Well, medical may require, like I say,
24  15-minute status or checks.  He may get -- like I say,
25  get ahold of a psychiatrist, see if they need to be

```
 1      A.    That looks familiar.
 2      Q.    It's signed by you, right?
 3      A.    Correct.
 4      Q.    And it says Schwark is released due to his
 5   medical conditions, which are serious and life
 6   threatening, right?
 7      A.    Correct.
 8      Q.    But you don't recall what those were?
 9      A.    No.  That's kind of a boilerplate form as
10   far as . . .
11      Q.    Okay.  And he was then at some point
12   rearrested, correct?
13      A.    Yes.
14      Q.    And he was supposed to return once he was
15   authorized by his doctor to return, right?
16      A.    Yes.  That's correct.
17      Q.    And do you know if his doctor had authorized
18   him to return?
19      A.    I do not.
20      Q.    Okay.  According to this, the only way he
21   should have been brought back to the jail is if his
22   doctor authorized his return, right?
23      A.    Yes.  That's -- according to what that says.
24      Q.    Now, there is a Park County jail policy and
25   procedure manual, isn't there?
```

```
 1   I guess that's what you are saying.
 2       Q.    Okay.  Well, if he was, then this policy
 3   would have controlled, right?
 4       A.    It should have, yes.
 5       Q.    Okay.  Personally observed by a detention
 6   officer at least every 30 minutes.  And then it says,
 7   "Inmates who are violent or mentally disordered or who
 8   demonstrate unusual or bizarre behavior receive more
 9   frequent observation.  Suicidal inmates are under
10   continual observation and fifteen-minute physical
11   checks for living, breathing flesh," right?
12       A.    Correct.
13       Q.    And was a log maintained outside of the
14   segregation unit indicating each time the unit was
15   visited by an officer?  Is that regularly done?
16       A.    That is supposed to be done, yeah.  That's
17   correct.
18       Q.    But is it done?
19       A.    I don't know.  I'm not there.
20       Q.    Okay.  Who is actually in charge of the
21   jail?  I know you're --
22       A.    Captain Muldoon.
23       Q.    -- the big boss.
24             Now, take a look at Bates-stamped Page 148,
25   Special Needs Inmates.  Are you there?
```

```
 1      Q.    Now, we kind of had a discussion already
 2   about whose order.  So if Kyle Schwark has a doctor
 3   on the outside who has ordered something and a
 4   prescription, should that be administered as ordered
 5   or --
 6           MR. MICHALEK:  Object to form.
 7      Q.    (By Mr. Lane)  -- should Dr. Fitting's
 8   changes in that order be followed?
 9           MR. MICHALEK:  Object to form and
10   foundation.
11      A.    Yeah.  It would be as ordered by the medical
12   doctor that we have that works in the facility.
13      Q.    (By Mr. Lane)  Okay.  Turn to Page 156.
14   Definitions, standing medical orders, direct medical
15   orders that are those written specifically for the
16   treatment of one person's particular condition.  Do you
17   see that?
18      A.    Yes.
19      Q.    And then Policy, it is the policy of the
20   Sheriff's Office that all treatment by health care
21   staff is performed pursuant to written standing or
22   direct orders by personnel authorized by law to give
23   such orders, right?
24      A.    Correct.  That's what it says.
25      Q.    Okay.  So presumably the doctor that wrote
```

Case 1:15-cv-02507-JLK   Document 82-1   Filed 10/19/17   USDC Colorado   Page 14 of 18

| Kyle Jeffery Schwark vs. | Deposition of Fred Wegener |
| --- | --- |
| Sheriff Fred Wegener, et al. | April 12, 2017 |

Page 40

```
 1      Q.    The judge won't back down.  The judge says,
 2   No.  Listen, I had a hearing, the doctor testified, I'm
 3   saying this is extreme, do it?
 4      A.    It's definitely hypothetical.
 5      Q.    Yeah.
 6      A.    The judge -- I just don't think the judge
 7   would do that.
 8      Q.    I know.  But let's say --
 9      A.    I mean, I've known the judges for a lot of
10   years.
11      Q.    Let's say we've got a substitute judge who
12   is just a complete hammerhead and won't listen to
13   reason and says, Look, I'm ordering that this narcotic
14   be given to this patient, period, the end, do it, what
15   do you do?
16            MR. MICHALEK:  Object to form.
17      A.    Depending upon the drug --
18      Q.    (By Mr. Lane)  A narcotic.
19      A.    -- move him to a facility that allows it.
20      Q.    Good answer.  That's a good, reasonable
21   answer.
22            Because you know what happens when you
23   disobey a court order?
24      A.    Oh, yes, very much so.
25      Q.    I'm sure you've had many guests at your jail
```

Case 1:15-cv-02507-JLK   Document 82-1   Filed 10/19/17   USDC Colorado   Page 15 of 18

| Kyle Jeffery Schwark vs. | Deposition of Fred Wegener |
| --- | --- |
| Sheriff Fred Wegener, et al. | April 12, 2017 |

Page 42

```
 1      Q.    So Dr. Fitting, according to jail policy,
 2   is the final decider about what meds Kyle Schwark was
 3   going to be on or any other inmate for that matter,
 4   right?
 5      A.    That's correct.
 6      Q.    Okay.  Would you agree that it's a very
 7   unusual circumstance to see a judge order that an
 8   inmate take their medication over to the jail and that
 9   the jail administer that medication to an inmate?
10            MR. MICHALEK:  Object to form.
11      Q.    (By Mr. Lane)  That's unusual, isn't it?
12            MR. MICHALEK:  Object to form.
13      A.    No.  I mean, I've had other mittimuses where
14   the judge has said they have medication that they need.
15      Q.    (By Mr. Lane)  And you have no personal
16   knowledge one way or the other whether or not Kyle
17   Schwark's medications were or were not narcotics or
18   anything else, do you?
19      A.    No, not --
20      Q.    You have no idea what he was on?
21      A.    Not the specific med, no.
22      Q.    Do you train your staff in making decisions
23   like -- is it Captain Muldoon?
24      A.    The jail administrator, yes.
25      Q.    Captain Muldoon, does he have training, to
```

Case 1:15-cv-02507-JLK   Document 82-1   Filed 10/19/17   USDC Colorado   Page 16 of 18

| Kyle Jeffery Schwark vs. | Deposition of Fred Wegener |
| --- | --- |
| Sheriff Fred Wegener, et al. | April 12, 2017 |

Page 45

```
 1      A.    No, I don't.
 2            MR. LANE:  Okay.  I don't have any further
 3   questions.
 4            MR. MICHALEK:  No questions.
 5            MR. ZIPORIN:  No questions.  And I'll handle
 6   review and signature.
 7            THE REPORTER:  And counsel, do you all want
 8   the same order?
 9            MR. LANE:  Sure.
10            MR. ZIPORIN:  Yes, please.
11            (Discussion off the record.)
12            THE REPORTER:  And Steve, are you ordering
13   this one as well?
14            MR. MICHALEK:  Yep, same order.
15                *    *    *    *    *    *    *
16            WHEREUPON, the foregoing deposition was
17   concluded at 1:55 p.m.  The total time on the record
18   was 53 minutes.
19
20
21
22
23
24
25
```

Case 1:15-cv-02507-JLK   Document 82-1   Filed 10/19/17   USDC Colorado   Page 17 of 18

Kyle Jeffery Schwark vs.                                            Deposition of Fred Wegener
Sheriff Fred Wegener, et al.                                             April 12, 2017

Page 46

```
 1              I, FRED WEGENER, the deponent in the above

 2    deposition, do hereby acknowledge that I have read the

 3    foregoing transcript of my testimony, and state under

 4    oath that it, together with any attached Statement of

 5    Change pages, constitutes my sworn testimony.

 6

 7       _____     I have made changes to my deposition.

 8       _____     I have NOT made changes to my deposition.

 9

10
                              _____
11                            FRED WEGENER

12
      Subscribed and sworn to before me this _____ day of
13
      _____, 2017.
14

15           My Commission expires:_____

16

17

18                            _____
                              NOTARY PUBLIC
19                            Address:

20

21

22

23

24

25
```

```
 1                CERTIFICATE OF DEPOSITION OFFICER

 2

 3    STATE OF COLORADO      )

 4    COUNTY OF DENVER       )

 5

 6              I, Lisa Persichitte Reed, a Certified

 7    Realtime Reporter and Notary Public within and for the

 8    State of Colorado, commissioned to administer oaths, do

 9    hereby certify that previous to the commencement of the

10    examination, the deponent was duly sworn by me to

11    testify the truth in relation to matters in controversy

12    between the said parties; that the said deposition was

13    taken in stenotype by me at the time and place

14    aforesaid and was thereafter reduced to typewritten

15    form by me; and that the foregoing is a true and

16    correct transcript of my stenotype notes thereof.

17              That I am not an attorney nor counsel nor in

18    any way connected with any attorney or counsel for any

19    of the parties to said action nor otherwise interested

20    in the outcome of this action.

21              My commission expires:  April 15, 2020.

22

23                         _____
                           Lisa Persichitte Reed
24                         Certified Realtime Reporter
                           Notary Public, State of Colorado
25
```