EXHIBIT 2

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
        Civil Action No. 15-CV-02507-JLK
 3      _____

 4      KYLE JEFFERY SCHWARK,

 5           Plaintiff,

 6      vs.

 7      SHERIFF FRED WEGENER, in his official and individual
        capacities;
 8      NURSE SUSAN CANTERBURY, in her individual capacity;
        NURSE JERI SWANN, in her individual capacity;
 9      NURSE CATHLENE PEARCE, in her individual capacity;
        DOCTOR KATHERINE FITTING, in her individual
10      capacity;
        CAPTAIN DANIEL MULDOON, in his individual capacity.
11
             Defendants.
12      _____

13           DEPOSITION OF CAPTAIN DANIEL MULDOON
                    August 21, 2017
14      _____

15

16

17

18

19

20

21

22

23

24

25
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 2

```
 1     APPEARANCES:

 2

       ON BEHALF OF THE PLAINTIFF:
 3          ANDREW MCNULTY, ESQ.
            Killmer, Lane & Newman, LLP
 4          1543 Champa Street, Suite 400
            Denver, Colorado  80202
 5          Phone:  303-571-1000
            Email:  Amcnulty@kln-law.com
 6

 7     ON BEHALF OF THE DEFENDANTS SHERIFF FRED WEGENER,
       NURSE SUSAN CANTERBURY, NURSE JERI SWANN, NURSE
 8     CATHLENE PEARCE and CAPTAIN DANIEL MULDOON:
            ERIC M. ZIPORIN, ESQ.
 9          Senter, Goldfarb & Rice, LLC
            3900 East Mexico Avenue, Suite 700
10          Denver, Colorado  80210
            Phone:  303-320-0509
11          Email:  eziporin@sgrllc.com

12

       ON BEHALF OF THE DEFENDANT DOCTOR KATHERINE FITTING:
13          STEVEN A. MICHALEK, ESQ.
            Childs McCune, LLC
14          821 17th Street, Suite 500
            Denver, Colorado  80202
15          Phone:  303-296-7300
            Email:  smichalek@childsmccune.com
16

17     Also Present:  Kyle Jeffrey Schwark

18

19

20

21

22

23

24

25
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 10

```
 1            A.   250 beds.
 2            Q.   And how many inmates normally occupy
 3    the jail?
 4            A.   In 2007, the average daily population
 5    was 215.  In 2015, the average daily population was,
 6    I believe, 420.  It fluctuates a lot dependent on the
 7    other agencies who place offenders in our jail.
 8            Q.   And how many deputies do you have on
 9    staff to monitor those inmates?
10            A.   18.
11            Q.   And how many nurses?
12            A.   Three.
13            Q.   And you're the only Captain at the
14    jail, right?
15            A.   Yes, sir.
16            Q.   And is the Captain of the jail kind
17    of like the head honcho?
18            A.   Division Commander.
19            Q.   Division Commander.  What does that
20    mean?
21            A.   That means I report to the
22    Undersheriff, who then reports to the Sheriff.
23    That's my chain of command.
24            Q.   And then who reports to you?
25            A.   I have -- depending. I have
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 11

```
 1   Sergeants, Corporals, and we run through the chain

 2   of command, so I'll talk to the Sergeants and maybe

 3   to the Corporals.  But when I talk to the deputies,

 4   it's more general.

 5            Q.   So you're not giving them specific

 6   tasks, you're just talking to them generally about

 7   what duties they should perform?

 8            A.   What's going on, yes.

 9            Q.   Gathering information about the jail?

10            A.   Yes.  Mostly, it goes through the

11   Sergeants.

12            Q.   But would you say that the buck stops

13   with you at the jail?

14                 MR. ZIPORIN:  Object to the form of

15   the question.

16                 You can answer.

17            A.   Well, let me think on that for a

18   minute.

19                 It does, but I report up my chain to

20   the Undersheriff and the Sheriff, so --

21            Q.   (By Mr. McNulty)  Do they have any --

22   do the Undersheriff and Sheriff have any -- any

23   control of the day-to-day operations of the jail?

24   Are they involved in the decision-making about the

25   day-to-day operations of the jail; the Undersheriff
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 12

1   and the Sheriff?

2           A.   In regards to major issues, yes.

3           Q.   Like what kind of major issues?

4           A.   Right now, I have a contract from the

5   Department of Corrections to house 100 Department of

6   Corrections' offenders, and I ran that past the

7   Undersheriff and the Sheriff when I was approached

8   by the Department of Corrections.  That's a fairly

9   big deal.

10          Q.   Certainly.

11               What about decisions with regard to

12  individual inmates?

13          A.   Not often, no.  It would have to be

14  extraordinary.

15          Q.   So you are more involved with that

16  than the Sheriff and the Undersheriff?

17          A.   Yes, sir.

18          Q.   But you would be the final

19  decisionmaker with regard to decisions about individual

20  individual inmates, right?

21          A.   Depending on what category of

22  decision.

23          Q.   Well, what categories of decisions are

24  you the final decisionmaker for?

25          A.   I respond to grievances.  I can make

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 13

```
 1   decisions about criminal charges or in-house
 2   charges.  I make decisions about housing.  How we
 3   are going to manage the offenders.  But if we were
 4   going to talk about medical decisions, I am not the
 5   ultimate decisionmaker.
 6            Q.   And that's because you're not a
 7   nurse, right?
 8            A.   Or a doctor.
 9            Q.   You're not a nurse or a doctor,
10   right?
11            A.   Right.
12            Q.   So you don't have any specialized
13   training in terms of medical training, right?
14            A.   No.
15            Q.   And the nurses who work for you,
16   they're good nurses, right?
17            A.   They're registered nurses.
18            Q.   And so when they give you advice
19   about a proper course of treatments for medical --
20   medical treatment for inmates, you would have no
21   reason to disagree with that assessment, right?
22            A.   Right.
23            Q.   And you've seen that they give good
24   treatment, right?
25            A.   Yes.
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 14

```
 1          Q.   And they're honest people, right?
 2          A.   Yes.
 3          Q.   Particularly Nurse Pearce.  She's an
 4   honest person, right?
 5          A.   Of course she doesn't work for us
 6   anymore, but I believe she is.
 7          Q.   And Nurse Swann is an honest person,
 8   right?
 9          A.   Yes, sir.
10          Q.   And Nurse Canterbury is an honest
11   person, correct?
12          A.   Yes, sir.
13          Q.   And they all have good medical
14   judgment from what you've seen, right?
15          A.   In my experience, yes, sir.
16          Q.   And so if they -- and you wouldn't
17   have any reason to disbelieve their medical
18   assessment of an inmate, would you?
19          A.   No.  Never have.
20          Q.   All right.  Now, do the nurses report
21   to you?
22          A.   Not -- well, I guess I am ultimately
23   their boss, but they don't report to me about
24   medical things.  They tell me about medical things,
25   but not report to me.  Like, I think maybe we need
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 18

```
 1   the offender, my question is, "Do we do it in a cop
 2   car or do we have to use an ambulance?"  And if it's
 3   an ambulance, then we worry about whether we can
 4   have a chase car, or if the Deputy has to ride in
 5   the ambulance with the offender.  That's where I
 6   start moving in on this.  I don't make the decision.
 7              I don't agree or disagree with
 8   whether anybody goes to the hospital or anyplace
 9   else.  I just worry about the arrangements and how
10   we're going to do it.
11              Q.   So, if a nurse has said you are the
12   one who prevented someone from going out to get
13   medical treatment, you would disagree with that?
14              A.   I strongly --
15              MR. ZIPORIN:  Object to the form.
16              You can answer.
17              Q.   (By Mr. McNulty)  You can answer.
18              A.   Yes, I would disagree with that.
19              Q.   Okay.  So, who are the nurses'
20   supervisors who are on the law enforcement side
21   within the jail?
22              A.   The nurses' supervisors?
23              Q.   Correct.
24              A.   Just me.
25              Q.   Just you?
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 19

 1          A.    Yes.

 2                Q.    So, it's a straight line from the

 3    nurses to you in terms of the law enforcement -- in

 4    terms of a law enforcement supervisor for the

 5    nurses.

 6          A.    Yes.

 7                Q.    Now, do you set policies for the

 8    jail?

 9          A.    No.  I might suggest them.  I might

10    write them in draft form, but the Sheriff is the one

11    who signs the policies.

12                Q.    Okay.  Has the Sheriff implemented

13    policies that you suggested in the past?

14          A.    Say it again.

15                Q.    Has the Sheriff implemented policies

16    that you've suggested in the past?

17          A.    Yes.

18                Q.    Okay.  And would you say you're

19    pretty familiar with the policies and customs at the

20    Park County Jail?

21          A.    Yes, except we just recently changed

22    our policies this year, so I'm less familiar with

23    the new ones than I am with the old ones.

24                Q.    Well, that's fine because we're not

25    going to talk about the new ones --

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 28

1    Q.   Okay.  Now, do you remember when

2  Mr. -- Mr. Schwark was arrested and taken back to

3  jail?  Do you remember appearing at a hearing in

4  front of a judge with him and talking about the

5  furlough?

6         A.   Yes, sir.

7         Q.   And do you remember what happened at

8  that hearing?

9         A.   There was -- they had -- there was

10 some discussion about the medication, and the -- I

11 believe I said something about how our doctor trumps

12 all the other doctors, and so whatever goes on in

13 the jail is -- is the purview of Dr. Fitting.

14        Q.   And is that policy --

15        A.   Yes.

16        Q.   Is that a policy; that your doctor

17 trumps all other doctors?

18        A.   Yes.

19        Q.   Okay.  Thank you.

20             Sorry.  We were talking over each

21 other a little bit there.

22             All right.  And do you remember if

23 Sheriff Wegener was present at that hearing?

24        A.   I don't remember.

25        Q.   Okay.  And what did the judge say to

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 29

1    you about -- after you said that your doctor trumps

2    all other doctors?

3              A.   I don't remember.

4              Q.   Okay.  Did he order you to give

5    Mr. Schwark his medication as prescribed?

6                   MR. ZIPORIN:  Object to the form.

7              Q.   (By Mr. McNulty)  You can answer it.

8              A.   No, sir.

9              Q.   Okay.  You don't remember whether he

10   did or not, or do you remember if he did or not?

11             A.   The judges don't tell us what to do

12   in the jail.

13             Q.   So the judge can't order you to do

14   anything within the jail.  It's up to you guys to

15   determine what kind of treatment you give the

16   inmates and whether they get their medication or

17   not, things like that?

18                  MR. ZIPORIN:  Objection.  Form.

19                  You can answer.

20             A.   The judges do not tell us what to do

21   in the jail.  We make that very specific.

22             Q.   (By Mr. McNulty)  Okay.  All right.

23   So the second time Mr. Schwark was in jail in

24   February of 2014 --

25             A.   Yes, sir.

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 36

1          Q.    How long do you save the tapes for?

2          A.    I believe they only last 45 days.

3          Q.    And then they're written over again,

4    is that right?

5          A.    However that works digitally, yes.  I

6    don't know how that works.

7          Q.    That's fair enough.

8                Okay.  So, Mr. Schwark was placed

9    back into Park County Jail on February 25th, 2014.

10   Does that comply with your recollection?

11         A.    Yes.

12         Q.    And he was sent to Denver Health on

13   March 10th, 2014.  Does that comply with your

14   recollection?

15         A.    Yes.

16         Q.    Now, did you have any other

17   interactions with Mr. Schwark between February 25th,

18   2014, and March 10th, 2014?

19         A.    Not that I remember, no, sir.

20         Q.    Do you remember speaking with anyone

21   about Mr. Schwark in that period of time?

22         A.    Nothing that I remember specific.

23         Q.    If another nurse testified that she

24   had spoken with you about Mr. Schwark every day from

25   March 5th until March 10th, 2014, would that comply

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 37

 1   with your recollection?

 2              MR. ZIPORIN:  Object to the form of

 3   the question.

 4              You can answer.

 5         A.   It's possible.  I don't recollect it,

 6   but it's possible.

 7         Q.   (By Mr. McNulty)  Okay.  You'd have

 8   no reason to disbelieve that testimony?

 9         A.   No.  I wouldn't argue with it, no.

10         Q.   Now, Mr. Schwark was transferred out

11   of the jail on March 10th, 2014.  Do you -- does

12   that comply with your recollection?

13         A.   I remember that, yes, sir.

14         Q.   And do you remember why he was

15   transferred out?

16         A.   What I do remember is that March 10th

17   was a Monday, and I went back with Sergeant Diavold

18   to see -- so I must have had conversations with the

19   nurses.  I just don't remember them specifically.

20              And I went back to see what was going

21   on, and quite possibly that was prompted because I

22   could see on camera the condition of his cell.

23              When we were back there, there was

24   food, paper, clothing, bedding.  Everything was in

25   disarray.

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 38

```
 1                    And having a conversation with
 2    Mr. Schwark was very difficult.  He was not lucid,
 3    he was not coherent, he was making no sense
 4    whatsoever.
 5                    So, at some point, the decision was
 6    made, probably in a collaborative way, that he
 7    needed to go to the hospital where treatment beyond
 8    our capabilities might be called for.
 9           Q.    And you said that there was a
10    collaborative decision made in this case?
11           A.    Yes.
12           Q.    And so that's different than normal,
13    because, previously, you said that you have no say
14    in whether someone's transferred out because of --
15           A.    Yes.
16           Q.    -- mental health or --
17           A.    Yes.
18           Q.    -- medical problems.
19           A.    But when I saw the condition there,
20    it's quite possible that I could have said, We gotta
21    do something.  What do you want to do?  I don't
22    recollect, but --
23           Q.    And did you speak with Mr. Schwark at
24    that point?
25           A.    Attempted to.
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 45

```
 1                    MR. ZIPORIN:  Sure.
 2                    (A recess was taken from 1:43 p.m. to
 3    1:50 p.m.)
 4            Q.   (By Mr. McNulty)  So, what does your
 5    tattoo mean?
 6            A.   This one?
 7            Q.   On the back of your head, yeah.
 8            A.   It's a second amendment tattoo.  At
 9    the Battle of Thermopylae, the Persian King told the
10    Spartan King, Lay down your weapons.  He
11    responded --
12            Q.   Come and get them.
13            A.   -- come and get them.
14            Q.   That's cool.  I respect that.  I have
15    the First Amendment tattooed on my left leg.
16            A.   Outstanding.
17            Q.   Yeah.  So we share something in
18    common here.
19            A.   Yes, sir.
20            Q.   So, turning to Exhibit 34, that says
21    for the nurse -- on the first page of Exhibit 34 if
22    you go down to the bottom, it says, "One of the
23    specific duties of the nurse is to coordinate with
24    jail supervisors regarding the scheduling and
25    transporting of inmates for medical care."
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 46

```
 1              A.    Okay.

 2                    Q.    Now, tell me, does that mean that in

 3       order to have an inmate transported, they have to

 4       coordinate with the law enforcement personnel at the

 5       jail?

 6              A.    Yes.

 7                    Q.    So, in order to get an inmate

 8       transferred out, they would need approval from a law

 9       enforcement personnel at the jail?

10              A.    Yes.

11                    Q.    Okay.  Now, when you saw Kyle Schwark

12       on March 10th, 2014, you said that he was suffering

13       from some serious withdrawal symptoms, is that right?

14              A.    That was my belief, yes, sir.

15                    Q.    And withdrawal is a pretty serious

16       medical problem, right?

17                    MR. ZIPORIN:  Object to the form and

18       foundation.

19                    MR. MICHALEK:  Same.

20              A.    Might be.

21                    Q.    (By Mr. McNulty)  In your

22       experience -- now, you had said he -- sorry.  Strike

23       that.

24                    You had said you had made a decision

25       to transfer Mr. Schwark out on March 10th, right, in
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 47

```
 1   collaboration with the nurses?
 2           A.   That's my belief, yes, sir.
 3           Q.   Okay.  Now, do you normally -- what
 4   normally prompts you to transfer people out of the
 5   jail?
 6           A.   Medical situations beyond our
 7   capabilities.
 8           Q.   So serious medical problems prompt
 9   that?
10           A.   Yes.
11           Q.   So is it safe to say that on March
12   the 10th, Kyle Schwark was suffering from some
13   serious medical problems?
14           A.   Seemed to be.
15           Q.   Now, after Mr. Schwark came back from
16   Denver Health, did you have any interactions with
17   him?
18           A.   Yes.  One that I remember.
19           Q.   And what happened in that
20   interaction?
21           A.   What I recollect was I walked past
22   the kitchen, and I saw Kyle Schwark working at the
23   dishwashing machine.  And I stopped in the doorway
24   and I said, Schwark, how you doing?  And he said
25   okay, or whatever he said.  And I said, You're
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 48

```
 1    looking good.  You're looking a lot better.  Looks

 2    like things are working out for you.  Outstanding.

 3    Have a nice day.

 4                And I was -- I was very impressed

 5    with the progress he had made, and I believe I

 6    complimented him on his sobriety.

 7            Q.    All right.  And is that the only

 8    other interaction that you've had with Mr. Schwark

 9    since then?

10            A.    I believe so.

11            Q.    Now, you've reviewed the logs about

12    the treatment of Mr. Schwark while he was in the

13    Park County Jail, is that right?

14            A.    The floor notes, yes, sir.

15            Q.    And do you think that the treatment

16    of Mr. Schwark was by the book at the Park County

17    Jail?

18            A.    Yes, sir, I think so.

19            Q.    So it complied with all the

20    practices, customs and policies of the Park County

21    Jail?

22                MR. ZIPORIN:  Object to form.

23                You can answer.

24            A.    I believe so.  We have been through

25    numerous -- I can't tell you how many, but numerous
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 49

 1   detoxes of offenders for numerous different

 2   substances.

 3                 Two weeks ago, we detoxed two off of

 4   heroin.  Before that -- the week before that, two

 5   weeks before that, was someone coming off of meth.

 6   We have done numerous alcohol, numerous everything.

 7   And our practice and habit generally has a good

 8   result.

 9           Q.   (By Mr. McNulty)  And so no one was

10   disciplined for their interactions with Mr. Schwark

11   during his two stays, were they?

12           A.   No.

13           Q.   And that's because everything was,

14   you know, by the book, right?

15           A.   Yes.

16           Q.   Now, what kind of training is

17   provided at the Park County Jail regarding mental

18   health issues?

19           A.   Who -- training for who?

20           Q.   For deputies or even for yourself.

21   What training do you go through?

22           A.   We have an annual suicidal offender

23   training.  We stress interpersonal communications.

24   Some staff -- and we have a very, very high turnover

25   of staff -- but some staff at various times have

Page 50

```
 1   been to -- I'm trying to think of what it is -- CIT

 2   training for dealing with mental health offenders,

 3   people on the street.  Crisis intervention program.

 4   I've had verbal de-escalation training.

 5                 But our job for deputies is custody,

 6   care and control.  So, it's security, not -- we are

 7   not a mental health facility.

 8                 In fact, to illustrate that, the Park

 9   County Jail has a contract to hold parole violators

10   through the Division of Adult Parole, and because of

11   the issues that came up, we have begun screening

12   parole violators and refusing any who have spent

13   time in St. Carlos, which is the Department of

14   Corrections' mental health unit.

15                 We are not a mental health facility.

16   We are a jail.

17                 As far as the mental health training

18   that registered nurses have, I have no knowledge of

19   that.

20        Q.   Do you provide any separate training

21   at Park County for the nurses outside of their

22   training just to become an RN?

23        A.   Just as far as security goes.

24                 And just to expand on that, most

25   nurses are caregivers, and they need to be trained
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 51

1    to say no.

2              Q.   Could you elaborate on that a little

3    bit?

4              A.   Some offenders are drug seekers.  Some

5    offenders have nothing else to do all day long but

6    come up with real or imagined ailments.  Nurses need

7    to be a little bit different in an incarceration

8    setting than in a hospital setting.

9              Q.   So, they need to be trained to --

10   when to not give inmates who are drug seeking what

11   they're looking for, right?

12             A.   How to do a better assessment, a

13   more thorough assessment.

14             Q.   And when to say no?

15             A.   Yes.

16             Q.   Is there any -- so, there's no

17   training above and beyond what a nurse would get

18   just to get her nursing degree provided by Park

19   County, right?

20             MR. ZIPORIN:  Object to the form and

21   foundation.

22             A.   I don't know.

23             Q.   (By Mr. McNulty)  Well, does anyone

24   provide training to nurses that you're aware of at

25   the jail?

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 59

1    health problems, could they be placed into

2    administrative segregation?

3              A.   The operative word being "danger"?

4              Q.   Sure.

5              A.   If they were a danger to themselves

6    or from other offenders, then, yes, protective

7    custody.

8              Q.   What if they weren't?  What if they

9    were just having some mental health issues, where

10   would they go?  Would they be placed in medical,

11   would they be placed in the general population,

12   would they be in --

13             A.   Oftentimes if it was just aberrant

14   behavior, and we have -- we have a lot of that, then

15   it would be lockdown in general population.

16             Q.   Is that when you lock them down for

17   23 hours a day in their cells, and then -- or is

18   that -- when you say "locked down" --

19             A.   Locked down, right.

20             Q.   -- does that mean that they're in

21   their cell for 23 hours a day?

22             A.   Yes.  And, oftentimes, we try to

23   reintegrate an offender back into general population

24   and do so in stages.

25                  So, being locked down in the cell allows

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 60

 1    them to interact through what we call the bean slot;

 2    the food tray opening.

 3                  And then they also get to go out in

 4    the day hall on their hour out when the other

 5    offenders are locked down.

 6                  MR. McNULTY:  Okay.  Those are the

 7    only questions I have.

 8                  MR. MICHALEK:  I just have a couple of

 9    questions.

10                       EXAMINATION

11    BY MR. MICHALEK:

12           Q.    I represent Dr. Fitting.

13           A.    Yes, sir.

14           Q.    It's nice to meet you.

15                  I just want to clarify.  During the

16    second incarceration, the records indicate that

17    Dr. Fitting did not have any more involvement with

18    Mr. Schwark's physician after March 5th when his

19    care was turned over to Dr. Cynthia Parker.  Do you

20    have any reason to disagree with that?

21           A.    No, sir.

22           Q.    Okay.  So, with regard to the

23    decision to transport him on March 10th to Denver

24    Health, you don't have any reason to believe that

25    Dr. Fitting was involved in that decision at that

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 61

 1   time, correct?

 2           A.   No, sir.

 3               MR. MICHALEK:  Okay.  Those are all

 4   the questions I have.

 5               MR. ZIPORIN:  I don't have any

 6   questions, and I can handle Muldoon's signature.

 7               MR. McNULTY:  No further questions

 8   for me either.

 9               COURT REPORTER:  Okay.  And are all

10   of you going to order the same order that you've

11   been ordering?

12               MR. McNULTY:  Yes.

13               MR. MICHALEK:  Yes.

14               MR. ZIPORIN:  Yes, please.

15               *   *   *   *   *   *   *

16               (WHEREUPON, the foregoing deposition was

17   concluded at the hour of 2:16 p.m.  Total time on

18   the record was 1 hour and 20 minutes.)

19

20

21

22

23

24

25

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 62

1          I, CAPTAIN DANIEL MULDOON, the deponent in

2     the above deposition, do hereby acknowledge that I have

3     read the foregoing transcript of my testimony, and

4     state under oath that it, together with any attached

5     Amendment to Deposition pages, constitutes my sworn

6     testimony.

7

       _____ I have made changes to my deposition
8
       _____ I have NOT made any changes to my deposition
9

10

11

12

                     _____
13                    CAPTAIN DANIEL MULDOON

14

15

16          Subscribed and sworn to before me

17     this _____ day of _____, 20_____.

18

19          My commission expires:

20                     _____.

21

                      _____
22                    NOTARY PUBLIC

23

24

25

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Captain Daniel Muldoon
August 21, 2017

Page 63

```
 1
 2                CERTIFICATE OF DEPOSITION OFFICER
 3
 4
 5                I, Karen J. Hathcock, do hereby certify
 6     that I am a Certified Merit Reporter, Registered
 7     Professional Reporter and Notary Public within and
 8     for the State of Colorado.
 9                The following statement was taken in
10     shorthand by me and was thereafter reduced to
11     typewritten form, and that the foregoing constitutes
12     a true and correct record.
13                I further certify that I am not related
14     to, employed by, nor of counsel for any of the
15     parties or attorneys herein, nor otherwise
16     interested in the result of the within action.
17                My commission expires:  July 8, 2018.
18
19
20          _____
                          Karen J. Hathcock
21                        Certified Merit Reporter
                          Registered Professional
22                        Reporter
                          Notary Public, State of
23                        Colorado
24
25
```