# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action Number 15-cv-02507-JLK

_____

VIDEOTAPE DEPOSITION OF:  KYLE JEFFERY SCHWARK
                          December 13, 2016

_____

KYLE JEFFERY SCHWARK,

Plaintiff,

v.

SHERIFF FRED WEGENER, in his official and individual
capacities; NURSE SUSAN CANTERBURY, in her individual
capacity; NURSE JERI SWANN, in her individual capacity;
NURSE CATHLENE PEARCE, in her individual capacity;
DOCTOR KATHERINE FITTING, in her individual capacity,

Defendants.

_____

        PURSUANT TO NOTICE, the deposition of KYLE
JEFFERY SCHWARK was taken on behalf of the Defendant
Dr. Fitting at 821 17th Street, Suite 500, Denver,
Colorado 80202, on December 13, 2016, at 9:26 a.m.,
before Rory L. Joyner, Certified Realtime Reporter,
Registered Professional Reporter, and Notary Public
within Colorado.

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

A P P E A R A N C E S

For the Plaintiff:

        ANDREW McNULTY, ESQ.
        Killmer, Lane & Newman, LLP
        1543 Champa Street
        Suite 400
        Denver, Colorado 80202


For the Defendant Dr. Fitting:

        STEVEN A. MICHALEK, ESQ.
        Childs McCune, LLC
        821 17th Street
        Suite 500
        Denver, Colorado 80202


For the Defendants Wegener, Canterbury, Swann and
Pearce:

        ERIC MICHAEL ZIPORIN, ESQ.
        Senter Goldfarb & Rice, LLC
        3900 East Mexico Avenue
        Suite 700
        Denver, Colorado 80210


Also Present:

        Walt Mathern, Videographer

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 127

13:42:05  1    medication.

13:42:06  2         Q.   Okay.  Do you know of any other jails that

13:42:12  3    allow inmates to have either narcotics or

13:42:15  4    benzodiazepines while they're incarcerated?

13:42:18  5         A.   Yes.

13:42:20  6         Q.   What other jails?

13:42:21  7         A.   Summit County.

13:42:22  8         Q.   Other than Summit County.

13:42:28  9         A.   Well, no.  I mean, I . . .

13:42:30 10         Q.   Do you understand why a jail would have a

13:42:34 11    policy not to allow inmates to have narcotics or

13:42:37 12    benzodiazepines while they're incarcerated?

13:42:48 13         A.   I can't think of any justifiable reason to

13:42:51 14    do that to someone, especially with the risks

13:42:59 15    associated with the abrupt stoppage of benzodiazepine.

13:43:05 16         Q.   When you got into the jail, in fact, you

13:43:15 17    were administered your Xanax and Suboxone within the

13:43:24 18    first 24 hours of you being there, correct?

13:43:27 19         A.   I don't think they got around to it in the

13:43:30 20    first 24 hours.

13:43:32 21         Q.   Okay.  Do you recall being administered

13:43:39 22    your Xanax and Suboxone on November 13?

13:43:47 23         A.   No.

13:43:47 24         Q.   Have you seen the jail medication

13:43:49 25    administration records related to being administered

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 130

13:46:28  1    administration of Suboxone on the 13th?

13:46:39  2         A.   At -- on the bottom of the --

13:46:41  3         Q.   On the top for Suboxone?

13:46:43  4         A.   Suboxone.  But the bottom of that column

13:46:47  5    there, the bottom of the 13th?

13:46:49  6         Q.   Correct.

13:46:51  7         A.   Yeah.  I see that.

13:46:56  8         Q.   Okay.  You would agree with me that there

13:46:58  9    is a check mark and initials on the 13th for you having

13:47:03 10    been administered Suboxone, correct?

13:47:05 11         A.   I will agree that I see it on this paper.

13:47:08 12         Q.   Okay.  So you would agree with me that if

13:47:09 13    this documentation was correct, you were administered

13:47:13 14    Suboxone on the 13th, correct?

13:47:20 15         A.   According to this, yes, that's what it

13:47:22 16    says.

13:47:23 17         Q.   Okay.  Do you have any documentation of or

13:47:25 18    record to demonstrate that you were not given Suboxone

13:47:31 19    on November 13?

13:47:38 20         A.   I don't know how I could produce such a --

13:47:40 21    such a thing.

13:47:41 22         Q.   Well, do you have any notes or memos or

13:47:45 23    any recorded recollection of not getting medication on

13:47:48 24    that date?

13:47:49 25         A.   Well, the simple fact that the whole time

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 131

13:47:51 1   I was in there, I was constantly requesting on the

13:47:56 2   intercom, I need to see a nurse; I haven't received my

13:48:02 3   medication.  Every time a guard would come by, I would

13:48:05 4   get in the line and wait to talk to him one on one.  I

13:48:09 5   kept getting told, We'll look into it.  And then it

13:48:15 6   would go to a shift change.  I would have to tell

13:48:18 7   another guard that it -- what was going on, again,

13:48:25 8   continuing to use the intercom in a pod where everyone

13:48:29 9   in there could hear everything that was transpiring,

13:48:32 10  having people tell me, you know, the more you push on

13:48:38 11  that, the longer it's going to take for them to get

13:48:40 12  this to you.  So . . .

13:48:42 13          Q.   So my question was, do you have any

13:48:44 14  **written documentation to indicate that you did not get**

13:48:47 15  **your Suboxone on the 13th?**

13:48:48 16          A.   No.  By that point I was pretty much

13:48:51 17  falling apart physically and mentally.

13:48:54 18          Q.   **Okay.**

13:48:54 19          A.   And not taking notes.

13:48:59 20          Q.   **Then as we go to the 14th, do you see the**

13:49:04 21  **next day?**

13:49:04 22          A.   Um-hum.

13:49:06 23          Q.   **Do you see initials there where it says**

13:49:08 24  **CP?**

13:49:10 25          A.   I do.

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 133

13:50:45 1    **on that day, correct?**

13:50:47 2           A.   So that's saying that they gave me two

13:50:51 3    tablets at one time?  That's not even my prescription.

13:50:57 4           Q.   **It says 2 milligrams, A.M., and there is a**

13:51:01 5    **check mark in that column, correct?**

13:51:03 6           A.   Yeah.  Well, my prescription is not -- I

13:51:06 7    don't take two at a time.

13:51:08 8           Q.   **Okay.  You take them as needed; is that**

13:51:10 9    **right?**

13:51:11 10          A.   As needed, yes.

13:51:12 11          Q.   **And you take between one and four tablets**

13:51:15 12   **per day, correct?**

13:51:17 13          A.   That's correct.

13:51:17 14          Q.   **Okay.  Would you agree with me that if**

13:51:27 15   **this documentation is correct, then you received Xanax**

13:51:31 16   **on the 13th and received Xanax on the 14th, correct?**

13:51:38 17          A.   If this document is correct, yes.  That's

13:51:43 18   what it states.

13:51:44 19          Q.   **Okay.  And do you have any documentation**

13:51:48 20   **or record to indicate that you were not given these**

13:51:52 21   **medications as indicated in the record?**

13:51:56 22          A.   I think the best evidence I have to that

13:52:01 23   effect is a pod full of people hearing me plead for the

13:52:08 24   medication that I was supposed to receive up and to the

13:52:12 25   point where I seized.

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 134

13:52:13  1          Q.    And you're talking about the other inmates

13:52:15  2    that were there?

13:52:16  3          A.    Yeah.

13:52:16  4          Q.    And you don't recall the names of any of

13:52:18  5    the other inmates, correct?

13:52:20  6          A.    No.  Really, from the point I got in

13:52:23  7    there, I was a physical mess when I got in there, and

13:52:27  8    then not receiving medication that was intended for

13:52:30  9    anxiety and -- yeah, panic attacks and basically --

13:52:38 10    yeah.  I wasn't making friends with people at that

13:52:42 11    time, getting names.  I was trying to make it in to

13:52:49 12    see -- I was pleading with this jail to get someone to

13:52:55 13    take me to the nurse, bring me the medication, do

13:52:58 14    something for me, somebody address my issue.  I'm

13:53:04 15    begging you people.

13:53:05 16          Q.    Now, did you send any note or request --

13:53:07 17          A.    I put in kites, yes.  I did put in kites.

13:53:13 18    They never made it out.  I could see in the box that

13:53:16 19    they were still in there by the time I was gone,

13:53:21 20    so . . .

13:53:21 21          Q.    Okay.  Have you seen a copy of the kites

13:53:24 22    and the requests that were made from F Pod while you

13:53:28 23    were there?

13:53:28 24          A.    I'm not sure if I had them in a stack of

13:53:34 25    papers from that incident or not.  So . . .

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

13:57:00  1    Q.   Would you agree with me that from all the

13:57:02  2  documents that have been produced in this case, there

13:57:05  3  is no request for medications to be brought to you and

13:57:11  4  administered to you on November 13 or 14?

13:57:17  5    A.   Not that you've produced, but I can't say

13:57:24  6  a hundred percent sure.  But I know I put -- I think I

13:57:29  7  put more than one kite to the effect of the medical

13:57:33  8  issue.

13:57:34  9    Q.   Well, would you agree with me that if you

13:57:39 10  had a concern that there were medications that you were

13:57:44 11  to receive and you had not received them that you would

13:57:50 12  have made a request for those, correct?

13:57:53 13    A.   Yes.  And like I said, I do believe I made

13:57:56 14  more than one request.

13:57:57 15    Q.   Okay.  And you would agree, at least from

13:57:59 16  all the documents we have in this case, there is no

13:58:01 17  written request for any medications on the 13th or 14th

13:58:05 18  from you, correct?

13:58:07 19    A.   Not that has been furnished to me.

13:58:10 20    Q.   Okay.

13:58:11 21    A.   That's quite clear.

13:58:12 22    Q.   And would you also agree that that would

13:58:13 23  be consistent with the medication log sheets indicating

13:58:16 24  that, in fact, you were administered your medications

13:58:19 25  as prescribed on the 13th and 14th, and that's why

Case 1:15-cv-02507-JLK  Document 82-4  Filed 10/19/17  USDC Colorado  Page 10 of 22
**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 138

13:58:23  1    **there's no written request for medications?**

13:58:25  2         A.   No.   This is -- like I said, you're

13:58:27  3    allowed one topic per kite.   This is not the one

13:58:31  4    pertaining to me requesting medication.   This is

13:58:34  5    requesting underwear, socks.

13:58:38  6         Q.   **And at least as far as you're aware, there**

13:58:41  7    **is no documentation of any request for medication on**

13:58:44  8    **these two dates from any of the documents we've seen,**

13:58:47  9    **correct?**

13:58:48 10         A.   There should be.

13:58:49 11         Q.   **Well, my question was different.   You**

13:58:51 12    **would agree that you haven't seen any request for**

13:58:55 13    **medication on either the 13th or 14th, correct?**

13:58:59 14         A.   No, I have not.   No.

13:59:01 15         Q.   **Okay.   Now, on the morning of the 14th, do**

13:59:15 16    **you recall how you were feeling at that time?**

13:59:24 17         A.   The morning of the 14th?

13:59:29 18         Q.   **Correct.**

13:59:30 19         A.   I was in pretty bad shape.

13:59:32 20         Q.   **Okay.   I think you said from the time that**

13:59:33 21    **you went to the jail, you were anxious, not feeling**

13:59:38 22    **well, and having a hard time, correct?**

13:59:41 23         A.   Yes.   Having a terrible time.

13:59:44 24         Q.   **Okay.**

13:59:46 25         A.   I was very sick.

Page 139

13:59:50  1       Q.   I think you said you were sick to your

13:59:52  2  stomach; is that right?

13:59:53  3       A.   Yes.

13:59:53  4       Q.   What other difficulties were you having?

13:59:55  5       A.   Loss of appetite, just general discomfort,

14:00:04  6  anxiety, just out-of-control fear, scared to death.  I

14:00:16  7  knew it was coming.

14:00:17  8       Q.   Difficult concentrating?

14:00:19  9       A.   Oh, yeah.  I had one objective, and that

14:00:23 10  was get the medication before things went bad.  And I

14:00:28 11  let them know.  I let everyone in there know that,

14:00:32 12  anyone that came to that door, anyone that was at the

14:00:34 13  other end of that intercom, I repeatedly, for the time

14:00:39 14  I was there until I seized, was tracking them down and

14:00:43 15  trying to get the point across, this is serious and

14:00:48 16  it's going to be an issue, and I knew it was coming on.

14:00:53 17  I could tell by my physical state that it wasn't going

14:00:58 18  well.

14:00:58 19       Q.   Were you shaking?

14:01:01 20       A.   Yeah.  I was weak.  I was shaking.  I

14:01:03 21  couldn't eat.  I was --

14:01:04 22       Q.   Were you sweaty?

14:01:06 23       A.   I was chilled, hot, cold, withdrawal-type

14:01:11 24  effects, basically.

14:01:14 25       Q.   So you felt like you were going through

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 140

14:01:16  1   **withdrawal?**

14:01:17  2         A.   I was going through withdrawal.  There's

14:01:19  3   no ifs.

14:01:27  4         **Q.   Do you recall seeing a nurse on the**

14:01:29  5   **morning of the 14th?**

14:01:31  6         A.   No, I do not.  And if I did, that just

14:01:37  7   attests to my mental state of decline.

14:01:43  8         **Q.   That, because of your condition, you have**

14:01:44  9   **a hard time remembering things during that time?**

14:01:47 10         A.   Yeah.  I was falling apart.  I was

14:01:51 11   physically falling apart to the point where I was

14:01:54 12   leading up to a seizure.  So I was not doing well.

14:01:58 13         **Q.   Were you in your cot that morning in**

14:02:00 14   **F Pod?**

14:02:01 15         A.   I don't know.  I spent a lot of time just

14:02:03 16   sitting as close to the door as I could so when anyone

14:02:08 17   came by I wouldn't miss it.  I didn't want to doze off

14:02:12 18   for a few minutes and miss someone.  I was being as

14:02:16 19   diligent as I possibly could to get people's attention

14:02:19 20   to let everyone know and continuously get on that

14:02:23 21   intercom and express the need for care.

14:02:29 22         **Q.   So I'll hand you a piece of paper, and**

14:02:32 23   **we'll mark this as Exhibit 4.  And if you could just**

14:02:39 24   **draw diagram for me of what F Pod looked like where**

14:02:43 25   **your cot was and where the door was, that will help me**

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 143

14:08:19  1    **correct?**

14:08:20  2           A.    Yeah.

14:08:20  3           **Q.    And you've written "bunks" on that bed?**

14:08:23  4           A.    Right.  And those were the toilets right

14:08:25  5    there.  There was two toilets in there.  I remember

14:08:29  6    that.

14:08:29  7           **Q.    And then you said there was a door that**

14:08:31  8    **came into F Pod, and that was on the first floor over**

14:08:34  9    **on the right side of your diagram; is that correct?**

14:08:38 10           A.    Yeah.  Like I said, my direction on which

14:08:41 11    when you came down the stairs, where it was, but the

14:08:45 12    door where they would come in.  I think there was a

14:08:49 13    phone -- there was a phone there, and somewhere there

14:08:52 14    was a box for the kites and stuff.  This is where the

14:08:56 15    guards would come.  So I spent most of my time close to

14:09:04 16    the door as I could, just seated, so as not to miss

14:09:09 17    anyone that came to the door or -- and to frequently

14:09:16 18    use the intercom and --

14:09:19 19           **Q.    Okay.**

14:09:20 20           A.    Yeah.  I mean, literally just kept -- I

14:09:27 21    made the best effort I could to get someone to address

14:09:29 22    my issue.

14:09:30 23           **Q.    Okay.**

14:09:31 24           A.    And again, these guards would come, tell

14:09:34 25    me, I'm going to go look into it, and it would become a

Case 1:15-cv-02507-JLK   Document 82-4   Filed 10/19/17   USDC Colorado   Page 14 of 22
**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 144

14:09:37  1    shift change.  And then I would start over again with

14:09:42  2    another shift, telling someone who had no idea what I

14:09:45  3    was talking about what's going on and the relevance of

14:09:47  4    it.  And all the time slipping away, physically and

14:09:52  5    mentally.

14:09:52  6         Q.   **Now, I take it -- I'm sorry.  Now, I take**

14:09:55  7    **it you took your medications as prescribed on the 12th**

14:09:58  8    **before you went into the jail, correct?**

14:10:01  9         A.   Yeah.  Now, I had a hard time keeping

14:10:03 10    things down, so I don't know if I got an appropriate

14:10:06 11    dose in, but --

14:10:07 12         Q.   **But you at least took them as ordered,**

14:10:08 13    **right?**

14:10:09 14         A.   Yes, I had been taking them.

14:10:12 15         Q.   **Okay.  And then the 14th, you said you**

14:10:14 16    **were sitting on the seats by the tables closest to the**

14:10:18 17    **door, correct?**

14:10:19 18         A.   Um-hum.

14:10:19 19         Q.   **Is that "yes"?**

14:10:21 20         A.   Yes.

14:10:21 21         Q.   **Okay.  And then do you recall what**

14:10:25 22    **happened on the 14th related to your seizure?  Tell me**

14:10:32 23    **what you remember.**

14:10:36 24         A.   One of the last things I remember was a

14:10:39 25    female guard coming there.  And I waited until everyone

Case 1:15-cv-02507-JLK   Document 82-4   Filed 10/19/17   USDC Colorado   Page 15 of 22
**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 147

14:13:45  1   **testimony you don't recall seeing any of the nurses**

14:13:48  2   **from the time that you got there until midday on the**

14:13:51  3   **14th, correct?**

14:13:52  4            A.    Yeah.   I'm not sure when the first chance

14:13:55  5   I saw it, but it wasn't -- I don't know.   I kept -- I

14:14:00  6   just kept asking to get -- to please take me to medical

14:14:05  7   or have someone medical come in.   Someone help me.

14:14:10  8   Please help me.

14:14:11  9            Q.    **And it's your testimony you didn't see**

14:14:12 10   **anybody from medical until after midday on the 14th,**

14:14:17 11   **correct?**

14:14:17 12            A.    You know, I cannot recall the exact times

14:14:20 13   or anything.   I can just honestly tell you, from the

14:14:23 14   time I was in there to the time I had the first

14:14:29 15   seizure, I was just focused on getting someone to

14:14:33 16   address me.

14:14:34 17            Q.    **Yeah.   That's what I'm trying to get at.**

14:14:36 18            A.    Yeah.

14:14:36 19            Q.    **What you're telling me is, from the time**

14:14:38 20   **you got in there until the time you had the first**

14:14:42 21   **seizure, you didn't see anybody from medical and nobody**

14:14:45 22   **from medical came to see you, right?**

14:14:47 23            A.    Right.   Yeah.

14:14:48 24            Q.    **Okay.   And the last thing you recall**

14:14:51 25   **before the seizure is seeing this officer, who was a**

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 150

14:23:06  1    on the record.  Are you ready to proceed?

14:23:09  2            A.   Yes.

14:23:09  3            Q.   So you recall coming to in the nurse's

14:23:12  4    area and seeing one of the nurses, and I think you said

14:23:17  5    you thought it was Nurse Canterbury; is that right?

14:23:20  6            A.   Yeah.

14:23:21  7            Q.   Okay.  And what do you recall happening

14:23:23  8    next?

14:23:39  9            A.   I don't really have a clear recollection

14:23:41 10    of what happened.  More from what I really had read had

14:23:45 11    happened with bits and pieces.

14:23:47 12            Q.   Just tell me what you recall, and if you

14:23:49 13    don't recall things, that's fine.

14:23:51 14            A.   I do recall, like I said, I had made it to

14:23:56 15    the medical office.

14:23:59 16            Q.   Do you remember any --

14:24:00 17            A.   I guess it took a seizure to get there,

14:24:02 18    so . . .

14:24:03 19            Q.   Do you remember anything that happened in

14:24:04 20    the medical office while you were there?

14:24:08 21            A.   No, not really, except I was on a gurney,

14:24:16 22    and . . .

14:24:20 23            Q.   Do you remember anybody else that was

14:24:22 24    there other than the nurse?

14:24:26 25            A.   There may have been another nurse in

Case 1:15-cv-02507-JLK   Document 82-4   Filed 10/19/17   USDC Colorado   Page 17 of 22
**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 177

15:01:01  1   you consuming during that time?

15:01:06  2            A.    There was no formula.   Like I said, I was

15:01:13  3   in a horrible depression with knowing I had to go back

15:01:17  4   in the care of these -- or lack thereof -- care of

15:01:20  5   these people that almost let me die.

15:01:25  6            Q.    And were you consuming any other

15:01:27  7   substances other than alcohol?

15:01:32  8            A.    We've -- no.

15:01:34  9            Q.    Okay.

15:01:35 10            A.    I mean, beyond what we already discussed.

15:01:39 11            Q.    And so I just want to talk about that

15:01:42 12   immediately period before February 25 when you were

15:01:44 13   taken back.   Sounds like you were consuming alcohol.

15:01:48 14   Were you using marijuana then?

15:01:50 15            A.    Yeah.

15:01:50 16            Q.    Okay.   Anything else you were using then?

15:01:56 17            A.    No.

15:01:58 18            Q.    Okay.   So then when you got back to jail,

15:02:00 19   the plan was to taper down your Xanax starting with

15:02:03 20   three tablets a day for three days, and then two

15:02:10 21   tablets a day for three days, and then one tablet a day

15:02:14 22   for three days.   Did you become aware of that?

15:02:17 23            A.    No.   That was not expressed to me.   I was

15:02:20 24   thrown into isolation.   I was -- I was arrested.   There

15:02:26 25   was a furlough taped to my door which clearly states

Case 1:15-cv-02507-JLK   Document 82-4   Filed 10/19/17   USDC Colorado   Page 18 of 22
**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 178

15:02:29  1    the terms of that furlough.  Basically said from their

15:02:34  2    boss that you are not to put your hands on me, that I'm

15:02:38  3    on a medical furlough.  It's very clearly worded.  It's

15:02:41  4    very brief.  It says, Until you are cleared by your

15:02:48  5    doctor to come back, then you're under furlough.

15:02:53  6        Q.    **Okay.  Did you have an understanding that**

15:02:57  7    **the Vail-Summit Orthopaedics doctors had indicated that**

15:03:01  8    **your fracture had healed and they released you from**

15:03:04  9    **their care?**

15:03:05 10        A.    No.  That wasn't -- that wasn't the case.

15:03:08 11        Q.    **Nobody told you that?**

15:03:09 12        A.    I was still working with my doctor.

15:03:15 13        Q.    **Okay.  Dr. Singer?**

15:03:16 14        A.    And that is the doctor that is mentioned

15:03:18 15    in the furlough.  Okay.  He's the one that had to okay

15:03:21 16    it.  It's very simply worded.

15:03:26 17        Q.    **Okay.**

15:03:27 18        A.    Okay.

15:03:29 19        Q.    **So did you become aware when you were back**

15:03:32 20    **at the jail that there was a plan to taper your**

15:03:35 21    **medications?**

15:03:37 22        A.    No.  It would have been very enlightening

15:03:40 23    had someone shared that information with me.  Then I

15:03:43 24    could have had an understanding of what was going on.

15:03:46 25        Q.    **When did you learn about that?**

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 228

16:23:59    1          Q.    Would you agree with me at the Park County

16:24:02    2    jail that, in order to get your medication, you line up

16:24:04    3    and the deputy distributes those, correct?

16:24:13    4          A.    Yeah, that's how they did it.

16:24:15    5          Q.    And you testified earlier that on November

16:24:18    6    13, 2014 and on November 14, 2014, you got in line a

16:24:24    7    bunch of times and told the guard that you needed your

16:24:29    8    medication, correct?

16:24:30    9          A.    Correct.

16:24:32   10          Q.    How many times during that two-day period

16:24:34   11    did you get in line and request your medication?

16:24:36   12          A.    Any time there was any presence of

16:24:40   13    authority there.  It wasn't necessarily medical -- it

16:24:44   14    wasn't necessarily their medical rounds that -- they

16:24:47   15    were just popping in for their -- their rounds.  There

16:24:52   16    wasn't necessarily giving medication.  No matter what

16:24:56   17    reason someone came in there, I made sure I spoke to

16:24:59   18    them and pleaded with them about the need.

16:25:04   19          Q.    How many times over that two-day period

16:25:06   20    did you get in line and speak to a deputy and request

16:25:10   21    medication?

16:25:10   22          A.    As many times someone was in there, unless

16:25:13   23    I happened to fall asleep for some period of time.

16:25:16   24          Q.    Do you know how frequently meds were being

16:25:18   25    passed during that time frame?  Once a day, twice a

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 244

16:47:33  1    of that off your cell phone so we can attach that as

16:47:35  2    Deposition --

16:47:37  3                    THE DEPONENT:  I've got a paper document

16:47:38  4    of it.  I just have taken a picture.

16:47:40  5                    MR. MICHALEK:  Okay.  We can try to do it

16:47:42  6    while you're here.  If that doesn't work, then we can

16:47:47  7    give it to your lawyer, but I want to attach that as

16:47:49  8    Deposition Exhibit 6 to be sure we have a record.

16:47:54  9                    THE DEPONENT:  So you want me to pull it

16:47:55 10    up on my phone?

16:47:57 11                    MR. MICHALEK:  Yeah, if you can, and then

16:47:58 12    we'll see if we can either have you email it or print

16:48:00 13    it for you.

16:48:01 14                    THE VIDEOGRAPHER:  We're going off the

16:48:01 15    record.  This concludes today's portion of the

16:48:03 16    videotape deposition of Kyle Jeffery Schwark.  The

16:48:07 17    total number of media used is 4.  The time now is 4:48

16:48:08 18    p.m.

16:49:05 19                    (Deposition Exhibit 6 was marked.)

16:49:05 20                    WHEREUPON, the within proceedings were

16:49:05 21    concluded at the approximate hour of 4:48 p.m. on the

10:39:05 22    13th day of December, 2016.

10:39:05 23                    *       *       *       *       *

         24

         25

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 245

I, KYLE JEFFERY SCHWARK, do hereby certify
that I have read the above and foregoing deposition and
that the same is a true and accurate transcription of
my testimony, except for attached amendments, if any.

Amendments attached   (  ) Yes   (  ) No




_____
KYLE JEFFERY SCHWARK




The signature above of KYLE JEFFERY
SCHWARK was subscribed and sworn to before me in the
county of _____, state
of_____, this _____ day of
_____, 2017.




_____
Notary Public
My commission expires_____




Schwark, Kyle Jeffery 12/13/16 (rlj)

**Hunter + Geist, Inc.**
**scheduling@huntergeist.com * 303-832-5966 * 800-525-8490**

**KYLE JEFFERY SCHWARK - 12/13/2016**
**Kyle Jeffery Schwark v. Sheriff Fred Wegener, et al.**

Page 246

                    REPORTER'S CERTIFICATE

STATE OF COLORADO          )
                           )  Ss.
CITY AND COUNTY OF DENVER  )


            I, RORY L. JOYNER, Certified Realtime
Reporter, Registered Professional Reporter and Notary
Public ID 20114002249, State of Colorado, do hereby
certify that previous to the commencement of the
examination, the said KYLE JEFFERY SCHWARK was duly
sworn by me to testify to the truth in relation to the
matters in controversy between the parties hereto; that
the said deposition was taken in machine shorthand by
me at the time and place aforesaid and was thereafter
reduced to typewritten form; that the foregoing is a
true transcript of the questions asked, testimony
given, and proceedings had.

            I further certify that I am not employed
by, related to, nor counsel for any of the parties
herein, nor otherwise interested in the outcome of this

litigation.



            IN WITNESS WHEREOF, I have affixed my

signature this 27th day of December, 2016.



            My commission expires January 11, 2019.




    X    Reading and Signing was requested.



         Reading and Signing was waived.



         Reading and Signing is not required.

**Hunter + Geist, Inc.**
**scheduling@huntergeist.com * 303-832-5966 * 800-525-8490**