# EXHIBIT 6

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Jeri Swann, R.N.
March 13, 2017

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
 2
        Civil Action No. 15-CV-2507-JLK
 3      _____

 4      KYLE JEFFERY SCHWARK,

 5           Plaintiff,

 6      vs.

 7      SHERIFF FRED WEGENER, in his official and individual
        capacities; NURSE SUSAN CANTERBURY, in her individual
 8      capacity; NURSE JERI SWANN, in her individual capacity;
        NURSE CATHLENE PEARCE, in her individual capacity;
 9      DOCTOR KATHERINE FITTING, in her individual capacity,

10           Defendants.

11      _____
                   DEPOSITION OF JERI SWANN, R.N.
12
                        March 13, 2017
13      _____

14

15

16

17

18

19

20

21

22

23

24

25
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Jeri Swann, R.N.
March 13, 2017

Page 2

```
 1    APPEARANCES:

 2    ON BEHALF OF THE PLAINTIFF:
              DAVID D. LANE, ESQ.
 3            DUNIA DICKEY, ESQ.
              Killmer, Lane & Newman, LLP
 4            1543 Champa Street, Suite 400
              Denver, Colorado  80202
 5            Phone:  303-571-1000
              Email:  dlane@kln-law.com
 6            Email:  ddickey@kln-law.com

 7    ON BEHALF OF DEFENDANTS SHERIFF FRED WEGENER,
      NURSE SUSAN CANTERBURY, NURSE JERI SWANN, AND
 8    NURSE CATHLENE PEARCE:
              ERIC M. ZIPORIN, ESQ.
 9            Senter Goldfarb & Rice, LLC
              3900 East Mexico Avenue, Suite 700
10            Denver, Colorado  80210
              Phone:  303-320-0509
11            Email:  eziporin@sgrllc.com

12    ON BEHALF OF DEFENDANT KATHERINE FITTING, M.D.:
              STEVEN A. MICHALEK, ESQ.
13            Childs McCune, LLC
              821 17th Street, Suite 500
14            Denver, Colorado  80202
              Phone:  303-296-7300
15            Email:  smichalek@childsmccune.com

16    ALSO PRESENT:
              Kyle Jeffery Schwark
17            Susan Canterbury

18

19

20

21

22

23

24

25
```

Page 3

 1            PURSUANT TO WRITTEN NOTICE, and the appropriate

 2      rules of civil procedure, the deposition of JERI SWANN,

 3      R.N., called for examination by the Plaintiff, was taken

 4      at the Law Offices of Killmer, Lane & Newman, LLP, 1543

 5      Champa Street, Suite 400, Denver, Colorado, commencing at

 6      1:00 p.m. on March 13, 2017, before Wendy Evangelista, a

 7      Notary Public and Registered Professional Reporter in and

 8      for the State of Colorado.

 9                          I N D E X

10      EXAMINATION:                                      PAGE

11      By Mr. Lane                                      4, 40
        By Mr. Michalek                                 38, 45
12
        PREVIOUSLY MARKED EXHIBITS:                       PAGE
13
        2          Park County Jail Medication Sheet,       25
14                 November 2013

15      5          Park County Jail Medication Sheet,       18
                   February and March 2014
16
        22         Product Information for Alprazolam       20
17                 Extended Release - Oral; Bates
                   Schwark 000058
18
        24         Medical Request, 11/14/13; Bates         23
19                 Schwark 000092

20      28         Email Correspondence; Bates Schwark      33
                   000098, 000099, and 000089
21

22

23

24

25

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Jeri Swann, R.N.
March 13, 2017

Page 8

 1    with the hospital.  It was part of --

 2            Q.     Is there a name?

 3            A.     Arkansas -- it was just the nursing home

 4    wing on the -- from the hospital.

 5            Q.     Okay.

 6            A.     Arkansas Valley Regional Medical Center.

 7            Q.     Okay.

 8            A.     And then the Life Care Centers of America

 9    owns a nursing home, Columbine Manor --

10            Q.     Okay.

11            A.     -- in Salida.

12            Q.     Have you ever been disciplined by any

13    employers?

14            A.     I got written up once.

15            Q.     For what?

16            A.     There was a medic -- well, an order to

17    start an IV on an elderly person.  We could not get the

18    medication that particular day that the order came in.  I

19    did not call the doctor immediately to clarify what the

20    order would then be.

21            Q.     Tell me what you observed with Kyle

22    Schwark on the day that he had his seizure.

23            A.     I was in the office and heard the call

24    that someone had had a seizure.  A deputy -- and I don't

25    remember who -- came and got the wheelchair.  They

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Jeri Swann, R.N.
March 13, 2017

Page 9

1   brought him to the medical office in the wheelchair.

2         Q.      Okay.  Were you in the medical office?

3         A.      I was in the office.

4         Q.      You were there when he arrived?

5         A.      I was there when they brought him from

6   Frank Pod.

7         Q.      Okay.  So what happened then?

8         A.      He remained in the chair.  I'm unable to

9   determine in my memory exactly how long he was in the

10  wheelchair.  It was until he was feeling well enough to

11  communicate and, you know, felt well enough to stand up

12  and get moving around again, eat something.

13        Q.      Okay.  So then what happened?

14        A.      He just remained in the medical office.

15  You know, he really didn't have anywhere else to be.  It

16  was just -- we were just keeping an eye on him since he'd

17  had the first seizure.  You just want to see how somebody

18  is responding.

19        Q.      So then what happened?

20        A.      He had some lunch.  I was busy.  He was

21  kind of up and about, leaning against the table, sat down

22  on the table.  It's an exam table.  It's the padded table

23  with the paper on it.  He talked a little bit.  He was

24  very -- he has a very high opinion of Dr. Singer, and we

25  were discussing some of what he'd gone through to get

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Jeri Swann, R.N.
March 13, 2017

Page 17

1    an order that is in conflict with Dr. Fitting, which of

2    those two orders are you required to follow?

3         A.    Dr. Fitting.

4         Q.    Okay.  Had you heard anything about this

5    Court-ordered med stuff?

6         A.    I don't specifically recall hearing that

7    it was a Court-ordered something until later.  It was

8    March.

9         Q.    And what did you hear?

10         A.    We got the letter in the mail that was --

11    was more specific that stated that we needed to give him

12    medications.

13         Q.    So who told you that the Court had somehow

14    ordered this?

15         A.    Well, we actually finally got a copy in

16    March of the letter from the Court, the judge, that said

17    we need to give Kyle his medications.

18         Q.    Okay.  And were you -- did you believe

19    that the medications you were required to give him were

20    the medications that Dr. Fitting had ordered or the

21    medications that Dr. Singer had ordered?

22         A.    We are always required to follow our

23    provider at the jail.  That's the provider for the jail.

24         Q.    So Dr. Fitting --

25         A.    Dr. Fitting's order.

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Jeri Swann, R.N.
March 13, 2017

Page 18

```
 1        Q.      -- makes the decision?

 2        A.      Always.

 3        Q.      What Dr. Fitting says, that's what you do?

 4        A.      Uh-huh.

 5        Q.      Is that a "yes"?

 6        A.      Yes.

 7        Q.      All right.  So in March, what did you

 8  observe about Kyle?

 9        A.      I don't recall observing Kyle.  I

10  don't recall going to the seg cell or seeing him -- or

11  isolation.  I don't know if he was in isolation or

12  segregation.  I do not recall which one he was in.

13              MR. LANE:  Okay.  Is this an exhibit yet?

14              MS. DICKEY:  Yes.

15              MR. LANE:  Let's go off the record for a

16  second.

17              (Discussion off the record.)

18              MR. LANE:  Back on the record.

19        Q.      (By Mr. Lane)  Okay.  Let's look at

20  Exhibit 5 -- yeah, Exhibit 5.

21              MR. MICHALEK:  What is the Bates?

22              MR. LANE:  It has the Bates stamp Park

23  County A 0286.

24        Q.      (By Mr. Lane)  Do you see that exhibit?

25        A.      Uh-huh.
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Jeri Swann, R.N.
March 13, 2017

Page 30

1        Q.     Okay.

2        A.     It might be 2 1/2, 3.

3        Q.     All right.  But if Mr. Schwark was

4 standing up and leaning against the table, then his head

5 would have been maybe 5 feet off the ground, right?

6        A.     His head would have been, yes.

7        Q.     And that's ultimately what was bleeding,

8 right?

9        A.     That's ultimately what sustained the

10 injury.

11        Q.     Did you actually see him fall?

12        A.     When I heard the sound and looked over, he

13 was already on the ground.

14        Q.     All right.  Now, you know there's been an

15 issue raised in this case about was he lying on the table

16 or was he leaning on the table, right?

17        A.     Uh-huh.

18        Q.     Is that a "yes"?

19        A.     That's correct.

20        Q.     Did you ever see him lying on the table?

21        A.     I don't recall him lying on the table.  I

22 don't recall him lying down.  I remember him being just

23 up and about.

24        Q.     He writes on one, two, three, four,

25 five -- on the sixth line, he writes, Patient has a

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Jeri Swann, R.N.
March 13, 2017

Page 31

1    history of DTs and seizures; however, due to his mental

2    state he denied past history of medical issues.

3                      Do you see that?

4          A.     I see that.

5          Q.     Did you ever hear Kyle Schwark saying he

6    had a history of DTs and seizures?

7          A.     I don't recall Kyle ever saying that.  I

8    don't know.

9          Q.     Who wrote this note?

10         A.     Deputy Fenner.

11         Q.     And do you have any idea where Deputy

12   Fenner got that information?

13         A.     I don't, except he -- I don't.  I would be

14   guessing.  I don't know.

15         Q.     What's your guess?

16         A.     That perhaps he had -- because of being a

17   deputy, had had maybe more conversation with Mr. Schwark

18   than I did.

19         Q.     Okay.  You understand that part of this

20   case involves his second stay at the jail, right?

21         A.     Uh-huh.

22         Q.     Is that a "yes"?

23         A.     Yes.

24         Q.     And what's your understanding of what was

25   going on then?

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Jeri Swann, R.N.
March 13, 2017

Page 47

1    discontinued or switched to Librium until the 14th, until

2    after the patient had the seizure, right?

3              A.     Correct.

4                   MR. MICHALEK:  Okay.  Thanks.

5                   MR. LANE:  Nothing further.

6                   THE REPORTER:  Mr. Ziporin, same order as

7    before, and you'll handle signature?

8                   MR. ZIPORIN:  Yes.

9                   THE REPORTER:  Mr. Michalek, same order as

10   before?

11                  MR. MICHALEK:  Yes.

12                  THE REPORTER:  Mr. Lane, same order?

13                  MR. LANE:  Yes.

14                  THE REPORTER:  Do you need it expedited?

15                  MR. LANE:  No.

16                  THE REPORTER:  Okay.  Thank you.

17                 * * * * * * * * * * * *

18                  (WHEREUPON, the foregoing deposition was

19   concluded at the hour of 2:03 p.m.  Total time on the

20   record was 59 minutes.)

21

22

23

24

25

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Jeri Swann, R.N.
March 13, 2017

Page 48

```
 1              I, JERI SWANN, R.N., the deponent in the

 2   above deposition, do acknowledge that I have read the

 3   foregoing transcript of my testimony, and state under

 4   oath that it, together with any attached Statement of

 5   Change pages, constitutes my sworn statement.

 6

 7
     _____  I have made changes to my deposition
 8
     _____  I have NOT made any changes to my deposition
 9

10

11              _____
                JERI SWANN, R.N.
12

13

14

15   Subscribed and sworn to before me this  _____ day

16   of  _____.

17

18              My commission expires: _____

19

20              _____
                Notary Public
21

22

23

24

25
```

Kyle Jeffery Schwark vs.
Sheriff Fred Wegener, et al.

Deposition of Jeri Swann, R.N.
March 13, 2017

Page 49

```
 1                     REPORTER'S CERTIFICATE

 2                     I, Wendy Evangelista, a Registered

 3    Professional Reporter and Notary Public within and for

 4    the State of Colorado, commissioned to administer oaths,

 5    do hereby certify that previous to the commencement of

 6    the examination, the witness was duly sworn by me to

 7    testify to the truth in relation to matters in

 8    controversy between the said parties; that the said

 9    deposition was taken in stenotype by me at the time and

10    place aforesaid and was thereafter reduced to typewritten

11    form by me; and that the foregoing is a true and correct

12    transcript of my stenotype notes thereof; that I am not

13    an attorney nor counsel nor in any way connected with any

14    attorney or counsel for any of the parties to said action

15    nor otherwise interested in the outcome of this action.

16                     My commission expires:  August 30, 2020.

17

18

19                     _____

20                     Wendy Evangelista
                       Registered Professional Reporter
                       Notary Public, State of Colorado
21

22

23

24

25
```