# EXHIBIT 3

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                      FOR THE DISTRICT OF COLORADO

 3      Civil Action No. 15-CV-02507-JLK

 4      _____

 5
        KYLE JEFFERY SCHWARK,
 6
                  Plaintiff,
 7
        vs.
 8
        SHERIFF FRED WEGENER, in his official and individual
 9      capacities, NURSE SUSAN CANTERBURY, in her individual
        capacity, NURSE JERI SWANN, in her individual capacity,
10      NURSE CATHLENE PEARCE, in her individual capacity,
        DOCTOR KATHERINE FITTING, in her individual capacity,
11
                  Defendants.
12      _____

13             DEPOSITION OF JONATHAN WILLIAM SINGER, D.O.

14                           December 21, 2016

15      _____

16

17

18

19

20

21

22

23

24

25
```

```
                                                                    Page 2
 1    APPEARANCES:

 2    ON BEHALF OF THE PLAINTIFF:
              DUNIA DICKEY, ESQ.
 3            Killmer, Lane & Newman, LLP
              1543 Champa Street, Suite 400
 4            Denver, Colorado  80202
              Phone:  303-571-1000
 5            Email:  ddickey@kln-law.com


 6
      ON BEHALF OF THE DEFENDANTS, SHERIFF FRED WEGENER,
 7    NURSE SUSAN CANTERBURY, NURSE JERI SWANN, and NURSE CATHLENE
      PEARCE:
 8            ERIC M. ZIPORIN, ESQ.
              Senter, Goldfarb & Rice, LLC
 9            3900 East Mexico Avenue, Suite 700
              Denver, Colorado 80201
10            Phone:  303-320-0509
              Email:  eziporin@sgrllc.com
11

12    ON BEHALF OF THE DEFENDANT, DOCTOR KATHERINE FITTING:
              STEVEN A. MICHALEK, ESQ.
13            Childs McCune, LLC
              821 17th Street, Suite 500
14            Denver, Colorado  80202
              Phone:  303-296-7300
15            Email:  smichalek@childsmccune.com


16
      Also Present:  Kyle Jeffery Schwark
17

18

19

20

21

22

23

24

25
```

Case 1:15-cv-02507-JLK   Document 83-3   Filed 10/19/17   USDC Colorado   Page 4 of 17

| Kyle Jeffery Schwark vs. | Deposition of Jonathan William Singer, D.O. |
|---|---|
| Sheriff Fred Wegener, et al. | December 21, 2016 |

Page 64

```
 1   That's why I prescribed it.
 2        Q.   But did he ever show any negative impacts that you
 3   thought were attributed to those two medications being
 4   prescribed that led you to either alter the dosage or do
 5   something else?
 6        A.   No.
 7        Q.   A person who discontinues the use of Suboxone
 8   doesn't run the risk of seizures, do they?
 9        A.   Of Suboxone?  It's a slight risk but small.
10        Q.   A person who discontinues the use of Suboxone,
11   they don't run the risk of psychosis, do they?
12        A.   Small risk.
13        Q.   How small?
14        A.   I don't know.
15        Q.   Have you ever seen in any of your patients a
16   seizure, either attributed to -- or a psychosis attributed
17   to the discontinuation of Suboxone?
18        A.   Psychosis.  Can you be more specific?
19        Q.   Having a psychotic event.
20        A.   Such as?
21        Q.   Hallucinations, irrational behavior, wiping feces
22   on the wall.
23        A.   I've not seen it, but it's possible.
24        Q.   Is it medically probable or is it only possible?
25        A.   I don't know what medically probable means.
```

Case 1:15-cv-02507-JLK   Document 83-3   Filed 10/19/17   USDC Colorado   Page 5 of 17

Kyle Jeffery Schwark vs.                                    Deposition of Jonathan William Singer, D.O.
Sheriff Fred Wegener, et al.                                                      December 21, 2016

Page 65

```
 1      Q.   Have you ever seen it in any of your patients?
 2      A.   Not that I can recall.
 3      Q.   If a patient discontinues the use of Xanax, that
 4   doesn't cause seizures, does it?
 5      A.   It can.
 6      Q.   Is it possible or is it medically probable?
 7      A.   I don't know what that means, medically probable.
 8      Q.   Have you ever seen any of your patients have a
 9   seizure based on the discontinuation of Xanax or a similar
10   form of medication?
11      A.   Benzodiazapines, yes.
12      Q.   Which patients?
13      A.   The names of the patients?
14      Q.   Well, how many patients?
15      A.   Two.
16      Q.   Was Mr. Schwark one of those patients?
17      A.   I think that was what happened in his
18   incarceration, yes.
19      Q.   So you believe that discontinuation of his Xanax
20   is what led to his seizure at the Park County Jail?
21      A.   I don't know what it was attributed to.
22      Q.   All right.  You don't have an opinion along those
23   lines?
24      A.   I believe one or the other or both of the
25   medications, sudden withdrawal created the problem.
```

Kyle Jeffery Schwark vs.                                          Deposition of Jonathan William Singer, D.O.
Sheriff Fred Wegener, et al.                                                              December 21, 2016

Page 66

```
 1      Q.   Okay.  So your opinion -- let me ask you this:
 2   Have you been asked to express an opinion?
 3      A.   Not yet.
 4      Q.   Okay.  But you have an opinion as to what caused
 5   his seizure at the Park County Jail?
 6      A.   Yes.
 7      Q.   And it's your opinion that the discontinuation of
 8   the use of either the Suboxone or the Xanax or a combination
 9   is what caused his seizures at the Park County Jail?
10      A.   I believe so.
11      Q.   Why do you believe that?
12      A.   It was timely.
13      Q.   So it's a temporal conclusion.
14      A.   Correct.
15      Q.   Are there any other reasons that you believe that?
16      A.   No.  That was -- that's the main reason.
17      Q.   Alcohol withdrawal can result in seizures;
18   correct?
19      A.   Correct.
20      Q.   And do you know whether or not -- well, we will
21   come back to that.
22           And, again, you haven't reviewed the jail records
23   related to Mr. Schwark's incarceration at the Park County
24   Jail, either his inmate records or his medical records?
25      A.   What time frame are we talking about?
```

Case 1:15-cv-02507-JLK   Document 83-3   Filed 10/19/17   USDC Colorado   Page 7 of 17

Kyle Jeffery Schwark vs.                                    Deposition of Jonathan William Singer, D.O.
Sheriff Fred Wegener, et al.                                                       December 21, 2016

Page 80

```
 1      Q.   Yes.
 2      A.   Correct.
 3      Q.   But then he comes back in February for a refill;
 4   correct?
 5      A.   Yes.
 6      Q.   Now, do you know why you didn't refill the
 7   Suboxone in November of 2013?
 8      A.   I do not recall.
 9      Q.   Had he asked you for a refill in November of 2013,
10   would you have provided it?
11      A.   Yes.
12      Q.   Now, back to the November -- I'm sorry --
13   February 6, 2014, record, which is, again, document 448, you
14   did prescribe his Suboxone at that time.
15      A.   Yes.
16      Q.   And you, under Plan, told him to stop drinking
17   alcohol?
18      A.   Yes.
19      Q.   And then if you look, I'm sorry, back to
20   Subjective you note, Not getting regular counseling as
21   instructed.  Was that counseling that you had instructed or
22   was that Court-ordered?
23      A.   I don't recall.
24      Q.   And that he was using alcohol episodically at that
25   time; correct?
```

Case 1:15-cv-02507-JLK   Document 83-3   Filed 10/19/17   USDC Colorado   Page 8 of 17

Kyle Jeffery Schwark vs.                                    Deposition of Jonathan William Singer, D.O.
Sheriff Fred Wegener, et al.                                                        December 21, 2016

Page 96

```
 1      Q.   Exhibit 19 is a series of documents that appear to
 2   be prescriptions that you've made for Mr. Schwark.  Is that
 3   accurate?
 4           (Exhibit Number 19 was marked.)
 5      A.   Yes.
 6      Q.   And on page 1 of Exhibit 19, it appears that on
 7   February 21, 2014, you prescribed him with a medication;
 8   correct?
 9      A.   Correct.
10      Q.   And I'm going to let you tell me how that's
11   pronounced.
12      A.   Chlordiazepoxide.  That's Librium.
13      Q.   And you specifically indicate here that you are
14   prescribing it for alcohol withdrawal; correct?
15      A.   Correct.
16      Q.   Why did you prescribe him Librium on February 21,
17   2014?
18      A.   That in my note he was using a half a quart of
19   vodka a day and we were trying to stop his alcohol use.  So
20   I gave him that to prevent alcohol withdrawal.
21      Q.   And did you also know at that time that he was
22   going into jail, back to Park County Jail, four days later?
23      A.   I don't recall.
24      Q.   Would that make sense that you would have
25   prescribed the Librium knowing that he was going to jail
```

Case 1:15-cv-02507-JLK   Document 83-3   Filed 10/19/17   USDC Colorado   Page 9 of 17

Kyle Jeffery Schwark vs.                                    Deposition of Jonathan William Singer, D.O.
Sheriff Fred Wegener, et al.                                                       December 21, 2016
Page 103

```
 1   prescription from me so that they would give him his
 2   medications in jail.
 3        Q.   Did you ever attempt to contact anybody at the
 4   jail to find out whether or not your instructions were
 5   followed?
 6        A.   I believe I did.
 7        Q.   When did you do that?
 8        A.   It was probably right around the time this letter
 9   was sent, that's why I sent the letter.
10        Q.   I'm interpreting your answer that you contacted to
11   make sure they got your letter to ensure he was given his
12   medicine.  My question is a bit different.
13             Did you ever -- after his stay in November of
14   2013, did you ever contact the jail to find out if your
15   instructions for prescriptions were followed?
16        A.   I believe I did contact the jail after I learned
17   that he was not given his medication or was not going to be
18   given his medication.
19        Q.   And do you know when that was?
20        A.   Right around this time.  I remember there was
21   discussion about that.  I can't remember who I discussed it
22   with, but I think it was one of the nurses or her assistant
23   at that time.  And I --
24        Q.   Do you know the name of the person you spoke to?
25        A.   I do not.
```

Case 1:15-cv-02507-JLK   Document 83-3   Filed 10/19/17   USDC Colorado   Page 10 of 17

Kyle Jeffery Schwark vs.                                    Deposition of Jonathan William Singer, D.O.
Sheriff Fred Wegener, et al.                                                       December 21, 2016

Page 104

```
 1      Q.   Do you recall what was said during that
 2   conversation?
 3      A.   It was something to the effect that I insisted
 4   that he be given his medications as written and that my
 5   instructions be followed, and I think they told me that that
 6   was completely up to the doctor of the jail to make that
 7   determination.
 8      Q.   Okay.  And did that seem like a --
 9      A.   It seemed unreasonable to me.
10      Q.   Okay.  Did you voice your objection?
11      A.   I believe so, yes.
12      Q.   And what was the response to your objection?
13      A.   It could have been -- it could have been a later
14   conversation.
15      Q.   Well, let me help you out maybe.
16      A.   Okay.
17      Q.   Because Mr. Schwark was incarcerated in November
18   of 2013 for only a few days, he had his injury and then
19   didn't go back to jail until February of 2014.
20           So do you think it's more likely that you had this
21   conversation with the jail prior to the February 2014
22   incarceration because Mr. Schwark had told you they took
23   away his medications when he was there the last time.
24      A.   I think that is what happened.
25      Q.   Okay.  Do your records reflect that conversation
```

Case 1:15-cv-02507-JLK   Document 83-3   Filed 10/19/17   USDC Colorado   Page 11 of 17

| Kyle Jeffery Schwark vs. | Deposition of Jonathan William Singer, D.O. |
|---|---|
| Sheriff Fred Wegener, et al. | December 21, 2016 |

Page 105

```
 1   with the jail?
 2       A.   No.
 3       Q.   And so all you remember is you spoke to, you think
 4   it was either a nurse or a nurse's assistant telling them
 5   they needed to follow your orders and the response was that
 6   will be up to the doctor.
 7       A.   Yes.
 8       Q.   And you told them you didn't like that answer but
 9   you don't remember what was said after that.
10       A.   I think she said she would have the doctor call
11   me.
12       Q.   Did the doctor ever call you?
13       A.   Not that I can remember.
14       Q.   Did you ever follow up with either that nurse or a
15   different nurse?
16       A.   No, I don't think I called more than once.
17       Q.   Did you ever think to follow up with the doctor?
18       A.   I may have called the doctor and left a message
19   for her to call me.
20       Q.   Would that phone call be reflected in your file?
21       A.   No.
22       Q.   Do you know which doctor you may have called and
23   left a message?
24       A.   Give me some names and I will tell you if I
25   remember.
```

Kyle Jeffery Schwark vs.                                                Deposition of Jonathan William Singer, D.O.
Sheriff Fred Wegener, et al.                                                                    December 21, 2016

Page 106

 1      Q.   Do you know if there was more than one doctor at
 2   the jail?
 3      A.   I do not know.
 4      Q.   Now, you're saying you may have done these things.
 5      A.   Correct.
 6      Q.   All right.  So sitting here today, you don't have
 7   a specific recollection of calling a nurse and having a
 8   conversation with the nurse.
 9      A.   I do have a recollection.
10      Q.   Okay.  But you don't have a recollection as to
11   whether or not you ever followed up with the doctor.
12      A.   I don't believe I ever spoke with the doctor
13   directly.
14      Q.   And you don't specifically recall leaving a
15   voicemail for a doctor.
16      A.   I do recall asking them to have the doctor call me
17   if there was going to be a problem.
18      Q.   Okay.  And that would have been in that initial
19   phone call.
20      A.   Yes.
21      Q.   But you don't have a recollection thereafter of
22   then placing a phone call to the jail doctor and either
23   speaking to the doctor or leaving a voicemail for the
24   doctor.
25      A.   I don't think I did, no.

Case 1:15-cv-02507-JLK   Document 83-3   Filed 10/19/17   USDC Colorado   Page 13 of 17

Kyle Jeffery Schwark vs.                                      Deposition of Jonathan William Singer, D.O.
Sheriff Fred Wegener, et al.                                                         December 21, 2016

Page 109

```
 1     A.   I don't believe I did.
 2     Q.   And at no other time did you talk to Dr. Fitting
 3  about medical care he received while he was in the jail;
 4  correct?
 5     A.   Yes.  Correct.
 6     Q.   Okay.  And you've told us that in the past you may
 7  have treated some patients who became incarcerated; correct?
 8     A.   Yes.
 9     Q.   But you've never been a physician for a jail
10  system; correct?
11     A.   A jail doc, no.
12     Q.   As far as what, you know, practices or policies
13  that jail docs utilize in their care of patients in the
14  jail, you're not specifically familiar with those, I take
15  it.
16     A.   Correct.
17     Q.   And as far as testifying specifically about what a
18  jail doctor would do or not do under any specific
19  circumstances, I take it, because you don't have that
20  background and experience, you couldn't testify about those
21  issues; correct?
22     A.   Well, as far as general medical care and
23  appropriate medical care, I could testify.
24     Q.   Sure.
25     A.   It doesn't change when you practice in the jail.
```

Case 1:15-cv-02507-JLK   Document 83-3   Filed 10/19/17   USDC Colorado   Page 14 of 17

| Kyle Jeffery Schwark vs. | Deposition of Jonathan William Singer, D.O. |
|---|---|
| Sheriff Fred Wegener, et al. | December 21, 2016 |

Page 110

```
 1   Medical care should be the same.
 2        Q.   No.  My question was more, I understand you can
 3   testify as a primary care doctor; correct?
 4        A.   Yes.
 5        Q.   Because that's what you do.
 6        A.   Yes.
 7        Q.   But as far as testifying specifically about what a
 8   jail doctor would do in specific circumstances, you haven't
 9   done that; correct?
10        A.   Correct.
11        Q.   So you couldn't specifically say what a jail
12   doctor would do or not do given their policies or procedures
13   or practices; correct?
14        A.   Again, they would have to uphold general standards
15   of medical practice.  So I could say that, yes.
16        Q.   But as far as what impact the jail practices or
17   policies and procedures would have, you couldn't comment
18   about those issues.
19        A.   Well, I don't think jail policy would be written
20   to contradict good medical care.
21        Q.   No.  My question is what may or may not be allowed
22   in a jail or what might be substituted or not substituted or
23   different protocols, you couldn't talk about those issues;
24   correct?
25        A.   Specifically, no.
```

Case 1:15-cv-02507-JLK   Document 83-3   Filed 10/19/17   USDC Colorado   Page 15 of 17

| | |
|---|---|
| **Kyle Jeffery Schwark vs.** | **Deposition of Jonathan William Singer, D.O.** |
| **Sheriff Fred Wegener, et al.** | **December 21, 2016** |

Page 131

```
 1   But those are all the questions I have right now.  Thank
 2   you.
 3              THE DEPONENT:  Thank you.
 4              MS. DICKEY:  Thank you.
 5              MR. ZIPORIN:  Thank you.
 6                    *  *  *  *  *  *  *
 7              WHEREUPON, the foregoing deposition was concluded
 8   at the hour of 4:36 p.m.  Total time on the record was
 9   3 hours and 1 minute.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Case 1:15-cv-02507-JLK   Document 83-3   Filed 10/19/17   USDC Colorado   Page 16 of 17

| Kyle Jeffery Schwark vs. | Deposition of Jonathan William Singer, D.O. |
| --- | --- |
| Sheriff Fred Wegener, et al. | December 21, 2016 |

Page 132

```
 1                I, JONATHAN WILLIAM SINGER, D.O., the deponent

 2   in the above deposition, do acknowledge that I have read the

 3   foregoing transcript of my testimony, and state under oath

 4   that it, together with any attached Statement of Changes

 5   pages, constitutes my sworn testimony.

 6

 7

 8   _____  I have made changes to my deposition

 9

10   _____  I have NOT made any changes to my deposition

11

12
                     _____
13                          JONATHAN WILLIAM SINGER, D.O.

14

15   Subscribed and sworn to before me this _____ day

16   of _____, 2017.

17         My commission expires:_____.

18

19

20              _____
                          Notary Public
21

22

23

24

25
```

Case 1:15-cv-02507-JLK   Document 83-3   Filed 10/19/17   USDC Colorado   Page 17 of 17

| Kyle Jeffery Schwark vs. | Deposition of Jonathan William Singer, D.O. |
|---|---|
| Sheriff Fred Wegener, et al. | December 21, 2016 |

Page 133

```
 1                  CERTIFICATE OF COURT REPORTER

 2              I, DEANNA BAYSINGER, a Registered Professional

 3   Reporter and Notary Public within and for the State of

 4   Colorado, commissioned to administer oaths, do hereby

 5   certify that previous to the commencement of the

 6   examination, the witness was duly sworn by me to testify the

 7   truth in relation to matters in controversy between the said

 8   parties; that the said deposition was taken in stenotype by

 9   me at the time and place aforesaid and was thereafter

10   reduced to typewritten form by me; and that the foregoing is

11   a true and correct transcript of my stenotype notes thereof.

12              That I am not an attorney nor counsel nor in

13   any way connected with any attorney or counsel for any of

14   the parties to said action nor otherwise interested in the

15   outcome of this action.

16              My commission expires:  November 8, 2018.

17

18
                             _____
19                           DEANNA BAYSINGER
                             Registered Professional Reporter
20                           Notary Public, State of Colorado

21

22

23

24

25
```