IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02507-JLK

KYLE JEFFERY SCHWARK,

     Plaintiff,

v.

SHERIFF FRED WEGENER, in his official capacity,
NURSE JERI SWANN, in her individual capacity,
DOCTOR KATHERINE FITTING, in her individual capacity, and
CAPTAIN DANIEL MULDOON, in his individual capacity,

     Defendants.

---

## PARK COUNTY DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

---

Park County Defendants, **SHERIFF FRED WEGENER**, in his official capacity, **NURSE JERI SWANN**, and **CAPTAIN DANIEL MULDOON**,[1] through their attorneys **ERIC M. ZIPORIN** and **SUSAN E. McNULTY** of the law firm **SENTER GOLDFARB & RICE, LLC**, hereby submit the following Reply in Support of their Motion for Summary Judgment.

## I.    <u>INTRODUCTION</u>

With the stipulated voluntary dismissal of Nurse Susan Canterbury and Sheriff Fred Wegener, in his individual capacity, the issues in this case have been significantly streamlined. At the time of filing Park County Defendants' Motion for Summary Judgment, facts were material that no longer impact the disposition of this case. Currently, the following Park County Defendants

---

[1] Upon receiving Stipulations of Voluntary Dismissal, this Court has previously dismissed with prejudice Defendants Nurse Cathlene Pearce, [Doc. 68], Nurse Susan Canterbury, and Sheriff Fred Wegener, in his individual capacity. *See* [Doc. 84].

remain as parties to this action: (1) Nurse Jeri Swann, in her individual capacity; (2) Captain Daniel Muldoon, in his individual capacity; and (3) Sheriff Fred Wegener, in his official capacity.

Plaintiff's Response to Park County Defendants' Motion for Summary Judgment attempts to survive dismissal at the summary judgment stage by conflating the conduct of Park County Jail personnel in hopes of confusing the issues. As a reminder, Nurse Jeri Swann was present in the Medical Unit on November 13, 2013 when Schwark had a seizure for the second time that day. Plaintiff argues that Nurse Swann's conduct in failing to place physical restraints on Schwark while he was in Medical amounted to deliberate indifference of his serious medical needs. Plaintiff's Eighth Amendment claim against Captain Daniel Muldoon concerns Schwark's transport to the hospital on March 10, 2014, which Schwark contends was intentionally delayed by the Captain. Plaintiff's claim against Sheriff Fred Wegener, in his official capacity, is for Park County Jail's alleged failure to train as well as various illegal customs and practices. By lumping the Defendants' conduct together, Plaintiff endeavors to distract this Court from the fatal flaws of the individual claims asserted. Plaintiff's intent to distract from the real issues is further illustrated by the fact that his Response dedicates four pages of the Argument section to establishing Schwark suffered from a serious medical need. However, Park County Defendants have not argued that Schwark's medical needs were not sufficiently serious.

Plaintiff also attempts to manufacture disputes of material fact by mischaracterizing the evidence and pointing to "factual" allegations wholly unsupported by the record. Courts are required to view facts and draw reasonable inferences in the light most favorable to the party opposing a summary judgment motion, only when there is a genuine dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 1775 (2007); *Riggans v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)

(generally accept facts as the plaintiff alleges them). As will be shown in the following section, the evidence of record does not support Plaintiff's narrative concerning his incarceration at Park County Jail, and his disputes related to the Statement of Undisputed Facts in Defendants' Motion for Summary Judgment are anything but genuine. Contrary to Plaintiff's assertion, this case can be decided on limited facts, all of which have been accurately cited in Park County Defendants' Motion and clearly support summary judgment.

## II.   REPLY CONCERNING UNDISPUTED MATERIAL FACTS

For every fact within Park County Defendants' Motion, Plaintiff presents no evidence which truly disputes the facts as stated or contradicts the testimony cited. Plaintiffs' lengthy responses to the factual paragraphs do not raise disputes because, in response to a motion for summary judgment, Plaintiff must cite to evidence in the record that actually contradicts material facts. A party opposing summary judgment "may not merely rely on allegations or denials in its own pleadings; rather, its response must—by affidavits or otherwise provided in the rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Because at the summary judgment stage, parties are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record. *See Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). Plaintiff is unable to cite any evidence to contradict these facts and to contradict the supporting evidence cited by Park County Defendants. Instead, Plaintiff attempts to create disputes by mischaracterizing the evidence, citing "factual" allegations wholly unsupported by the record, and making improper legal arguments. Plaintiff admits without qualification the facts set forth in paragraphs 2, 3, 9, 11, 13, 14, 16, 20, 21, 26, 27, 30, 32, 35, 36, 37, 41, 42, 43, 45, 46, 47, 48, 50, and 54 of Defendants' Statement of Undisputed Material Facts ("SUMF"). [Doc. 82 at 4- 9]. As

articulated below, while Plaintiff denies the remaining facts, the evidence establishes that they are not in dispute.

1.      Plaintiff's qualified admission does not dispute this fact as stated by Defendant. Moreover, the assertion that Captain Muldoon "has final decisionmaking authority as to the treatment of individual inmates" is not supported by the evidence cited in the Response. Plaintiff glosses over a critical distinction made by Captain Muldoon regarding his decisionmaking authority in the Jail. In response to being asked what categories of decisions he is the final decision maker for, Captain Muldoon stated "I respond to grievances. I can make decisions about criminal charges or in-house charges. I make decisions about housing. How we are going to manage the offenders. *But if we are going to talk about medical decisions, I am not the ultimate decisionmaker.*" [*Deposition of Captain Muldoon,* Doc. 82-2 at 6-7 (emphasis added)].

4.      None of the evidence relied on by Plaintiff disputes this fact. Policy J-121-N explicitly states: "Inmates and detainees arrive at this facility … sometimes with medications and pills that present a challenge to the safe, secure and orderly operation of a detention facility. The Medical Director of the Park County Jail will be responsible for making the assessment of the medical needs of the individuals incarcerated in the Park County Jail. The decisions and recommendations of the Medical Director will be final and will supersede medical decisions that were made at other facilities or by the inmate's personal physician." [*Park County Jail Policy J-121-N Decisions Regarding Pharmaceuticals and Medical Marijuana*, Doc. 74-2 at 1-2]. Moreover, Plaintiff's Response admits that nurses do not have authority to independently prescribe or modify medications for inmates—they must have an order from the Jail's Medical Director or Mental Health Consultant. [*See Response to Movants' Statement of Material Facts ¶16*, Doc. 82

at 8]. Logically, a nurse must contact the Medical Director to obtain orders when an inmate arrives at the facility with prohibited prescription medications.

5.      Plaintiff attempts to avoid having to cite to the record by couching his dispute of this fact as a qualified admission. However, Plaintiff's qualification contradicts the fact that Dr. Fitting considers the inmate's medical need for the particular medication when deciding whether an inmate should be allowed to continue to take certain medications while incarcerated. As such, Plaintiff should have—but failed to—cite to the evidence of record, which demonstrates this dispute is not genuine. Also, none of the additional explanation provided by Plaintiff is relevant to the disposition of claims asserted against the remaining Park County Defendants.

6.      Plaintiff does not dispute this fact. Instead, Plaintiff tries to improperly incorporate legal argument as evidenced by the following introduction given to the additional information: "Deny as to the significance of Park County Jail Policy K-121-N 'Decisions Regarding Pharmaceuticals and Medical Marijuana' to the extent that ...." Additionally, in making these legal arguments, Plaintiff cherry-picked excerpts from the deposition testimonies of Sheriff Fred Wegener and Nurse Cathlene Pearce related to court orders in the jail setting. The evidence of record clearly demonstrates that Park County Jail nurses do not receive training on the distinction between medications that have been court-ordered versus doctor-ordered because the Courts have never ordered Park County Jail to give a particular medication to an inmate in the past. [*See Deposition of Sheriff Fred Wegener* attached hereto as **Exhibit N**, at 22:5-12 ("**Q. Well, what's the policy and procedure at the jail? If a judge orders opioids at the jail, what is the protocol at the jail for they are supposed to do?** A. Again, all the judge is ordering is treatment. We don't – I mean, as far as the prescriptions or the medications themselves, that all has to be worked out

5

by my medical staff."); *Deposition of Captain Daniel Muldoon* attached hereto as **Exhibit O**, at

29:9-21 ("**Q. Okay. You don't remember whether [the Judge] did or did not [order you to**

**give Mr. Schwark his medications as prescribed], or do you remember if he did or not?** A.

The judges don't tell us what to do in the jail. **Q. So the judge can't order you to do anything**

**within the jail. It's up to you guys to determine what kind of treatment you give the inmates**

**and whether they get their medication or not, things like that?** … A. The judges do not tell us

what to do in the jail. We make that very specific.")]. Rather, these Orders have always been

directed personally at the inmates to take their medications while incarcerated. [*See Deposition of*

*Nurse Cathlene Pearce* attached hereto as **Exhibit P**, at 12:8-19 ("**Q. Now, had you ever heard**

**of an inmate at the Park County jail being on Court-ordered medications?** A. Lots of people

are required to take their medications, and the Court tells them that they have to."); *id.* at 14:18-

15:23 ("**Q. Have you ever seen a doctor overrule a judge in terms of, I'm not – the Court has**

**ordered this med, but I'm changing it; I'm making it that med?** A. It's different when you go

to jail. **Q. That's not my question. My question is: Have you ever heard of a guard or a nurse**

**or anybody in the jail overruling a Court order when the Court says, You will take Drug X,**

**Y, and Z, where the doctor then says, No, I'm not doing that?** … A. No. I have never seen a

nurse or a deputy change any medication. **Q. What about a doctor? If a Court orders a certain**

**med, have you ever seen a doctor change the med?** A. Yeah. … After they consult with the

other doctor. And when they're on a specific regimen in the jail system, there's not – we're not

just going to give everything that's out there. **Q. If a judge orders you to give everything that's**

**out there, are you telling me you're not going to give everything that's out there?** A. If the

doctor tells me to, I will.")]. Additionally, in arguing that "the Judge's order ultimately trumps Jail

policy, Plaintiff cited to Sheriff Wegener's response to an extreme hypothetical posed by Plaintiff's counsel about Court orders. [*See Wegener Depo.*, **Exhibit N**, at 39:2-40:19 ("**Q. So you do let narcotics into the jail under some circumstances, right?** A. Yes. **Q. And who makes the decision as to whether or not there is an extreme requirement that would allow a narcotic into the jail?** A. Medical – the medical doctor in charge of the facility. **Q. So if a judge, a state – a mere state district court judge, not a big, strapping federal judge, a little, tiny district court judge in Park County says, 'I order a narcotic drug be taken to that jail, and this is an extreme circumstance,' and Dr. Fitting says, 'This isn't so extreme,' what happens to the judge's order? … It's a hypothetical. I understand.** A. You know, I'm probably going back to my same answer. I mean, the judge and I will talk about why he considers that to be extreme. **Q. Right. And if you lose the argument, what happens?** A. If I lose the argument – **Q. The judge won't back down. The judge says, No. Listen, I had a hearing, the doctor testified, I'm saying this is extreme, do it?** A. It's definitely a hypothetical. **Q. Yeah.** A. The judge – I just don't think the judge would do that… I mean, I've known the judges for a lot of years. **Q. Let's say we've got a substitute judge who is just a complete hammerhead and won't listen to reason and says, Look, I'm ordering that this narcotic be given to this patient, period, the end, do it, what do you do?** … A. Depending on the drug … move him to a facility that allows it.")].

7.      Plaintiff does not dispute this fact. Rather, he relies on legal arguments used to address SUMF 6, which we have previously demonstrated have no merit and are improperly included in this section. Additionally, Plaintiff cites no evidence of record to support his contention that there is an actual "factual dispute as to whether certain medications may or do exists for which there is no suitable substitute." [Doc. 82 at 5].

8.      Plaintiff does not deny that Park County Jail Policy K-121-N states the Jail has a procedure for inmates to appeal medical decisions. Instead, he argues that the appellate procedure is not sufficiently detailed in the policy, so "[i]t is unknown whether such a practice existed as a practical matter." However, Captain Muldoon's Affidavit provides a detailed description of how this policy has been implemented within the Jail: "4. Deputies are also trained on how to handle inmate complaints about medication. An inmate also has the option to fill out an Inmate Request Form (i.e., kite) about his medical concerns and place it in the request box. Every day, the deputies pick up forms placed in the box and sort them in the Jail's Control Room. The deputies then deliver the forms to the appropriate department. The Jail uses triplicate forms for this process, in which a copy of the request is provided to the inmate, the department, and the inmate's file. Deputies are also instructed to record complaints received about medications into an inmate's Floor Notes for that day. They can also notify an inmate in person about an inmate complaint concerning medical treatment." [*See Muldoon Aff.*, Doc. 74-3 at 2]. Additionally, although Plaintiff cites Nurse Canterbury's deposition testimony to support his position that Schwark made "adamant verbal please on November 13th" to receive his medications, [Doc. 82 at 6], Plaintiff fails to acknowledge that these verbal pleas occurred while Nurse Canterbury dispensed his prescribed medication. [*See Deposition of Nurse Susan Canterbury*, Doc. 82-5 ("**Q. Okay. So what did he say?** A. I took him one of his own Xanax at that time. And he was very – very adamant that he needed his Suboxone and his Xanax... **Q. Okay. And did you ask him, hey, Kyle, how many of these benzos do you take in a day?** A. I – possibly. **Q. Do you remember what his answer was?** A. No… He – well, all I know is that he was very adamant that he needed to continue taking his benzo. **Q. Okay. And what did you tell him?** A. I told him, okay. I gave him even a Suboxone. The label of the box

said one-half to one – they are little films in a foil packet. Well, the instructions on the internet and on – in an of my research said that you don't cut open a package and take – you know, you can't store a half a slip.")]. Moreover, when read in context, the Response's pin-cites to Schwark's deposition testimony actually demonstrate that Plaintiff cannot point to any corroborating evidence—whether it be witness accounts or documentation—to support the alleged unanswered verbal pleas, and he cannot provide any explanation as to why all of the documentation from November 2013 indicates that Schwark received all of his prescribed medications. [*See* Doc. 82 at 6 (citing *Deposition of Kyle Schwark*, 130:25-131:12, 133:22-25, 134:6-15, 139:9-18, 140:15-21, 143:15-144:5, 147:5-8, 147:13-16, 228:10-23)].

10.     Plaintiff does not dispute this fact as stated by Defendants and, in fact, admits that "Muldoon's duties include ensuring safety and order at the Park County Jail, supervising detention deputies and overseeing their training." Additionally, when Nurse Canterbury's deposition transcript is viewed as a whole, it is clear that her statement concerned Captain Muldoon's authority related to organizing the transport of inmates to and from Park County Jail rather than his authority to determine whether someone's medical condition warrants hospitalization. [*See Deposition of Nurse Susan Canterbury* attached as **Exhibit Q**, 81:15-20 ("**Q. And Captain Muldoon didn't do anything about it until the 10th?** … A. It's a little hard just to grab somebody and haul them off to a psychiatric ward."); *id.* at 132:23-133:16 ("**Q. All right. Now, if a decision is made at the jail that somebody needs some inpatient psychiatric care, is it your understanding that the jail first has to make contact with the facility to find out if there's availability for that patient?** A. Yes. Yes. We have to make sure there's a bed, that they are able to take the patient… Q. Have there been circumstances where the jail has been told that**

**there's simply no room for a patient?** A. Yes. That's a common problem. **Q. And in terms of who would be the individual making contact with the inpatient facility, is that something handled by the nursing staff or the administration at the jail?** A. It would be the administration."). As the last sentence begins with "[a]s a legal matter," it is plainly legal argument and need not be considered by this Court in determining the existence of disputed material fact.

12.     Plaintiff does not dispute this fact as stated by Defendant, and, in fact, admits that "detention deputies sometimes administer medications to inmates." Additionally, none of the evidence cited by Plaintiff contradicts the fact that deputies primary medical-related duty at the facility is to administer medications. Rather, the deputies in each example provided were acting pursuant to policy for medical emergency situations: "Once medically trained personnel have arrived, the Detention Deputies are to permit them to examine and treat the patient as required. Deputies are not to interfere with medical personnel's examination or treatment of an inmate but are to ensure that facility security is maintained. Staff members are to function as support personnel for medical personnel. In the event the injured person is an inmate and it is determined upon examination that the inmate needs to be transported to the hospital, the shift supervisor is to ensure the inmate is transported and custody is maintained in accordance with Policy J-114 IV E." [*See Park County Jail Policy J-121-H Level of Care-Emergency*, Doc. 74-14]. Furthermore, as previously explained, Captain Muldoon's authority in situations of medical emergency is limited to organizing the transport of inmates to and from Park County Jail. [*See ¶* 10, above].

15.     None of the evidence Plaintiff relies on disputes this fact. As previously explained, Nurse Canterbury's statement concerned Captain Muldoon's authority related to organizing the transport of inmates to and from Park County Jail rather than his authority to determine whether

someone's medical condition warrants hospitalization. [*See ¶* 10, above]. Additionally, contrary to Plaintiff's unsupported assertion, the Park County Jail's Medical Unit does not include doctors. "It is the policy of the Sheriff's Office that a staff member from the medical profession arranges for all levels of health care, assuring the quality of all health reviews, and assuring that inmates have access to them. The health authority may be a registered nurse, physicians' assistant or other health care authority operating under the supervision of a single designated physician." [*See Park County Jail Policy J-121-A Responsible Health Authority* attached hereto as **Exhibit R**]. The Jail's Medical Director, Dr. Katherine Fitting, oversees the medical treatment of inmates remotely. [*See Pearce Aff.*, Doc. 74-5 at ¶ 2].

17.     None of the evidence relied on by Plaintiff disputes this fact. As noted above, Nurse Canterbury was discussing Captain Muldoon's authority to transport inmates to and from Park County Jail in situations of medical emergency—not his authority to determine whether an inmate's medical condition warrants hospitalization. [*See ¶* 10, above]. Moreover, the excerpt relied on from Captain Muldoon's deposition testimony simply demonstrates that he agreed with the Medical Unit's determination that Schwark needed to be hospitalized and asked the nursing staff how he could assist them. [*See Deposition of Captain Muldoon*, Doc. 82-2 at 15 ("[Muldoon:] But when I saw the condition there, it's quite possible that I could have said, We gotta do something. What do you want to do? I don't recollect, but --.")].

18.     Again, none of the evidence relied on by Plaintiff disputes this fact. As demonstrated above, Plaintiff's cherry-picked citations have been misconstrued and the intended inference is not supported by the record as a whole. [See ¶¶ 10, 17, above]. Furthermore, Plaintiff has not provided any evidence to contradict the well-documented fact that Jail staff serve in a

support capacity with respect to medical treatment or that Captain Muldoon's role in medical emergencies is limited to arranging transportation and ensuring such transport is done securely.

19.     None of the evidence relied on by Plaintiff disputes this fact. Plaintiff attempts to conflate the process involved with coordinating the secure transport of inmates to the hospital with the underlying medical decision that an inmate needs to be hospitalized. Plaintiff does not deny that Park County Jail has a policy in place that addresses the role of Jail staff in medical emergencies or that the nursing staff do not usually bring medical issues to Captain Muldoon's attention. Policy J-121-H clearly describes Captain Muldoon's transport duties in the event of a medical emergency: "In the event the injured person is an inmate and it is determined upon examination that the inmate needs to be transported to the hospital, the shift supervisor is to ensure the inmate is transported and custody is maintained in accordance with Policy J-114 IV E." [*See Park County Jail Policy J-121-H Level of Care-Emergency*, Doc. 74-14]. In facilitating inmate transports, the Captain is clearly acting in his role as support staff to medical personnel in emergency situations.

22.     Plaintiff only disputes whether Nurse Canterbury spoke with Captain Muldoon about Schwark's care on November 13, 2013. However, Plaintiff's only citation to Nurse Canterbury's deposition testimony does not contradict this fact. [*See Deposition of Nurse Susan Canterbury*, Doc. 82-5 at 4 ("**Q. What does the jail do to substitute for benzodiazepine?** A. I called Dr. Fitting, and typically if somebody is really regularly taking a benzo, you can't just take them off of it.")].

23.     None of the evidence relied on by Plaintiff disputes this fact. The excerpts cited from Schwark's deposition testimony do not contradict the conversation that took place between

Nurse Canterbury and Dr. Fitting about Schwark's medications on November 13, 2013. Furthermore, contrary to Plaintiff's assertion, the issue of whether Schwark received any medications at all during his November 2013 incarceration is not relevant to the claims asserted against the remaining individual Park County Defendants, Captain Muldoon and Nurse Swann.

24.     Plaintiff disputes no portion of this fact, and in fact, admits the medical chart indicates Schwark received his Xanax medication in November 2013. However, Plaintiff incorrectly states "the medical chart indicates Plaintiff received 2mg of Xanax on the morning of November 13, 201[3]." In actuality, the medical chart indicates that Schwark received 2 milligrams of Xanax on the morning of November 14, rather than November 13. [*See Schwark's November 2013 Medication Sheet*, Doc. 74-8 at 1]. Additionally, the medication sheet also indicates that Nurse Canterbury gave Schwark 1 milligram of Xanax on November 13, 2013. [*Id.*]. As such, Nurse Canterbury's deposition testimony is supported by the medication sheet. Moreover, none of the evidence relied on by Plaintiff disputes that Schwark's inmate file has no record of kites being filed that complain of not receiving his medications.

25.     Plaintiff attempts to create a dispute of fact by misrepresenting the deposition testimony of Nurse Canterbury. Nurse Canterbury testified that on November 13, 2013, she met with Schwark and personally gave him 1 milligram of Xanax and his Suboxone medication: "**Q. … So did you talk to Kyle?** A. I did go talk to him in his cell. **Q. And what did he say? … Did you do it that day by the way?** A. That day. **Q. Okay. So what did he say?** A. I took him one of his own Xanax at that time. And he was very adamant that he needed his Suboxone and his Xanax. … **Q. Okay. And what did you tell him?** A. I told him, okay. I gave him even a Suboxone…." [*See Canterbury Depo.*, **Exhibit Q**, at 14:21-15:20]. Additionally, Nurse Canterbury's statements

during her deposition about packing Schwark's Xanax medication for November 14 do not contradict her affidavit or the medication sheet. [*See Canterbury Depo.*, **Exhibit Q**, at 21:14-16 ("We didn't really get into the taper. We didn't change the Xanax. I mean, I took him his own Xanax, and I packed one for in the morning."); *id.* at 25:6-9 ("**Q. So anyway, so you gave him half a strip of Suboxone, and you gave him some Xanax, but you don't remember how much.** A. One milligram."); *id.* at 26:13-24 ("**Q. Okay. So then what happens, then, with Kyle and your interactions with Kyle?** A. I – there were no further interactions in that particular visit. I would pack his meds because – **Q. What does that mean?** A. … The deputies pass the meds. We put med in a labeled little white envelope, and there's a whole tray of these for all of them. And so I would have packed his med for the next morning because they pass it around 8:00 – 7:30.")]. It is obvious that Nurse Canterbury provided the specific Xanax dosage she gave Schwark on November 13 but only talked generally about the medications she packed for the next day. Moreover, Nurse Canterbury's signature is by the check-mark indicating that Schwark received 2 milligrams of Xanax on the morning of November 14. [*See* Doc. 74-8].

28.     Contrary to Plaintiff's assertion, this fact is not disputed by Nurse Pearce's affidavit as evidenced by the plain reading of both statements Plaintiff quotes in his Response. Additionally, Nurse Pearce's affidavit does not support Plaintiff's claim that Schwark was not given medication prior to the first seizure. [*See Pearce Aff.*, Doc. 74-5 at 2 ("4. On the morning of November 14, 2013, I prepared Kyle's various morning medications, including Suboxone, as instructed by his prescribing physician, Dr. Singer. Nurse Susan Canterbury had already packed Kyle's prescribed morning dose of Xanax, which had been given to him at med pass by one of the deputies around 8:00 a.m.")].

29.     Plaintiff disputes no portion of this fact. Moreover, Plaintiff admits that Schwark was taken to the hospital on November 14, 2013, the day that the seizures occurred. [*See Plaintiff's Response to SUMF 36*, Doc. 82 at 15].

31.     Plaintiff disputes no portion of this fact.

33.     None of the evidence Plaintiff relies on creates a material dispute of fact. Nurse Pearce's deposition testimony acknowledges that her note did not include all of her observations related to the incident on November 14, 2013: "**Q. That's okay. You told him to lie back and try to sleep, right?** A. Yes, Sir. **Q. And he started to get comfortable, and you went back to work; is that right?** … A. Yes, sir. **Q. And did he lie back and look like he was getting ready to go to sleep?** A. He did lie back shortly. Then he sat up and said he was nauseous again. He stood up, spit in the trash a few times, and was leaning up against the table. **Q. Okay. That's nowhere in any of your reports, is it?** A. I understand that." [*See Pearce Depo.,* **Exhibit P**, at 23:11-24:2]. Plaintiff concludes this response with legal argument, which the Court need not consider in determining the existence of disputed material fact.

34.     Plaintiff disputes no portion of this fact.

38.     None of the evidence Plaintiff relies on disputes the fact. Moreover, the additional information provided by Plaintiff does not create a material dispute of fact.

39.     Plaintiff disputes no portion of this fact. Moreover, the additional information provided by Plaintiff does not create a material dispute of fact.

44.     Plaintiff disputes no portion of this fact. Additionally, Plaintiff improperly incorporates legal argument in his response, which need not be considered by the Court in determining the existence of disputed material fact.

49.    Plaintiff attempts to create a dispute by arguing that Defendants somehow mischaracterized Nurse Canterbury's email communications to Dr. Cynthia Parker on March 6, 2014. However, Defendants' representation of the undisputed fact in SUMF 49 is wholly supported by the record of evidence that has been accurately cited and also provided to this Court. [*See* Doc. 74 at 18-19].

51.    None of the evidence Plaintiff relies on disputes this fact. Indeed, Plaintiff has cited the same excerpts Defendants relied on to support Defendants' SUMF 51. Defendants clearly provide the more accurate representation of Nurse Canterbury's deposition testimony—that she could not specifically remember whether she told anyone that Schwark needed to go to the hospital. Thus, this fact is undisputed.

52.    Plaintiff attempts to create a dispute of fact by misrepresenting an excerpt of Nurse Canterbury's deposition testimony. Plaintiff cites to Nurse Canterbury's statements about initially obtaining the order containing the tapering schedule. However, Nurse Canterbury testified that she began giving Schwark his Xanax medication as originally prescribed by March 6, 2014: "**Q. What do you recall was happening to Kyle Schwark from March 6th to March 10th? Was he still hallucinating? Was he being given meds? What was going on?** A. He was getting his meds. That's over the weekend. I wasn't there. I don't know that I was even there on Friday – the Thursday is the 6th, and I don't know that I was there Friday, Saturday, or Sunday…." [*See Canterbury Depo.,* **Exhibit Q**, at 73:14-22]. Additionally, Nurse Canterbury expressly testified that she did not believe he was trying to harm himself. [*See id.* at 64:8-11 ("**Q. Okay. Do you believe that your observations of Kyle Schwark when he was most psychotic, was he a danger to himself?** A. No. He didn't try to hurt himself.")]. Furthermore, the additional information

provided by Plaintiff does not create a genuine dispute of material fact as previously explained. [*See* ¶¶ 10, 17, 18, 18, 51, above].

53.     Plaintiff does not dispute any portion of this fact. Moreover, the additional information provided by Plaintiff does not create a dispute of fact.

III.     **RESPONSE TO STATEMENT OF ADDITIONAL MATERIAL FACTS**[2]

Plaintiffs include seven pages of 39 purported additional material facts. The majority of these facts are recitations of Defendants' undisputed facts and Plaintiffs' response to same. A review of these seven pages establishes that these "facts" are nothing more than legal argument from Plaintiffs' counsel and do not have support in the record. Importantly, these paragraphs contain arguments that are completely irrelevant to the claims asserted by Plaintiff and the legal analysis before the Court. Accordingly, none of them need to be considered for purposes of ruling on Defendants' Motion for Summary Judgment.

## VI.     **ARGUMENT**

To defeat qualified immunity, Plaintiff must show both a constitutional violation and clearly established law that the conduct of either Nurse Jeri Swann or Captain Daniel Muldoon was unconstitutional. *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001). Plaintiff has not shown a constitutional violation by Nurse Swann or Captain Muldoon, and thus they are entitled to qualified immunity. Furthermore, Plaintiff has not identified any clearly established law that would have put either of these Defendants on notice that their conduct was unconstitutional. Indeed, a

---

[2] Park County Defendants acknowledge that the section entitled "Response to Statement of Additional Material Facts" deviates from Judge Kane's Practice Standards, which includes a request for this particular section to be styled as "Response to Statement of Undisputed Facts." *See Special Instructions Concerning Motions for Summary Judgment*, Judge John L. Kane's Civil Practice Standards, Section III(6)(b), at 10. However, Defendants thought it best to adopt the headings employed in Plaintiff's Response.

defendant loses qualified immunity if a reasonable person in a similar position would have understood his or her conduct to violate federal law, but here Plaintiff has failed to show that the conduct was objectively unreasonable in light of clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

When the defense of qualified immunity is at issue, the Court considers only what was reasonably known to the defendant at the time of the incident without using hindsight. *White v. Pauly*, 137 S.Ct. at 550.  Defendants Nurse Swann and Captain Muldoon assert qualified immunity with respect to the Eighth Amendment claims asserted against them. It was Plaintiff's burden to demonstrate, using only the information known to them at the time of the alleged violation, that the actions of Nurse Swann and Captain Muldoon were contrary to clearly established law. Plaintiff failed to meet this high burden.

### A.    Nurse Jeri Swann Is Entitled to Qualified Immunity.

1.    <u>Nurse Swann Did Not Violate Plaintiff's Clearly Established Eighth Amendment Constitutional Rights</u>.

Plaintiff's Response does not demonstrate that Nurse Swann violated Schwark's constitutional rights because he cannot establish she was deliberately indifferent to his serious medical needs.

With respect to the second seizure that occurred on November 14, 2013, Plaintiff would only be able to establish negligence, at most. Plaintiff's Response relies on nursing best practices to establish deliberate indifference. However, even assuming Nurse Swann's conduct on November 14 fell below these best practices, Plaintiff would only be able to prove medical malpractice. Tenth Circuit law is clear on this point, negligent conduct amounting to medical

malpractice does not give rise to a constitutional violation. *See Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999).  Additionally, the undisputed facts disprove any assertion that Nurse Swann was deliberately indifferent to Schwark's serious medical needs: Nurse Swann called Dr. Fitting to receive orders on how to proceed with treating Schwark; the nurses required Schwark to remain in the wheelchair for several hours; they gave Schwark a snack and fluids before his lunch was brought to him in Medical; and the nurses only allowed Schwark to get up from the wheelchair once he was oriented and responsive to his environment. [*See* Doc. 74 at 28].

Plaintiff's Response also admits that Nurse Swann only interacted with Schwark one time during his second period of incarceration, on March 8, 2014, when she gave him his Xanax medication. [*See* Doc. 82 at 18]. The Response further admits that Schwark did not recall interacting with Nurse Swann at all during this time period. [*Id.*]. Indeed, Plaintiff implicitly concedes that Nurse Swann was not deliberately indifferent to Schwark's serious medical needs during his second period of incarceration by failing to mention Nurse Swann at all when addressing Plaintiff's claims arising from the February/March 2014 period of time.

In sum, Plaintiff's Response does nothing to refute Defendants' well-supported assertion that Nurse Swann was not deliberately indifferent to Schwark's serious medical needs in either November 2013 or February/March 2014. The undisputed material facts do not establish a constitutional violation, particularly in light of Tenth Circuit precedent. Accordingly, Nurse Swann is entitled to qualified immunity.

**B.      Captain Daniel Is Entitled to Qualified Immunity.**

1.  Captain Muldoon Did Not Violate Plaintiff's Clearly Established Eighth Amendment Constitutional Rights.

Plaintiff's Response focuses exclusively on Captain Muldoon's conduct during Schwark's second period of incarceration, arguing that the Captain ignored repeated request from the Medical Unit to transfer Schwark to a hospital. Although the Response attempts to misconstrue Nurse Canterbury's deposition testimony on this matter in order to strengthen Plaintiff's claim against Captain Muldoon, Defendants thoroughly addressed this point in their Motion for Summary Judgment. [*See* Doc. 74 at 32-33]. The evidence of record proves that neither Nurse Canterbury nor Captain Muldoon could specifically recall having a conversation about Schwark needing to go to the hospital prior to March 10, 2014. [*See id.* at 32]. Additionally, both Captain Muldoon and Nurse Canterbury were not working at the Jail during the weekend of March 8-9. [*See id.* at 33; *see also Canterbury Depo.*, **Exhibit Q**, at 73:18-22]. Moreover, despite Plaintiff's best efforts, there is no dispute of fact related to Nurse Canterbury's stated belief on March 6, 2014 that Schwark's condition was improving and he was not a threat to himself. [*See* Doc 74 at 33]. Furthermore, it remains undisputed that Captain Muldoon personally transported Schwark to the hospital on his first day back to work, March 10, 2014. [*See* Doc. 82 at 18]. Consequently, Plaintiff cannot establish that Captain Muldoon intentionally delayed or refused to provide access to adequate medical care to Schwark. Therefore, Plaintiff has failed to establish that Captain Muldoon was deliberately indifferent to Schwark's serious medical needs.

Plaintiff has also failed to meet his required burden to identify Supreme Court or Tenth Circuit precedent recognizing actionable constitutional violations in the circumstances presented.

*Schwartz v. Booker*, 702 F.3d 573, 587-88 (10th Cir. 2012); *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007). Rather than simply establish the existence of a constitutional right, Plaintiff was required to identify actionable constitutional violations in the "specific context of the case presented." *Thomas v. Durastanti*, 607 F.3d 655, 669-70 (10th Cir. 2010) (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). This requirement was recently reemphasized by the Supreme Court in *White v. Pauly*, 137 S.Ct. 548 (2017). There, the Supreme Court affirmed the longstanding principle that "clearly established law" may not be defined "at a high level of generality." *White*, 137 S.Ct. at 552. Instead, the clearly established law must be "particularized" to the facts of the case. *Id.*

Plaintiff cannot point to a U.S. or Tenth Circuit case that establishes a jail administrator would violate clearly established law by personally transporting an inmate to the hospital after less than a week of receiving treatment from the Jail's medical personnel, which seemed to improve the inmate's symptoms. Instead, Plaintiff argues Captain Muldoon violated Schwark's constitutional rights under the "gate-keeper" theory. However, all of the cases Plaintiff are distinguishable from the present set of facts as they all involve prison health officials who directly participated in treatment decisions. *See Self v. Crum*, 439 F.3d 1227 (10th Cir. 2006) (involved a contracted physician's misdiagnosis and subsequent treatment of an inmate's symptoms); *Mata v. Saiz*, 427 F.3d 745 (10th Cir. 2005) (concerned four jail nurses' dismissal of inmate's complaints of serious chest pain); *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000) (addressed a Jail official's refusal to take inmate with complaints of severe chest pain to hospital on night when no medical personnel were working).

Moreover, the *Self* court held that the contract physician's misdiagnosis and subsequent treatment of inmate did not show conscious disregard of the inmate's medical needs. *See* 439 F.3d at 1234 ("Self cannot argue he was denied medical treatment. He was not. Rather, his claim is that the course of treatment was inadequate. Self's symptoms, however, were consistent with a variety of conditions, including respiratory infection, and the treatment Crum provided for this condition was appropriate… Thus, the mere possibility that Self's symptoms could also point to other conditions… is not sufficient to create an inference of deliberate indifference. While Crum may not have appreciated a need for further testing until March 6, the record shows that when presented with evidence the prescribed treatment regimen was not succeeding or that Self may have contracted pneumonia, Crum sent Self to the hospital.").

If anything, the present facts are more analogous to situations where an inmate receives treatment based on a reasonable misdiagnosis. During February/March 2014, there was a general consensus among Jail staff and Medical personnel that Schwark was going through a withdrawal, which was causing his bizarre behavior. [*Muldoon Aff.*, Doc. 74-3 at 4]. The Medical personnel immediately responded to Schwark's declining mental state on Wednesday, March 5, 2014 by stopping the tapering schedule and providing his Xanax medication as originally prescribed. [*Canterbury Aff.*, Doc. 74-7 at 4-5]. Thereafter, Jail staff and Medical personnel believed Schwark's symptoms were beginning to improve as he seemed more coherent on Thursday, March 6, 2014. [*Id.* at 5; *Muldoon Aff.*, Doc. 74-3 at 4-5]. The following Monday, March 10, 2014, Captain Muldoon transported Schwark to Denver Health for a medical/psychiatric evaluation, and Schwark returned to Park County Jail just two days later without any prescribed medications. [*Canterbury Aff.*, Doc. 74-7 at 5-6]. Thus, even under a gate-keeper theory, Plaintiff cannot

establish Captain Muldoon intentionally delayed access to medical treatment because the undisputed fact remains that the Jail's Medical personnel provided Schwark with reasonable treatment during February/March 2014.

In sum, Plaintiff's Response does nothing to refute Defendants' well-supported assertion that Captain Muldoon was not deliberately indifferent to Schwark's serious medical needs in either November 2013 or February/March 2014. The undisputed material facts do not establish a constitutional violation, particularly in light of Tenth Circuit precedent. Accordingly, Captain Muldoon is entitled to qualified immunity.

**C.      No Municipal Liability.**

Although Plaintiff's Second Amended Complaint only alleges a failure to train claim against the County, Plaintiff includes municipal liability claims based on Captain Muldoon's actions as a final policymaker, the County's ratification of Defendants' conduct, and the County's illegal customs and practices.

1.      No Evidence of Failure to Train.

Plaintiff's Response only addresses training provided to Medical personnel. To succeed on a municipal liability claim based on failure to train, Plaintiff must establish a pattern of unconstitutional behavior of which the municipality had notice and establish facts suggesting that the municipality showed deliberate indifference by choosing to disregard the risk of harm. *Barney v. Pulsipher*, 143 F.3d 199, 1307-08 (10th Cir. 1998). Importantly, Plaintiff has pointed to no evidence demonstrating a widespread and persistent pattern of deliberate indifference to serious medical needs. *Carrey v. City & Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008). Here, Plaintiff completely misrepresents Captain Muldoon's testimony with his contention that the only

medical training the Jail provides its nurses is to say no. Captain Muldoon clearly meant that nurses need to be made aware of the unique safety and security concerns associated with working in a jail setting, like how to handle an inmate who is "cheeking" his medication. [*See Muldoon Depo.*, Doc. 82-2 at 21-22]. Plaintiff cites to no competent facts in the record that the County was "deliberately indifferent" to Medical personnel's need to be trained on the medical duties.

2.        No Evidence Supports Additional Theories of Municipal Liability.

Plaintiff's additional theories of municipal liability are similarly unsupported. Despite Plaintiff's assertion, Captain Muldoon is not the Jail's final policymaker. Rather, it is Sheriff Wegener who creates and maintains policies and procedures for the Jail. [*See Wegener Aff.*, Doc. 74-19 at 1]. While Sheriff Wegener has delegated the management of the Jail's day-to-day operations to Captain Muldoon, important requests like medical furloughs still require the Sheriff's authorization. [*Id.* at 2-3]. Thus, Sheriff Wegener retains his position as Park County Jail's one and only final policymaker. Similarly, Plaintiff's ratification theory fails because the Response presents no evidence that the alleged violations of Schwark's Eighth Amendment rights were taken pursuant to any decision of Sheriff Wegener. *See Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) ("We have also further clarified that proof of a single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability, and where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entire entity."). Finally, Plaintiff's customs and practices theory necessarily fails because he cannot establish a constitutional violation by either Nurse Swann or Captain Muldoon. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) ("A

municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

In sum, Plaintiff has not met his burden pursuant to Fed.R.Civ.P. 56 to overcome summary judgment under any theory of municipal liability against Park County.

## V. <u>CONCLUSION</u>

For these reasons and those stated in their Motion for Summary Judgment, Park County Defendants respectfully request that the Court grant their Motion for Summary Judgment and enter orders granting the relief requested therein.

Respectfully submitted,

By _____s/ Eric M. Ziporin_____

**Eric M. Ziporin**
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Ste. 700
Denver, Colorado 80210
Telephone:  (303) 320-0509
Facsimile:   (303) 320-0210
E-mail: eziporin@sgrllc.com

By _____s/ Susan E. McNulty_____

**Susan E. McNulty**
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Ste. 700
Denver, Colorado 80210
Telephone:  (303) 320-0509
Facsimile:   (303) 320-0210
E-mail: smcnulty@sgrllc.com
*Attorney for Defendants*

25

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 13th day of November, 2017, I electronically filed a true and correct copy of the above and foregoing **REPLY IN SPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

David A. Lane
Andy McNulty
dlane@kln-law.com
amcnulty@kln-law.com
*Attorneys for Plaintiff*

Steven Michalek
Gina Glockner
smichalek@childsmccune.com
gglockner@childsmccune.com
*Attorneys for Defendant Katherine Fitting, M.D.*


*s/ Barbara A. Ortell*
Barbara A. Ortell, Legal Secretary

01348287.DOCX

26